QUYEN L. TA (SBN 229956)
qta@kslaw.com
MATTHEW H. DAWSON (SBN 307350)
mdawson@kslaw.com
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, California 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

DAVID TETRICK, JR. (*Pro Hac Vice*)
dtetrick@kslaw.com
DARREN A. SHULER (*Pro Hac Vice*)
dshuler@kslaw.com
DANIELLE CHATTIN (*Pro Hac Vice*)
dchattin@kslaw.com
**KING & SPALDING LLP**
1180 Peachtree Street, NE Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

*Attorneys for Defendants*
Cisco Systems, Inc.; Board of Trustees of Cisco
Systems, Inc.; and Administrative Committee
of the Cisco Systems, Inc. 401(k) Plan

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| ROBERT BRACALENTE and BORIS GDALEVICH, individually and as representatives of a class of similarly situated persons, on behalf of the CISCO SYSTEMS, INC. 401(K) PLAN,<br><br>Plaintiffs,<br><br>v.<br><br>CISCO SYSTEMS, INC.; THE BOARD OF TRUSTEES OF CISCO SYSTEMS, INC.; THE ADMINISTRATIVE COMMITTEE OF THE CISCO SYSTEMS, INC. 401(K) PLAN; and DOES No. 1-20, Whose Names Are Currently Unknown,<br><br>Defendants. | Case No. 5:22-cv-04417-EJD<br><br>**DEFENDANT CISCO SYSTEMS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Date:          March 9, 2023<br>Time:         9:00 A.M.<br><br>Hon. Edward J. Davila |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ...................................................................................1

STATEMENT OF ISSUES TO BE DECIDED ........................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES.............................................................2

I.      INTRODUCTION ....................................................................................................2

II.     FACTUAL BACKGROUND ...................................................................................5

III.    ARGUMENT ............................................................................................................7

       A.    Plaintiffs' Bare Allegations of Underperformance, Without More, Fail to State a Plausible Claim for Breach of Fiduciary Duty......................8

       B.    Even If the Court Were to Consider Performance in a Vacuum, the *De Minimis*, Short-Lived Underperformance Alleged Does Not Permit a Plausible Inference of Imprudence......................................................10

            1.    The Underperformance Alleged Is *De Minimis*........................11

            2.    The Underperformance Alleged Is Short-Lived.. .....................13

       C.    Plaintiffs Fail to Establish Consistent Underperformance Against Any Meaningful Benchmarks. .........................................................................14

            1.    TDFs Composed of Actively Managed Funds Are Not Meaningful Benchmarks for the BlackRock TDFs, Which Are Composed of Passively Managed Index Funds. ........................15

            2.    Plaintiffs' Remaining TDF Comparators Are Similarly Inapt and Do Not Support a Plausible Claim of Imprudence............17

       D.    Counts II and III Are Derivative of the Claim for Breach of Duty of Prudence and Should Thus Be Dismissed..............................................19

IV.    CONCLUSION ......................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
   727 F.3d 502 (6th Cir. 2013) ................................................15

*Albert v. Oshkosh Corp.*,
   47 F.4th 570 (7th Cir. 2022), *reh'g denied*, No. 21-2789, 2022 WL 4372363
   (7th Cir. Sept. 21, 2022)........................................................20

*Anderson v. Intel Corp.*,
   No. 19-CV-04618-LHK, 2021 WL 229235 (N.D. Cal. Jan. 21, 2021) ..........................*passim*

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................13, 14

*Barchock v. CVS Health Corp.*,
   886 F.3d 43 (1st Cir. 2018).......................................14, 15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................13, 14

*Cho v. Prudential Ins. Co. of Am.*,
   No. 19-CV-19886-JMV-SCM, 2021 WL 4438186 (D.N.J. Sept. 27, 2021) ...................17, 19

*Davis v. Salesforce.com, Inc.*,
   No. 20-cv-01753-MMC, 2020 WL 5893405 (N.D. Cal. Oct. 5, 2020)
   ....................................................................17, 18, 19, 25

*Davis v. Salesforce.com, Inc.*,
   No. 20-cv-01753-MMC, 2021 WL 1428259 (N.D. Cal. Apr. 15, 2021), *aff'd
   in relevant part, Salesforce III*, 2022 WL 1055557............................9, 21

*Davis v. Salesforce.com, Inc.*,
   No. 21-15867, 2022 WL 1055557 (9th Cir. Apr. 8, 2022).............................*passim*

*Davis v. Wash. Univ. in St. Louis*,
   960 F.3d 478 (8th Cir. 2020) .......................................*passim*

*Dorman v. Charles Schwab Corp.*,
   No. 17-cv-00285-CW, 2018 WL 6803738 (N.D. Cal. Sept. 20, 2018) ..................25

*Dorman v. Charles Schwab Corp.*,
   No. 17-cv-00285-CW, 2019 WL 580785 (N.D. Cal. Feb. 8, 2019) ............................9, 17, 19

*Evans v. Associated Banc-Corp.*,
   No. 21-C-60, 2022 WL 4638092 (E.D. Wis. Sept. 30, 2022)................................18

ii

*Fernandez v. Franklin Res., Inc.*,
  No. 17-cv-06409-CW, 2018 WL 1697089 (N.D. Cal. Apr. 6, 2018) ....................................25

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014) ..........................................................................................................10, 14

*Forman v. TriHealth, Inc.*,
  40 F.4th 443 (6th Cir. 2022) ......................................................................................................20

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ...................................................................................................13

*Gonzalez v. Northwell Health, Inc.*,
  No. 20-CV-3256 (RPK) (RLM), 2022 WL 4639673 (E.D.N.Y. Sept. 30, 2022)........14, 19, 21

*Hughes v. Nw. Univ.*,
  142 S. Ct. 737 (2022) .................................................................................................................14

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) .....................................................................................................11

*Klawonn v. Bd. of Dirs. for the Motion Picture Indus. Pension Plans*,
  No. CV 20 9194-DMG, 2021 WL 3508534 (C.D. Cal. Aug. 9, 2021)...............................15, 21

*Matousek v. MidAmerican Energy Co.*,
  No. 21-2749, 2022 WL 6880771 (8th Cir. Oct. 12, 2022) ..................................................20, 23

*Meiners v. Wells Fargo & Co.*,
  898 F.3d 820 (8th Cir. 2018) ............................................................................................*passim*

*Parmer v. Land O'Lakes, Inc.*,
  518 F. Supp. 3d 1293 (D. Minn. 2021) ......................................................................................21

*Patterson v. Morgan Stanley*,
  No. 16-cv-6568-RJS, 2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019)...............................17, 19, 20

*Pizarro v. Home Depot, Inc.*,
  No. 1:18-cv-01566-SDG, 2022 WL 4687096 (N.D. Ga. Sept. 30, 2022)
  ...........................................................................................................................8, 19, 23, 24

*In re Restoration Robotics, Inc. Sec. Litig.*,
  417 F. Supp. 3d 1242 (N.D. Cal. 2019) .....................................................................................11

*Smith v. CommonSpirit Health*,
  37 F.4th 1160 (6th Cir. 2022) ...........................................................................................*passim*

*Smith v. CommonSpirit Health*,
  No. CV 20-95-DLB-EBA, 2021 WL 4097052 (E.D. Ky. Sept. 8, 2021), *aff'd*,
  37 F.4th 1160 (6th Cir. 2022) ....................................................................................................17

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v.*
    *Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013) ................................................................................14

*Thomas Wylde PDTW, LLC Peddie Thomas Wylde, LLC v. Choi*,
    No. LA CV 17-04158 JAK, 2021 WL 6752211 (C.D. Cal. Jan. 21, 2021),
    *aff'd sub nom. Thomas v. Thomas Wylde, LLC*, Nos. 21-55069, 21-55124,
    2022 WL 127985 (9th Cir. Jan. 13, 2022) ....................................................16, 17

*Tibble v. Edison Int'l*,
    575 U.S. 523 (2015) ............................................................................................14

*Tibble v. Edison Int'l*,
    729 F.3d 1110 (9th Cir. 2013), *vacated on other grounds*, 575 U.S. 523 (2015) ....................9

*Wehner v. Genentech, Inc.*,
    No. 20-cv-06894-WHO, 2021 WL 2417098 (N.D. Cal. June 14, 2021)
    ....................................................................................................8, 14, 16, 17

*Wehner v. Genentech, Inc.*,
    No. 20-cv-06894-WHO, 2021 WL 507599 (N.D. Cal. Feb. 9, 2021) ............................*passim*

*White v. Chevron Corp.*,
    752 F. App'x 453 (9th Cir. 2018) ................................................................9, 15, 16

*White v. Chevron Corp.*,
    No. 16-cv-0793-PJH, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ......................13, 15, 16

*White v. Chevron Corp.*,
    No. 16-cv-0793-PJH, 2017 WL 2352137 (N.D. Cal. May 31, 2017), *aff'd*,
    *White III*, 752 F. App'x 453 (9th Cir. 2018) ..............................................................15

**Statutes**

29 U.S.C. § 1104 ....................................................................................................13, 14

Employee Retirement Income Security Act of 1974, ERISA ..............................................*passim*

**Other Authorities**

Fed. R. Evid. 201(b)(1)–(2) ........................................................................................18

Federal Rule of Civil Procedure 12(b)(6) ..............................................................7, 11, 13, 14

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on March 9, 2023 at 9:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 4, San Jose Courthouse, 5th Floor, 280 South 1st Street, San Jose, CA 95113, before the Honorable Edward J. Davila, Defendant Cisco Systems, Inc. ("Cisco") will and hereby does move the Court for entry of an order dismissing all claims asserted by Plaintiffs Robert Bracalente and Boris Gdalevich ("Plaintiffs").

This Motion is brought under Federal Rule of Civil Procedure 12(b)(6), as the Complaint filed in this action on July 29, 2022 (ECF No. 1) fails to state a viable claim. The Motion is based upon this Notice of Motion, Motion, and Memorandum and Points of Authorities; the concurrently filed Request for Judicial Notice and accompanying materials; the other pleadings and papers on file in this matter; and any additional information and argument that may be presented to the Court before or during the hearing.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether Count I (breach of fiduciary duty) should be dismissed under Rule 12(b)(6) because Plaintiffs' bare allegations that a 401(k) investment underperformed, without more, are insufficient to state a plausible claim of fiduciary breach.

2. Whether Count I should be dismissed under Rule 12(b)(6) because any alleged underperformance of the challenged investment was both *de minimis* and short-lived; the challenged investment is now *outperforming* Plaintiffs' cherry-picked comparators.

3. Whether Count I should be dismissed under Rule 12(b)(6) in any event because Plaintiffs' cherry-picked comparators do not provide a meaningful benchmark or sound basis for evaluating the performance of the challenged investment.

4. Whether Counts II and III (failure to monitor and breach of trust) should be dismissed under Rule 12(b)(6) because both are derivative of, and fall with, Count I.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

This case is one of a dozen, nearly identical strike suits filed by the same law firm, over a three-week period.[1]  Like all the others, this case is premised on the misguided notion that the BlackRock LifePath Index target-date funds ("BlackRock TDFs") are an imprudent investment option for 401(k) plans.  Plaintiffs' claims disregard reality and the law.  The BlackRock TDFs are one of the highest-rated, least expensive, and most widely held target-date fund suites available. Just last year, Plaintiffs' counsel themselves sued another large 401(k) plan for *failing* to offer the BlackRock TDFs.  *See* Request for Judicial Notice Ex. 9 ("Wehner Am. Compl.") ¶¶ 146–47 & n.16.[2]  And just last month, the only court to assess the merit of the BlackRock TDFs determined that they are an objectively prudent investment.  *See Pizarro v. Home Depot, Inc.*, No. 1:18-cv-01566-SDG, 2022 WL 4687096, at *23 (N.D. Ga. Sept. 30, 2022).

Yet, Plaintiffs now assert that Cisco breached its fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") by offering the BlackRock TDFs as an investment option in Cisco's 401(k) plan.  The crux of the Complaint is that the BlackRock TDFs underperformed by 1 to 2 percentage points over short, three- and five- year periods when

---

[1]  *See Motz v. Citigroup*, No. 22-cv-965 (D. Conn., filed July 29, 2022); *Kistler v. Stanley Black & Decker*, No. 22-cv-966 (D. Conn., filed July 29, 2022); *Luckett v. Wintrust Fin.*, No. 22-cv-3968 (N.D. Ill., filed July 29, 2022); *Hall et al. v. Capital One Fin. Corp. et al.*, No. 22-cv-00857 (E.D. Va., filed Aug. 1, 2022); *Tullgen v. Booz Allen Hamilton Inc.*, No. 22-cv-856 (E.D. Va., filed Aug. 1, 2022); *Trauernicht v. Genworth Fin.*, No. 22-cv-532 (E.D. Va., filed Aug. 1, 2022); *Beldock v. Microsoft Corp.*, No. 22-cv-1082 (W.D. Wash., filed Aug. 2, 2022); *Antoine v. Marsh & McLennan*, No. 22-cv-6637 (S.D.N.Y., filed Aug. 4, 2022); *Anderson v. Advance Pubs.*, No. 22-cv-06826 (S.D.N.Y., filed Aug. 10, 2022); *Abel v. CMFG Life Ins.*, No. 22-cv-449 (W.D. Wis., filed Aug. 19, 2022).

[2]  As discussed in Cisco's Request for Judicial Notice, and *infra* in footnote 7, the Court may take notice of the pleadings in *Wehner*.

2

compared to four dissimilar target-date funds.  Other than dismissively labeling Cisco's process as "irrational," the Complaint offers zero allegations about the process that led to retaining the BlackRock TDFs in the Plan, even though fiduciary prudence is judged by process—not results.  *Tibble v. Edison Int'l*, 729 F.3d 1110, 1136 (9th Cir. 2013), *vacated on other grounds*, 575 U.S. 523 (2015).  It is well settled in this Circuit and beyond that Plaintiffs' bare allegations of *de minimis* underperformance do not state a viable ERISA claim.  *White v. Chevron Corp.*, 752 F. App'x 453, 455 (9th Cir. 2018) ("*White III*") (alleging "only that [fiduciaries] could have chosen different vehicles for investment that performed better during the relevant period" does not raise a plausible inference of imprudence); *see also, e.g.*, *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022) (a "showing of imprudence" does not "come down to simply pointing to a fund with better performance").  Where (as here) the Complaint contains no concrete allegations about fiduciary process, Plaintiffs must allege underperformance that is both material and persistent—and they must do so against "a sound basis for comparison—a meaningful benchmark".  *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018); *see also Davis v. Salesforce.com, Inc.*, No. 21-15867, 2022 WL 1055557, at *2 n.1 (9th Cir. Apr. 8, 2022) ("*Salesforce III*") (affirming dismissal of breach of fiduciary duty claims where proposed passive comparators were not meaningful benchmarks for active funds); *Davis v. Salesforce.com, Inc.*, No. 20-cv-01753-MMC, 2021 WL 1428259, at *5–6 (N.D. Cal. Apr. 15, 2021) ("*Salesforce II*") (dismissing breach of fiduciary duty claims where plaintiffs alleged neither substantial underperformance over a "sufficiently long term" nor a meaningful benchmark (quotations omitted)), *aff'd in relevant part*, *Salesforce III*, 2022 WL 1055557, *2 n.1; *Dorman v. Charles Schwab Corp.*, No. 17-cv-00285-CW, 2019 WL 580785, at *6 (N.D. Cal. Feb. 8, 2019) (holding that underperformance "measured on a five-year basis" was not sufficient to support plaintiffs' allegations that funds "persistent[ly]" or "material[ly]" underperformed) (quotation marks omitted); *Smith*, 37 F.4th at 1167–69 ("A side-by-side comparison of how two funds performed in a narrow window of time, with no consideration of their distinct objectives, will not tell a fiduciary which is the more prudent long-term investment option.").

Plaintiffs' Complaint meets none of these mandatory pleading requirements, and their claims should be dismissed as a matter of law:

*First*, bare allegations of underperformance are not sufficient, without more, to state a plausible claim for breach of fiduciary duty. Plaintiffs provide no other basis for their claims. And their Complaint and the materials cited make clear that the BlackRock TDFs offer low fees, are among the most widely held by 401(k) plans, and recently received a coveted "gold" rating from industry analysts.

*Second*, the underperformance alleged was both minor and transitory. Indeed, Plaintiffs' own data demonstrate that the BlackRock TDFs as a whole are now *outperforming* their supposed comparator funds.

*Third*, none of Plaintiffs' cherry-picked comparators provides a meaningful benchmark for evaluating the Blackrock TDFs' performance. The BlackRock TDFs are composed of passively managed index funds and have a distinct investment strategy (i.e., glide path) of reducing risk by an identified retirement date. In contrast, Plaintiffs' comparator funds are either composed of actively managed funds (with higher fees and the prospect of higher returns under certain market conditions) or follow different glide paths (e.g., the comparators take a more aggressive approach as the estimated retirement date approaches). These dissimilar funds do not establish a meaningful benchmark for determining whether a 401(k) plan fiduciary made an imprudent decision.

*Fourth*, Plaintiffs' piggy-backed claims for failure to monitor and knowing breach of trust are derivative of their claim for breach of fiduciary duty and thus fail for the same reasons.

Ultimately, the Complaint is devoid of any direct or circumstantial allegations from which the Court could reasonably infer that Cisco acted imprudently. ERISA does not require fiduciaries to chase the best-performing funds each year and abandon long-term investment strategies when solid investments experience minor, temporary underperformance. And for good reason—had Cisco abandoned the BlackRock TDFs based on the minimal, temporary underperformance alleged in Plaintiffs' Complaint, the Plan and its participants would have been deprived of the gains from their recent *outperformance* of Plaintiffs' supposed comparator funds. The Court

4

should dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## II.    FACTUAL BACKGROUND

Cisco, an international networking and technology company, offers its employees a participant-directed, defined contribution 401(k) plan (the "Plan").  Compl. ¶¶ 2, 11, 19.  Plaintiffs allege that Cisco is an ERISA fiduciary responsible for selecting and monitoring the Plan's investment options.  *See id.* ¶¶ 5, 12–14.[3]

The BlackRock TDFs have been one of the investment options offered in the Cisco Plan since 2013.  *Id.* ¶ 28.  A target-date fund ("TDF") is a long-term retirement investment vehicle designed to become more conservative as the participant gets closer to retirement.  *See* RJN Ex. 1 ("DOL Report") at 2.[4]  In general, TDFs maintain a riskier allocation of stocks, bonds, and other investments when the participant is younger and automatically rebalance to decrease risk as the participant approaches retirement.  *Id.*  BlackRock TDFs are among the cheapest, most popular, and highly rated available.  *See* RJN Ex. 2 ("Morningstar Report") at 19–20; [5] *see also* Compl.

---

[3]    In addition to Cisco, the Complaint originally named the company's Board of Trustees and the Administrative Committee of its 401(k) Plan.  Both of those defendants have since been voluntarily dismissed from the lawsuit.  *See* ECF No. 35.

[4]    For the reasons set forth in its Request for Judicial Notice, Cisco requests that the Court take judicial notice of the DOL Report.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1001 (9th Cir. 2018) (agency reports are "generally susceptible to judicial notice").

[5]    Cisco requests that the Court take judicial notice of the Morningstar Report, which Plaintiffs incorporated by reference into the Complaint.  *See* Compl. ¶ 25 n.4.  Incorporation by reference is appropriate where the "complaint 'necessarily relies' upon a document or where the complaint alleges the contents of the document, and the documents authenticity and relevance is not disputed."  *In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1252 (N.D. Cal. 2019); *see also Anderson v. Intel Corp.*, No. 19-CV-04618-LHK, 2021 WL 229235, at *4

¶ 36.  Both the mutual fund and Collective Investment Trust ("CIT") versions of the BlackRock TDFs received a gold rating.  *See* Morningstar Report at 19–21.

BlackRock's TDFs are distinctive in two key regards.  First, the BlackRock TDFs are composed entirely of passive index funds.  *See* Compl. ¶ 28; Morningstar Report at 40.  Passive funds "provide broad market exposure at minimal cost and avoid the risk of active management underperformance and style drift."  *Id.* ¶ 26.  This is in contrast to active funds, which offer "the potential for excess returns, particularly in less efficient asset classes where active management tends to outperform," *id.*, but may also charge investors significantly higher fees.  *See* DOL Report at 2 n.2.  Second, the BlackRock TDFs are designed to maximize returns "to" retirement.  Compl. ¶¶ 23–24.  TDFs automatically rebalance the allocation of assets to minimize risk as the participant approaches the "target date" of retirement.  *Id.* ¶ 24; DOL Report at 2.  This change in asset allocation over time is called the TDF's "glide path."  Compl. ¶ 23; DOL Report at 2.  The BlackRock TDFs follow a "to" glide path, Compl. ¶ 38, which is designed for participants to withdraw their investment upon retirement.  The BlackRock TDFs' asset allocation is most conservative at the stated retirement date (e.g., a 2045 TDF assumes that investors intend to retire in 2045).  *Id.* ¶¶ 23–25.  TDFs can also be designed to support retirees "through" retirement.  "Through" strategies have a glide path optimized for a participant who intends to withdraw her investment over time after retirement and therefore de-risk more slowly.  *Id.* ¶¶ 23–25.

Plaintiffs are former employees of Cisco, who allegedly participated in its 401(k) plan for an undetermined period of time and invested in certain BlackRock TDFs.  *Id.* ¶¶ 1, 9–10.  Bracalente alleges that he invested an unspecified dollar amount in the BlackRock 2030 and 2040 TDFs, among other BlackRock funds, while Gdalevich claims that he invested an unspecified amount in the BlackRock 2045 TDF and the BlackRock LifePath Index Retirement Fund.  *See id.*

The Complaint asserts three counts, all of which are premised on the allegation that Cisco breached its fiduciary duty of prudence by offering the BlackRock TDFs as an investment option

---

(N.D. Cal. Jan. 21, 2021) (considering Morningstar Report where plaintiffs relied on report in the complaint).

6

in the Plan.[6]  The sole basis for Plaintiffs' claims is that the BlackRock TDFs "underperformed" compared to four alternative TDF suites during limited three- and five-year time periods.  *See id.* ¶¶ 34–45.  Count I brings a claim for breach of fiduciary duties for Cisco's alleged failure to remove the BlackRock TDFs as an investment option.  *Id.* ¶¶ 67–71.  Count II asserts that Cisco breached its fiduciary duty in failing to monitor the Plan Committee and is liable as a co-fiduciary.  *Id.* ¶¶ 72–80.  Count III alleges, in the alternative to Count I, if Cisco is deemed not to be a fiduciary within the meaning of ERISA, that it had sufficient knowledge to prevent a breach by others and therefore is liable for a knowing breach of trust.  *Id.* ¶¶ 81–83.

Cisco moves to dismiss all three counts under Federal Rule of Civil Procedure 12(b)(6).

## III.   ARGUMENT

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), plaintiffs bear the burden of alleging "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court is not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

---

[6] The Complaint also makes passing references to ERISA's duty of loyalty.  *See e.g.*, Compl. ¶ 27. But to state a claim of disloyalty, plaintiffs must allege facts demonstrating that a fiduciary failed to discharge their duties "solely in the interest of the participants and beneficiaries" of the plan. 29 U.S.C. § 1104(a)(1).  Allegations that fiduciaries acted imprudently, without more, are insufficient to state a claim of disloyalty.  *White v. Chevron Corp.*, No. 16-cv-0793-PJH, 2016 WL 4502808, at *5 (N.D. Cal. Aug. 29, 2016) ("*White I*") ("Because the complaint does not differentiate between breach of the duty of prudence and breach of the duty of loyalty, and includes no separate allegations to support the duty of loyalty claim, the court finds the allegations in the complaint insufficient to sustain the disloyalty claim.").

1   (quotation marks omitted).  Claims that are merely "conceivable" must be dismissed.  *See*

2   *Twombly*, 550 U.S. at 570.

3       The Supreme Court has admonished that Rule 12(b)(6) motions are an "important

4   mechanism for weeding out meritless claims" in ERISA cases.  *Fifth Third Bancorp v.*

5   *Dudenhoeffer*, 573 U.S. 409, 425 (2014).  ERISA fiduciaries unquestionably owe a duty of

6   prudence to 401(k) plan participants, 29 U.S.C. § 1104(a)(1)(B), which includes "a continuing

7   duty to monitor [plan] investments and remove imprudent ones," *Tibble v. Edison Int'l*, 575 U.S.

8   523, 529 (2015).  That duty, however, focuses on the *process* by which investment decisions are

9   made and not the *results* of those decisions.  *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 482

10  (8th Cir. 2020); *accord Barchock v. CVS Health Corp.*, 886 F.3d 43, 44–45 (1st Cir. 2018).

11  Accordingly, to survive a motion to dismiss, an ERISA complaint must set forth either direct

12  allegations that the fiduciary's management process was flawed or circumstantial allegations

13  permitting the court to infer "more than the mere possibility of misconduct." *Wehner v. Genentech,*

14  *Inc.*, No. 20-cv-06894-WHO, 2021 WL 2417098, at *4 (N.D. Cal. June 14, 2021) (quoting *Pension*

15  *Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt.*

16  *Inc.*, 712 F.3d 705, 718 (2d Cir. 2013)).  When assessing the allegations, courts must heed the

17  Supreme Court's recent admonition that ERISA fiduciaries often face "difficult tradeoffs" and that

18  courts "must give due regard to the range of reasonable judgments a fiduciary may make based on

19  her experience and expertise." *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022).  Ultimately, the

20  court must conduct a "careful, context-sensitive scrutiny of a complaint's allegations" to "divide

21  the plausible sheep from the meritless goats." *Fifth Third Bancorp*, 573 U.S. at 425.  The "pleading

22  safeguards in *Iqbal* and *Twombly*" should be applied to "ensure that fiduciaries need not face the

23  substantial burdens of discovery when a plaintiff has not made specific allegations sufficient to

24  support a finding of misconduct." *Gonzalez v. Northwell Health, Inc.*, No. 20-CV-3256 (RPK)

25  (RLM), 2022 WL 4639673, at *7 (E.D.N.Y. Sept. 30, 2022).

26      ### A. Plaintiffs' Bare Allegations of Underperformance, Without More, Fail to State a Plausible Claim for Breach of Fiduciary Duty.

27

28      At the pleading stage, if plaintiffs are unable to identify any actual deficiencies in a

fiduciary's process for managing or evaluating plan investments, they may rely on circumstantial

8

allegations concerning the investment choices made by the plan's fiduciaries.  *See Davis*, 960 F.3d at 483.  Whether a fiduciary properly discharged the duty of prudence, however, is "not a test of performance of the investment" and "cannot be measured in hindsight."  *Barchock*, 886 F.3d at 44-45 (quotation marks omitted); *see also Klawonn v. Bd. of Dirs. for the Motion Picture Indus. Pension Plans*, No. CV 20 9194-DMG (JEMx), 2021 WL 3508534, at *8 (C.D. Cal. Aug. 9, 2021). "[D]isappointing performance by itself does not conclusively point towards deficient decision-making," particularly once "'competing explanations' and other 'common sense' aspects of long-term investments" are considered.  *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1167 (6th Cir. 2022) (quoting *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013)).  Indeed, a "fiduciary may reasonably select an investment alternative in view of its different risks and features, even if that investment option turns out to yield less than some other option." *White v. Chevron Corp.*, No. 16-cv-0793-PJH, 2017 WL 2352137, at *10 (N.D. Cal. May 31, 2017) ("*White II*"), *aff'd*, *White III*, 752 F. App'x 453 (9th Cir. 2018).  Nothing in ERISA "requires a fiduciary to pick the best performing fund." *Meiners*, 898 F.3d at 823.  Nor is it "presumptively imprudent" for fiduciaries to retain investments "through periods of underperformance as part of a long-range investment strategy." *Wehner v. Genentech, Inc.*, No. 20-cv-06894-WHO, 2021 WL 507599, at *9 (N.D. Cal. Feb. 9, 2021) ("*Wehner I*") (internal quotations and citations omitted).  Courts thus routinely dismiss claims for breach of fiduciary duty that are based solely on allegations of poor performance.  *See, e.g.*, *Smith*, 37 F.4th at 1167; *White III*, 752 F. App'x at 455; *Anderson*, 2021 WL 229235, at *7; *White I*, 2016 WL 4502808, at *17.

Here, Plaintiffs rely solely on allegations that the BlackRock TDFs underperformed to support their claim for imprudence.  *See* Compl. ¶¶ 40–47.  Plaintiffs do not allege any specific defects in Cisco's process for evaluating or for monitoring the BlackRock TDFs, or any other investment offered in the Plan.   To the contrary, Plaintiffs allow that the purported underperformance of the BlackRock TDFs may have been tolerated by the plan fiduciaries because they charged such low fees.  *See id.* ¶ 30.  Indeed, Plaintiffs' counsel themselves touted the BlackRock TDFs in another ERISA lawsuit, describing them as among "the most popular off-the-

shelf target date funds" and including them in an "ideal peer benchmark" of prudent TDF alternatives that should have been offered.  *See* Wehner Am. Compl. ¶¶ 146–47 & n.16.[7]  Plaintiffs fail to identify any circumstantial "red flags," beyond supposed short-term underperformance, that should have alerted Cisco to remove the BlackRock TDFs.  There are no allegations, for example, that investors were abandoning the BlackRock TDFs or that analysts were critical of the funds. *See Smith*, 37 F.4th at 1167.  Rather, the Complaint makes clear that the CIT and mutual fund versions of the BlackRock TDFs were the second and third most popular target-date series in the country, respectively.  *See* Compl. ¶ 36.  In fact, in 2021, BlackRock TDF CIT and mutual fund suites were among the top five in the country when ranked by net *inflows* of investment.  *See* Morningstar Report at 8.  The Morning Star analysis cited by Plaintiffs also recently awarded both the BlackRock TDF mutual funds and the BlackRock TDF CITs a "gold" rating, with BlackRock being one of the few managers to receive gold ratings for both.  *See* Compl. ¶ 26 n.4; Morningstar Report at 19–21.  And Plaintiffs' own data demonstrate that the BlackRock TDFs as a whole are now outperforming their supposed comparator funds.

Plaintiffs' bare allegations of underperformance, without more, do not permit the Court to plausibly infer fiduciary misconduct. As such, Count I fails as a matter of law.  *See Smith*, 37 F.4th at 1167; *White III*, 752 F. App'x at 455; *Anderson*, 2021 WL 229235, at *7; *White I*, 2016 WL 4502808, at *17.

### B.  Even If the Court Were to Consider Performance in a Vacuum, the *De Minimis*, Short-Lived Underperformance Alleged Does Not Permit a Plausible Inference of Imprudence.

Even if the Court were to consider allegations of fund performance standing alone, the

---

[7] As discussed in Cisco's Request for Judicial Notice, the Court may take notice of the pleadings in *Wehner* for the limited purpose of considering BlackRock's alleged performance and Plaintiffs' counsel's use of BlackRock TDFs as a prudent alternative investment.  *See Thomas Wylde PDTW, LLC Peddie Thomas Wylde, LLC v. Choi*, No. LA CV 17-04158 JAK (FFMx), 2021 WL 6752211, at *6 (C.D. Cal. Jan. 21, 2021), *aff'd sub nom. Thomas v. Thomas Wylde, LLC*, Nos. 21-55069, 21-55124, 2022 WL 127985 (9th Cir. Jan. 13, 2022).

10

underperformance must be both "'material'" and "persistent" to support an inference of misconduct. *Dorman*, 2019 WL 580785, at *6; *see also Wehner I*, 2021 WL 507599, at *9 (same); *Davis v. Salesforce.com, Inc.*, No. 20-cv-01753-MMC, 2020 WL 5893405, at *3–4 (N.D. Cal. Oct. 5, 2020) ("*Salesforce I*") (same).  Neither is alleged here.

### 1. The Underperformance Alleged Is *De Minimis.*

Courts routinely dismiss prudence claims where the disparity in performance between the challenged investment and the purported benchmark is *de minimis*.  *See Patterson v. Morgan Stanley*, No. 16-cv-6568-RJS, 2019 WL 4934834, at *10 (S.D.N.Y. Oct. 7, 2019) (no plausible inference of imprudence where funds, including BlackRock TDFs, trailed benchmark by "less than one percentage point"); *Cho v. Prudential Ins. Co. of Am.*, No. 19-CV-19886-JMV-SCM, 2021 WL 4438186, at *9 (D.N.J. Sept. 27, 2021) (dismissing ERISA claims because complaint did not allege "that the underperformance was sufficiently substantial" and challenged funds outperformed benchmarks on several occasions); *see also Smith v. CommonSpirit Health*, No. CV 20-95-DLB-EBA, 2021 WL 4097052, at *8 (E.D. Ky. Sept. 8, 2021) (dismissing duty of prudence claims where target-date funds trailed purported benchmark by 1.58 percent over five years), *aff'd*, 37 F.4th 1160 (6th Cir. 2022); *Wehner I*, 2021 WL 507599, at *10 (dismissing imprudence claims based on three- and five-year returns showing that target-date funds underperformed purported benchmark by approximately 2.7 percent at the highwater mark); *Salesforce I*, 2020 WL 5893405, at *3–4 (dismissing imprudence claims where target-date funds trailed purported benchmark by .7 percent to 3.7 percent depending on vintage).[8]

Here, Plaintiffs measure the BlackRock TDFs' performance between 2Q2016 and 2Q2022 against two pairs of proposed comparator TDFs: the first pair, the T. Rowe Price Retirement and American Funds Target Date Retirement funds, are composed of actively managed funds (unlike

---

[8] *See* RJN Ex. 3 ("Wehner Compl.") ¶ 37; RJN Ex. 4 ("Salesforce Compl.") ¶ 115.  As discussed in Cisco's Request for Judicial Notice, the Court may take notice of the complaints in *Wehner* and *Salesforce* for the limited purpose of considering the degree of underperformance alleged.  *See Thomas Wylde PDTW*, 2021 WL 6752211, at *6.

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT                CASE NO. 5:22-cv-04417-EJD

the BlackRock TDFs), *see* Morningstar Report at 8, 22;[9] and the second pair, the Vanguard Target Retirement Series and Fidelity Freedom funds, are composed of passive index funds (like the BlackRock TDFs), *see id.* at 40.[10]   None of these comparator funds is an appropriate benchmark for the BlackRock TDFs, as explained in Section III.C.2, *infra*.   But even if they were, the underperformance of the BlackRock TDFs against these funds was neither material nor persistent.

As compared to the T. Rowe Price and American Funds, which are composed of active funds, BlackRock's three- and five-year aggregate, suite-level returns and asset-weighted returns "underperformed" by approximately 1 to 2 percent, and at worst by approximately 2.5 percent in 2017.   *See* Compl. ¶¶ 44–45.   And when compared to the Fidelity Freedom Index and Vanguard Target Retirement funds (which are also composed of passive index funds but apply a more aggressive "through" retirement strategy than the BlackRock TDFs' "to" strategy), the "underperformance" of BlackRock's three- and five-year returns becomes even more *de minimis*. *See id.*   Considering aggregate suite-level returns between 2Q2016 and 2Q2022, BlackRock TDF's three-year return trailed Fidelity's by no more than 1.1% at its lowest point in 1Q2020.   Compl. ¶ 44.   By 2Q2021, BlackRock's three-year return *outperformed* Fidelity's by roughly the same margins that it underperformed in the previous four years.   *Id.* A similar pattern is observable comparing BlackRock's and Fidelity's five-year returns between 2Q2016 and 2Q2022.   At its nadir in 1Q2020, BlackRock's five-year return trailed Fidelity's by a mere 0.8%.   And by 4Q2021, BlackRock's five-year return *exceeded* Fidelity's.   Plaintiffs' metrics show a nearly identical

---

9   *See also* RJN Ex. 5 (T. Rowe Price Target 2045 Fund Fact Sheet (Sept. 30, 2022)); RJN Ex. 6 (American Funds 2045 Target Date Retirement Fund (June 30, 2022)).   As discussed in the accompanying Request for Judicial Notice, Defendants request judicial notice of the general description of the comparator funds' composition as described in their fact sheets.   *See* Fed. R. Evid. 201(b)(1)–(2); *Anderson*, 2021 WL 229235, at *4; *see also Evans v. Associated Banc-Corp.*, No. 21-C-60, 2022 WL 4638092, at *5 (E.D. Wis. Sept. 30, 2022).

10   *See also* RJN Ex. 7 (Fidelity Freedom Index 2045 Fund Fact Sheet (Sept. 30, 2022)); RJN Ex. 8 (Vanguard Target Retirement 2045 Fund Fact Sheet (Sept. 30, 2022)).

1    pattern for comparing BlackRock's aggregate suite-level returns with Vanguard's between 2Q16

2    and 2Q22.  *See id.*  And as Plaintiffs' own charts show, the BlackRock TDFs began *outperforming*

3    Vanguard and Fidelity by 1Q2021, and in many quarters by the same degree that BlackRock had

4    previously "underperformed."  *See id.*; *see also Cho*, 2021 WL 4438186, at *9 (dismissing ERISA

5    claims where challenged investments outperformed purported benchmarks on several occasions).

6        Such *de minimis* disparities in BlackRock's TDF performance relative to Plaintiffs' cherry-

7    picked comparators do "not support the inference that [Cisco was] imprudent to retain the

8    [BlackRock TDFs] in the set of Plan offerings."  *Patterson*, 2019 WL 4934834, at *10.

9        **2.  The Underperformance Alleged Is Short-Lived.**

10       Because retirement plan investment is inherently long-term, numerous courts have

11   observed that investment performance measured over a given three- to five-year period cannot

12   support a plausible claim for imprudence.  *See, e.g.*, *Smith*, 37 F.4th at 1166 ("Merely pointing to

13   another investment that has performed better in a five-year snapshot of the lifespan of a fund that

14   is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision—

15   largely a process-based inquiry—that breaches a fiduciary duty."); *Wehner I*, 2021 WL 507599, at

16   *9 (plaintiffs' "hindsight assessment of the [TDFs'] alleged underperformance [] based on annual

17   returns over three-and five-year periods" not sufficient to state a duty of prudence claim);

18   *Salesforce I*, 2020 WL 5893405, at *4 ("[A]llegations based on five-year returns are not

19   sufficiently long-term to state a plausible claim of imprudence." (quotations marks omitted));

20   *Dorman*, 2019 WL 580785, at *6 (holding three- to five-year periods of underperformance were

21   "relatively short" and insufficient to show funds "persistent[ly]" or "material[ly]" underperformed

22   (alterations & quotation marks omitted)); *Gonzalez*, 2022 WL 4639673, at *9 ("relatively modest

23   underperformance . . . over a relatively short period of time" was insufficient to plead duty of

24   prudence claim without "other indicia of imprudence" (quotations omitted)); *Pizarro v. Home*

25   *Depot, Inc.*, No. 1:18-cv-01566-SDG, 2022 WL 4687096, at *23 (N.D. Ga. Sept. 30, 2022)

26   (granting defendants' motion for summary judgment, finding that "BlackRock TDFs'

27   underperformance relative to their peer group for three- and five-year periods in the 2013–15

28   window alone" insufficient evidence of imprudence); *cf. Patterson*, 2019 WL 4934834, at *10 (a

13

"consistent, ten-year underperformance may support a duty of prudence claim" where the underperformance is "substantial").

In this case, Plaintiffs rely exclusively on three- and five-year returns over ERISA's six-year repose period.  Compl. ¶¶ 40–45.  Standing alone, these allegations are insufficient to support an inference that Cisco breached its duty of prudence.  Again, fiduciary prudence is about investment process, not investment results—and certainly not short-term results.  Yet, the Complaint alleges, without support, that "competent investors advisors emphasize that fiduciaries should focus on three- to five-year returns."  *Id.* ¶ 40 n.10.  Plaintiffs' fixation on short-term performance is the antithesis of prudent long-term investing and, not surprisingly, is an approach that courts have squarely rejected.  In fact, "[p]recipitously selling a well-constructed portfolio in response to disappointing short-term losses, as it happens, is one of the surest ways to frustrate the long-term growth of a retirement plan."  *Smith*, 37 F.4th at 1166.  Moreover, as another court in this District has recently observed, "[t]here is nothing presumptively imprudent about a retirement plan retaining investments through periods of underperformance as part of a long-range investment strategy."  *Wehner I*, 2021 WL 507599, at *9 (internal citations and quotations omitted).  "Put simply, the duty of prudence does not compel ERISA fiduciaries to reflexively jettison investment options in favor of the prior year's top performers."  *Patterson*, 2019 WL 4934834, at *11.  To hold otherwise would mean that "Plan sponsors would be duty-bound to merely follow the industry rankings for the past year's results, even though past performance is no guarantee of future success."  *Id.*

### C. Plaintiffs Fail to Establish Consistent Underperformance Against Any Meaningful Benchmarks.

Finally, the Court cannot credit Plaintiffs' allegations of underperformance in any case because their figures were not generated using "a sound basis for comparison—a meaningful benchmark."  *Meiners*, 898 F.3d at 822.  This meaningful benchmark requirement has been widely adopted and applied in ERISA fiduciary breach cases.  *See, e.g.*, *Salesforce III*, 2022 WL 1055557, at *2 n.1; *Davis*, 960 F.3d at 485; *Smith*, 37 F.4th at 1167–69; *Forman v. TriHealth, Inc.*, 40 F.4th 443, 449 (6th Cir. 2022); *Albert v. Oshkosh Corp.*, 47 F.4th 570, 582 (7th Cir. 2022), *reh'g denied*, No. 21-2789, 2022 WL 4372363 (7th Cir. Sept. 21, 2022); *Matousek v. MidAmerican Energy Co.*,

No. 21-2749, 2022 WL 6880771, at *5 (8th Cir. Oct. 12, 2022).  It is the Plaintiffs' burden to provide "factual allegations to support a finding that the funds that Plaintiffs identify therein provide a 'meaningful benchmark' against which to evaluate the performance of the [challenged investments]."  *Anderson*, 2021 WL 229235, at *8; *see also Klawonn*, 2021 WL 3508534, at *7; *Wehner I*, 2021 WL 507599, at *8–9.  Simply labeling the funds as "comparable" or "peer" is insufficient.  *See id.*  Plaintiffs cannot "dodge the requirement for a meaningful benchmark" by identifying a better-performing fund "with some similarity."  *Meiners*, 898 F.3d at 823; *see also Anderson*, 2021 WL 229235, at *9.

### 1. TDFs Composed of Actively Managed Funds Are Not Meaningful Benchmarks for the BlackRock TDFs, Which Are Composed of Passively Managed Index Funds.

Courts, including the Ninth Circuit, have recognized that comparing passively managed and actively managed funds—and specifically target-date funds—does not provide a meaningful benchmark.  *See, e.g.*, *Salesforce III*, 2022 WL 1055557, at *2 n.1; *Smith*, 37 F.4th at 1167; *Davis*, 960 F.3d at 485; *Parmer v. Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293, 1306 (D. Minn. 2021); *Wehner I*, 2021 WL 507599, at *10; *Gonzalez*, 2022 WL 4639673, at *9.

Two recent appellate decisions are illustrative.  First, in *Davis v. Salesforce.com, Inc.*, the district court dismissed claims for breach of the duty of prudence where the plaintiffs relied on target-date funds composed of passive index funds and target-date funds comprising a blend of active and passive funds as benchmarks for JP Morgan target date funds that are composed entirely of actively managed funds.  *Salesforce II*, 2021 WL 1428259.  The district court rejected both comparators and observed that "passively managed funds are not meaningful benchmarks for actively managed funds given their essential differences."  *Id.* at *5.  The Ninth Circuit affirmed this aspect of the district court's holding, agreeing that the plaintiffs had "not plausibly alleged that defendants breached the duty of prudence by failing to adequately consider passively managed mutual fund alternatives to the actively managed funds offered by the plan."  *Salesforce III*, 2022 WL 1055557, at *2 n.1.  Second, in *Smith*, the Sixth Circuit recently reached the same conclusion. It rejected a comparison of Fidelity Freedom TDFs (composed of active underlying funds) to Fidelity Freedom Index TDFs (composed of passive index funds).  *See* 37 F.4th at 1167.  It

15

1   reasoned that the two funds had distinct goals and strategies—even though they were sponsored

2   by the same company, managed by the same team, and used a similar allocation of investment

3   types—and that any differences in performance between the two could be attributable to the

4   differing investment strategies. *Id.* Accordingly, a "side-by-side comparison of how two funds

5   performed in a narrow window of time, with no consideration of their distinct objectives, will not

6   tell a fiduciary which is the more prudent long-term investment option." *Id.*

7        Here, the T. Rowe Price Retirement and American Funds Target Date Retirement teed up

8   by Plaintiffs are composed of actively managed funds, *see* Morningstar Report at 8, 22, while the

9   BlackRock TDFs are composed of passive index funds, *see id.* at 40.  The T. Rowe Price and

10  American Funds TDFs thus have "different aims, different risks, and different potential rewards

11  that cater to different investors" than the BlackRock TDFs and are not meaningful benchmarks.

12  *Davis*, 960 F.3d at 485.

13       Plaintiffs provide no factual allegations that would allow the Court to infer otherwise, as is

14  their burden.  *See Meiners*, 898 F.3d at 822.  First, the Complaint does not even address the

15  distinction between target-date funds composed of passive funds and target-date funds composed

16  of active funds.  Second, the funds are not apt comparators simply because the Plaintiffs allege

17  that BlackRock TDFs have "the industry's most aggressive" equity allocation for investors who

18  are furthest from retirement.  *See* Compl. ¶¶ 36–39.  Passively managed and actively managed

19  funds are not apt comparators even if they exhibit similar allocations of investment types.  *See*

20  *Smith*, 37 F.4th at 1167.  Third, despite Plaintiffs' simplification, all target-date funds are not

21  "inherently actively managed, [simply] because managers make changes to the allocations to

22  stocks, bonds, and cash over time."  Compl. ¶ 23.  This allocation, called the "glide path," charts

23  a fund's allocation of assets over time.  *See* DOL Report at 2.  Instead, the passive/active distinction

24  arises from the underlying funds in which a target-date fund invests.  Those underlying funds can

25  be either passive index funds or actively managed funds.  As Plaintiffs acknowledge, actively

26  managed funds and passive index funds have important differences with respect to their investment

27  strategy.  Passive funds "provide broad market exposure at minimal cost and avoid the risk of

28  active management underperformance and style drift."  Compl. ¶ 26.  Actively managed funds

16

1   have higher fees but may "provide more diversified asset class exposure while offering the

2   potential for excess returns." *Id.*  Plaintiffs have thus failed to establish that the T. Rowe Price and

3   American Funds TDFs, which are comprised of actively managed funds, are apt comparators for

4   the BlackRock TDFs.

5               **2.     Plaintiffs' Remaining TDF Comparators Are Similarly Inapt and Do
6                        Not Support a Plausible Claim of Imprudence.**

7               Although Plaintiffs' remaining two comparators—the Vanguard and Fidelity TDFs—

8   invest in passive index funds, they employ a distinct "through" retirement glide path strategy,

9   making them inapt comparators to the BlackRock TDFs which employ a "to" retirement glide

10  path.   Courts have recognized that funds with "different aims, different risks, and different

11  potential rewards that cater to different investors" are not meaningful benchmarks for one another.

12  *Davis*, 960 F.3d at 485.   Funds with "distinct goals and distinct strategies . . . [are] inapt

13  comparators."  *Smith*, 37 F.4th at 1167; *see also Matousek*, 2022 WL 6880771, at *5 (rejecting

14  comparison of two international funds because one followed a "*value*" strategy and the other

15  followed a "*growth*" strategy and comparison of two balanced funds because one invested in "*both*

16  growth and value stocks" and the other invested in value stocks only).   In particular, target-date

17  funds with different glide paths have different goals for participants' retirement and therefore do

18  not provide a sound basis for comparison.  *See Pizarro*, 2022 WL 4687096, at *25 (comparing

19  BlackRock TDFs to Vanguard and other TDFs with a through "glide path" constituted an "apples

20  and oranges" comparison).

21              All of Plaintiffs' proposed comparators, including the Vanguard and Fidelity TDFs, have

22  "distinct goals and strategies" compared to the BlackRock TDFs.   Target-date funds are either

23  intended to support participants "to" retirement or "through" retirement.   Funds that follow a glide

24  path "to" retirement, like BlackRock TDFs, reduce the "TDF's equity exposure over time to its

25  most conservative point at the target date" of retirement.   DOL Report at 1.   By contrast, funds

26  that follow a "through" retirement glide path "reduce[] equity exposure *through* the target date so

27  it does not reach its most conservative point until years later."  *Id.* (emphasis added).   The

28  Vanguard and Fidelity TDFs follow a "through" strategy, while BlackRock follows a "to" strategy.

17

*See* Morningstar Report at 37–38, 40; Compl. ¶ 38.  The difference is important because investors in "through retirement" TDFs accept greater investment risk as they approach retirement in return for greater potential returns.  *See* DOL Report at 2.  But this difference also impacts investors at the other end of the retirement spectrum.  As plaintiffs note, some of BlackRock TDFs have an aggressive allocation of assets (higher proportion of funds in equity) for those furthest from retirement.  Compl. ¶ 38; *see* Morningstar Report at 25–26 (comparing BlackRock TDFs' glide path to T. Rowe. Price and an average TDF glide path); *see also id.* at 37 (depicting "to" versus "through" glide paths).  The salient point is that the "to" and "through" glidepaths chart materially different risk profiles, making the Vanguard and Fidelity TDFs unsuitable comparators for BlackRock TDFs.  *See Pizarro*, 2022 WL 4687096, at *24 & n.210 (holding that Vanguard, Fidelity, and T. Rowe Price TDFs were not "apt comparators" to BlackRock TDFs due to their "'through-retirement' glide paths").[11]

Under controlling Ninth Circuit law, Plaintiffs have failed to provide a meaningful benchmark for evaluating the BlackRock TDFs.  *See Salesforce III*, 2022 WL 1055557, at *2 n.1. And even assuming that the Vanguard and Fidelity funds were comparable, the difference in performance during Plaintiffs' putative class period was negligible and the BlackRock TDFs are now outperforming even Plaintiffs' cherry-picked comparators.  *See supra* Sec. III.B.2.  This demonstrates the folly of forcing fiduciaries to chase the best-performing funds at any given time and reinforces that the correct measure for fiduciary prudence is process, not performance.  Had Cisco abandoned the BlackRock TDFs for Fidelity or Vanguard to avoid marginal and short-lived underperformance, as Plaintiffs suggest, it would *now* face liability for depriving investors of BlackRock's recent (and on-going) stretch of gains.

---

[11] In fact, all of Plaintiffs' comparator funds employ a "through" strategy, which is yet another reason that the actively managed target-date funds are inappropriate comparators for the BlackRock TDFs.

### D.     Counts II and III Are Derivative of the Claim for Breach of Duty of Prudence and Should Thus Be Dismissed.

To state an ERISA claim for failure to monitor, "the plaintiff must allege that the defendant failed to review the performance of its appointees at reasonable intervals in such a manner as may be reasonably expected to ensure compliance with the terms of the plan and statutory standards." *Dorman v. Charles Schwab Corp.*, No. 17-cv-00285-CW, 2018 WL 6803738, at *7 (N.D. Cal. Sept. 20, 2018) (quoting *Fernandez v. Franklin Res., Inc.*, No. 17-cv-06409-CW, 2018 WL 1697089, at *7 (N.D. Cal. Apr. 6, 2018)).  Such a claim is "essentially derivative" of an underlying breach of fiduciary duty claim.  *Id.*

Count II alleges that Cisco failed to monitor other Plan fiduciaries who breached their duties under ERISA.  Compl. ¶¶ 72–80.  Because Plaintiffs' "breach of fiduciary duty cause of action fails to state a claim, this *cause of action* does as well."  *Dorman*, 2018 WL 6803738, at *7; *see also Salesforce I*, 2020 WL 5893405, at *7 (dismissing derivative failure to monitor fiduciaries and co-fiduciary breaches where plaintiffs had failed to state underlying claim for breach of duty of prudence); *Wehner I*, 2021 WL 507599, at *10 (same).

Count III alleges that if Cisco is deemed not to be a fiduciary within the meaning of ERISA, it had sufficient knowledge to prevent a breach by others who were fiduciaries and therefore is liable for a knowing breach of trust and should be enjoined from participating in further breaches. Compl. ¶¶ 81–83.  But, to state a claim for knowing breach of trust or knowing participation in breach of fiduciary duties as a non-fiduciary, the plaintiff must plead that there was an underlying breach of duty by a fiduciary.  *Wehner I*, 2021 WL 507599, at *11.  For the reasons stated above, Plaintiffs have not plausibly pleaded the predicate breach and Count III should therefore be dismissed.  *See id.* (dismissing identically pleaded claim for non-fiduciary liability); Wehner Compl. ¶¶ 74–76.

### IV.     CONCLUSION

Plaintiffs' bare allegations of *de minimis* underperformance over short time periods are not enough to raise the plausible inference of fiduciary imprudence.  And that is reason enough to dismiss Plaintiffs' Complaint as a matter of settled law.  That Plaintiffs could only gin up the meager underperformance alleged in their Complaint by comparing the BlackRock TDFs to

19

1    dissimilar funds with distinct goals and strategies is another, independent reason why Plaintiffs'

2    claims are doomed under controlling Ninth Circuit law.  Because Plaintiffs have not (and cannot)

3    allege a viable claim of fiduciary imprudence under ERISA, their derivative claims fail as a matter

4    of law too. The Court should grant Cisco's motion to dismiss and end this case.

5

6    Dated: October 31, 2022                         Respectfully submitted,

7                                                    KING & SPALDING LLP

8                                                    By:  /s/ Darren A. Shuler

9                                                    QUYEN L. TA (SBN 229956)
                                                     MATTHEW H. DAWSON (SBN 307350)
10                                                   DAVID TETRICK, JR. (*Pro Hac Vice*)
                                                     DARREN A. SHULER (*Pro Hac Vice*)
11                                                   DANIELLE CHATTIN (*Pro Hac Vice*)

12                                                   *Attorneys for Defendants*
                                                     Cisco Systems, Inc.; Board of Trustees of
13                                                   Cisco Systems, Inc.; and Administrative
                                                     Committee of the Cisco Systems, Inc. 401(k)
14                                                   Plan

15

16

17

18

19

20

21

22

23

24

25

26

27

28