MILLER SHAH LLP
Kolin C. Tang (SBN 279834)
3 Embarcadero Street, Suite 1650
San Francisco, CA 94111
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: kctang@millershah.com

*Attorney for Plaintiffs, the Plan,*
*and the Proposed Class*

[Additional Counsel Listed on Signature
Page]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| ROBERT BRACALENTE and BORIS GDALEVICH, individually and as representatives of a class of similarly situated persons, on behalf of the CISCO SYSTEMS, INC. 401(K) PLAN,<br><br>Plaintiffs,<br><br>v.<br><br>CISCO SYSTEMS, INC.; THE BOARD OF TRUSTEES OF CISCO SYSTEMS, INC.; THE ADMINISTRATIVE COMMITTEE OF THE CISCO SYSTEMS, INC. 401(K) PLAN; and DOES No. 1-20, Whose Names Are Currently Unknown,<br><br>Defendants. | CASE NO. 5:22-cv-04417-EJD<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**<br><br>Date: March 9, 2023<br>Time: 9:00 a.m.<br><br>Judge: Hon. Edward J. Davila<br>Motion to Dismiss filed: October 31, 2022 |

# <u>TABLE OF CONTENTS</u>

I.    STATEMENT OF ISSUES TO BE DECIDED ................................................... 1

II.    INTRODUCTION ................................................................................................ 1

III.    FACTUAL BACKGROUND ............................................................................... 5

   A.  Plaintiffs, Defendant, and Plan Structure ....................................................... 5

   B.  Target-Date Funds .......................................................................................... 6

IV.    ARGUMENT ..................................................................................................... 10

   A.  Legal Standard .............................................................................................. 10

   B.  Plaintiffs Plausibly State a Breach of Duty of Prudence Claim......................... 11

     1.  The Severe and Consistent Underperformance of the BlackRock TDFs Supports a Claim that Defendant Breached Its Fiduciary Duty......................................................................... 13

     2.  Defendant's Claims Regarding the BlackRock TDFs' Performance Are Misleading.... 17

     3.  Plaintiffs Have Plausibly Alleged Meaningful Benchmarks for the BlackRock TDFs .. 19

       a.  Differences in Management Styles Do Not Undermine the Appropriateness of the Comparator Funds as Benchmarks…………………………………………………20

       b.  The Glide Path Differences Identified by Defendant Are Not Material to the Court's Determination………………………………………………21

   C.  Plaintiffs' Ancillary Claims Are Sufficiently Pled ........................................ 23

V.    CONCLUSION ................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Intel Corp.*,
  579 F. Supp. 3d 1133 (N.D. Cal. 2022) ....................................................................... 23

*Bekker v. Neuberger Berman Inv. Com*m.,
  2019 WL 2073953 (S.D.N.Y. May 9, 2019) ............................................................... 14

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
  2017 WL 1091248 (S.D. Ind. Mar. 23, 2017) ............................................................... 5

*Birse v. CenturyLink, Inc.*,
  2019 WL 1292861 (D. Colo. Mar. 20, 2019) .............................................................. 12

*Bouvy v. Analog Devices, Inc.*,
  2020 WL 3448385 (S.D. Cal. June 24, 2020) ............................................................... 5

*Braden v. Wal-Mart Store, Inc.*,
  588 F.3d 585 (8th Cir. 2009) ................................................................... 3, 10, 12, 14

*Cassell v. Vanderbilt Univ.*,
  285 F. Supp. 3d 1056 (M.D. Tenn. 2018) ..................................................................... 5

*Concha v. London*,
  62 F.3d 1493 (9th Cir. 1995) ....................................................................................... 11

*Cunningham v. Cornell Univ.*,
  2017 WL 4358769 (S.D.N.Y. Sept. 29, 2017) ......................................................... 9, 19

*Cunningham v. Cornell Univ.*,
  2019 WL 4735876 (S.D.N.Y. Sept. 27, 2019) ........................................................... 14

*Cutrone* v. *Allstate Corp.*,
  2021 WL 4439415 (N.D. Ill. Sept. 28, 2021) ............................................................... 5

*Davis v. Salesforce.com Inc.*,
  2021 WL 1428259 (N.D. Cal. Apr. 15, 2021) ............................................................. 20

*Davis v. Washington University in St. Louis*,
  960 F.3d 478 (8th Cir. 2020) ....................................................................................... 11

*Dearing v. IQVIA Inc.*,
  2021 WL 4291171 (M.D.N.C. Sept. 21, 2021) .................................................. 8, 19, 20

*DiFelice v. U.S. Airways, Inc.*,
  497 F.3d 410 (4th Cir. 2007) ......................................................................................... 3

*Donovan v. Bierwirth*,
  680 F.2d 263 (2d Cir. 1982) ..................................................................... 2

*Falberg v. Goldman Sachs Group, Inc.*,
  2020 WL 3893285 (S.D.N.Y. July 9, 2020) ............................................... 5

*Garcia v. Alticor, Inc.*,
  2021 WL 5537520 (W.D. Mich. Aug. 9, 2021) ................................... 15, 16

*Garthwait v. Eversource Energy Co.*,
  2022 WL 3019633 (D. Conn. July 29, 2022) .............................................. 8

*Goodman v. Columbus Regional Healthcare System, Inc.*,
  2022 WL 228764 (M.D. Ga. January 25, 2022) ........................................ 15

*Harmon v. FMC Corp.*,
  2018 WL 1366621 (E.D. Pa. March 16, 2018) .......................................... 13

*Henderson v. Emory Univ.*,
  252 F. Supp. 3d 1344 (N.D. Ga. 2017) ..................................................... 20

*Howard v. Shay*,
  100 F.3d 1484 (9th Cir. 1996) .................................................................... 2

*Hughes v. Northwestern Univ.*,
  142 S. Ct. 737 (2022) .................................................................... 2, 12, 13

*In re Biogen, Inc. ERISA Litig.*,
  2021 WL 3116331 (D. Mass. July 22, 2021) ..................................... 5, 8, 18

*In re LinkedIn ERISA Litig.*,
  2021 WL 5331448 (N.D. Cal. Nov. 16, 2021) .................................... Passim

*In re Medstar ERISA Litig.*,
  2021 WL 391701 (D. Md. Feb. 4, 2021) ................................... 8, 13, 19, 20

*In re Quest Diagnostics Incorporated ERISA Litigation.*,
  2021 WL 1783274 (D.N.J. May 4, 2021) .................................................... 8

*In re Sprint Corp. ERISA Litig.*,
  2004 WL 2182186 (D. Kan. Sept. 24, 2004) ............................................. 24

*In re Unisys Sav. Plan Litig.*,
  74 F.3d 420 (3d Cir. 1996) ................................................................. 12, 18

*In re: Prime Healthcare ERISA Litig.*,
  2021 WL 3076649 (C.D. Cal. July 16, 2021) ....................................... 5, 13

*Ingersoll–Rand Co. v. McClendon*,
  498 U.S. 133 (1990) ............................................................................................................ 2

*Jones v. Coca-Cola Consolidated, Inc.*,
  2021 WL 1226551 (W.D.N.C. March 31, 2021) ................................................................ 8

*Kendall v. Pharm. Prod. Development, LLC*,
  2021 WL 1231415 (E.D.N.C. Mar. 31, 2021) .................................................................. 12

*Klawonn v. Bd. of Dirs. for the Motion Picture Indus. Pension Plans*,
  2021 WL 3508534 (C.D. Cal. Aug. 9, 2021) ................................................................... 16

*Kopp v. Klein*,
  894 F.3d 214 (5th Cir. 2018) ............................................................................................ 12

*Kruger v. Novant Health, Inc.*,
  131 F. Supp. 3d 470 (M.D.N.C. 2015) ............................................................................. 19

*Main v. Amr. Airlines*,
  248 F. Supp. 3d 786 (N.D. Tex. 2017) ............................................................................... 5

*Marshall v. Northrop Grumman Corp.*,
  2019 WL 4058583 (C.D. Cal. Aug. 14, 2019) ................................................................. 12

*Matousek v. MidAm. Energy Co.*,
  51 F.4th 274 (8th Cir. Oct. 12, 2022) ............................................................................... 23

*Meiners v. Wells Fargo*,
  898 F.3d 820 (8th Cir. 2018) ............................................................................... 16, 20, 21

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
  521 F.3d 1097 (9th Cir. 2008) .......................................................................................... 10

*Miller v. Astellas US LLC*,
  2021 WL 1387948 (N. D. Ill. Apr. 13, 2021) ............................................................. 11, 13

*Moler v. Univ. of Maryland Med. Sys.*,
  2022 WL 2756290 (D. Md. July 13, 2022) ....................................................... 15, 16, 20, 21

*Moreno v. Deutsche Bank Ams. Holding Corp.*,
  2016 WL 5957307 (S.D.N.Y. Oct. 13, 2016) ................................................................... 11

*Morin v. Essentia Health*,
  2017 WL 4876281 (D. Minn. Oct. 27, 2017) ................................................................... 23

*Patterson v. Morgan Stanley*,
  2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ..................................................................... 16

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013) .................................................................................... 10, 11, 13, 18

*Pilot Life Ins. Co. v. Dedeaux*,
481 U.S. 41 (1987).................................................................................................................. 2

*Pinnell v. Teva Pharms. USA, Inc.*,
2020 WL 1531870 (E.D. Pa. Mar. 31, 2020) ...................................................................... 5

*Pizarro v. Home Depot, Inc.*,
2019 WL 11288656 (N.D. Ga. Sept. 20, 2019)................................................................... 3

*Pizarro v. Home Depot, Inc.*,
2022 WL 4687096 (N.D. Ga. Sept. 30, 2022)................................................................. 3, 9

*Reich v. Valley Nat'l Bank of Arizona*,
837 F. Supp. 1259 (S.D.N.Y. 1993) ................................................................................. 11

*Schapker v. Waddell & Reed Fin., Inc.*,
2018 WL 1033277 (D. Kan. Feb. 22, 2018) ..................................................................... 20

*Shaw v. Delta Air Lines, Inc.*,
463 U.S. 85 (1983)............................................................................................................ 2, 9

*Short v. Brown Univ.*,
320 F. Supp. 3d 363 (D.R.I. 2018) ................................................................................... 20

*Smith v. CommonSpirit Health*,
37 F.4th 1160 (6th Cir. 2022) ...................................................................................... 16, 21

*Smith v. Shoe Show, Inc.*,
2022 WL 583569 (M.D.N.C. Feb. 25, 2022) ................................................................... 13

*Sweda v. Univ. of Pennsylvania*,
923 F.3d 320 (3d Cir. 2019) ..................................................................................... 3, 11, 12

*Tatum v. RJR Pension Inv. Comm.*,
761 F.3d, 346 (4th Cir. 2014) .................................................................................. 3, 12, 14

*Terraza v. Safeway Inc.*,
241 F. Supp. 3d 1057 (N.D. Cal. 2017)............................................................................ 10

*Tibble v. Edison Int'l*,
843 F.3d 1187 (9th Cir. 2016) ................................................................................... 2, 9, 12

1
2

*Troudt v. Oracle Corp.*,
   2017 WL 1100876 (D. Colo. Mar. 22, 2017) ................................................................. 5

3
4

*Unite Here Retirement Fund v. City of San Jose*,
   2021 WL 292533 (N.D. Cal. Jan. 28, 2021) ............................................................... 10

5

*White v. Chevron Corp.*,
   2017 WL 2352137 (N.D. Cal. May 31, 2017) ........................................................... 16

6
7

*Williams v. Centerra Grp., LLC*,
   2021 WL 4227384 (D.S.C. Sept. 16, 2021) ............................................................... 11

8

**Statutes**

9
10
11

29 U.S.C. § 1001(b) ....................................................................................................... 2
29 U.S.C. § 1104(a)(1) ................................................................................................. 12
29 U.S.C. § 1104(a)(1)(A) ............................................................................................. 9
29 U.S.C. § 1104(a)(1)(B) ........................................................................................ 9, 12

12

**Rules**

13
14
15

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 1
Fed. R. Civ. P. 15 ........................................................................................................... 1
Fed. R. Civ. P. 15(a) .................................................................................................... 24

16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
5:22-cv-04417-EJD

1    Plaintiffs, Robert Bracalente and Boris Gdalevich (collectively, "Plaintiffs"), individually

2    and on behalf of the Cisco Systems, Inc. 401(k) Plan ("Plan") and a proposed class of participants

3    and beneficiaries in the Plan, respectfully submit this Memorandum of Law in Opposition to the

4    Motion to Dismiss ("Motion") and supporting Memorandum of Law ("Memorandum")[1] filed by

5    Defendant,[2] Cisco Systems, Inc. ("Cisco" or "Defendant") [ECF No. 40.]

6    **I.**     **STATEMENT OF ISSUES TO BE DECIDED**

7        A.    Whether Plaintiffs pled sufficient circumstantial facts under Federal Rule of Civil

8    Procedure 12(b)(6) from which the Court can reasonably infer that Defendant's Plan process for

9    monitoring the Plan's investments was deficient.

10       B.    Whether Plaintiffs' co-fiduciary, monitoring, and alternative knowing participation

11   in a breach of trust claims are adequately pled.

12       C.    Whether Plaintiffs should be granted leave to amend their initial pleading,

13   consistent with the liberal standard for amendment under Federal Rule of Civil Procedure 15,

14   should the Court find any of their claims deficient.

15   **II.**    **INTRODUCTION**

16       Completely devoid of any meritorious, substantive arguments, Defendant's Memorandum

17   seeks to draw the Court's attention away from the well-pled allegations in the Complaint and

18   _____

19   [1] On November 7, 2022, the American Benefits Council, the ERISA Industry Committee, and the

20   American Retirement Association, and the Committee on Investment of Employee Benefit

21   Assets, Inc., and separately, the United States Chamber of Commerce ("Proposed *Amici*") filed

22   Motions for Leave to File *Amicus Curiae* briefs (ECF Nos. 42, 48) advocating for the dismissal of

23   the Complaint (ECF No. 1) ("Complaint").  While Plaintiffs intend to separately oppose the

24   participation of the Proposed *Amici*, Plaintiffs address arguments raised by the Proposed *Amici* to

25   the extent that they are duplicative of those raised by Defendant.

26   [2] As Cisco notes in its Memorandum, the Complaint originally named the Cisco Systems, Inc.

27   Board of Trustees and Administrative Committee, as defendants, but both have since been

28   voluntarily dismissed by agreement of the Parties.  (ECF No. 35).

1  garner dismissal on the basis of mischaracterizations of Plaintiffs' allegations, inappropriate and

2  wrongheaded policy arguments, and grievances about the counsel who represent retirement plan

3  participants and beneficiaries in ERISA class actions.  Defendant's Motion is the latest effort by

4  defendants (and their insurers) in ERISA breach of fiduciary duty cases to fabricate an elevated

5  pleading standard in the obvious hope of garnering what would amount to a judicial permission

6  slip to evade duties described by the Court of Appeals as "the highest known to the law."  *Tibble v.*

7  *Edison Int'l*, 843 F.3d 1187, 1197 (9th Cir. 2016) (quoting *Howard v. Shay*, 100 F.3d 1484, 1488

8  (9th Cir. 1996)); *see also Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982) (same).

9        ERISA's weighty fiduciary duties are grounded in recognition of the importance of private

10  benefit plans as the bedrock of most American workers' retirement preparation.  Although

11  Plaintiffs are mindful of the competing obligations fiduciaries face, the pleading standard offers no

12  "free pass" when it comes to fiduciaries' duties to manage benefit plans with paramount diligence

13  and solely in the interest of participants and beneficiaries in such plans.  *See Tibble*, 843 F.3d at

14  1197.  Indeed, "ERISA is a comprehensive statute designed to promote the interests of employees

15  and their beneficiaries in employee benefit plans."  *Ingersoll–Rand Co. v. McClendon*, 498 U.S.

16  133, 137 (1990) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983)).  ERISA

17  "establish[es] standards of conduct, responsibility, and obligation[s] for fiduciaries of employee

18  benefit plans."  *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44 (1987) (quoting 29 U.S.C. §

19  1001(b)).  The remedial scheme established by ERISA contemplates private actions as a principal

20  means by which employees may effectively hold employers accountable for breaches of their

21  fiduciary duties.

22        Confronted with allegations supporting a strong inference that Cisco breached its duties of

23  prudence and loyalty, Defendant resorts to potshots at Plaintiffs' counsel, portraying this action as

24  "one of a dozen, nearly identical strike suits filed by the same law firm."[3]  *See* Memorandum, at 2.

25  _____

26  [3]Defendant's strategy recently caused a court in the Southern District of Iowa to observe:

27  "defense counsel are obviously following a 'playbook,' too, in which, as far as the Court can tell,

28  they indiscriminately file motions to dismiss in every case and have no qualms (at least here)

1    Although Defendant seeks a decision by the Court that defendants could use as a magic wand to

2    wave over other cases alleging breaches of fiduciary duty, the pleading standard requires the Court

3    to review only the Complaint carefully and holistically before it.  *See Tatum v. RJR Pension Inv.*

4    *Comm.*, 761 F.3d, 346, 360 (4th Cir. 2014) (citing *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410,

5    420 (4th Cir. 2007)); *see also Sweda v. Univ. of Pennsylvania*, 923 F.3d 320, 331 (3d Cir. 2019)

6    (quoting *Braden v. Wal-Mart Store, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009)) (finding ERISA's

7    remedial scheme requires "careful and holistic evaluation of a complaint's factual allegations

8    before [a court] conclude[s] that they do not support a plausible inference that the plaintiff is

9    entitled to relief.").

10          First, where Defendant deigns to address the substance of the Complaint, it first claims that

11   underperformance cannot provide a basis for a plausible imprudence claim, an argument which

12   misrepresents both the law and Plaintiffs' allegations regarding circumstances knowable to

13   Defendant throughout the Class Period.  Second, Defendant claims that the underperformance of

14   the BlackRock target date funds ("TDF(s)") offered by Defendant in the Plan ("BlackRock

15   TDFs") was minor and transitory, pointing to improved performance in recent years.[4]  Defendant

16   _____

17   about raising internally inconsistent arguments in the process. The Defendant is, in effect, asking

18   courts on a one-by-one basis to adopt a categorical approach to ERISA breach of fiduciary duty

19   lawsuits despite the Supreme Court's conclusion that such categorical approaches are

20   inappropriate." *Rodriguez v. Hy-Vee, Inc.*, No. 4:22-cv-00072-SHL-HCA, ECF No. 46, at 16

21   (S.D. Iowa Oct. 21, 2022) (citing *Hughes v. Northwestern Univ.*, 142 S. Ct. 737, 740 (2022)).

22   [4]Defendant bizarrely claims that the BlackRock TDFs have been found to be an "objectively

23   prudent" investment (Memorandum, at 2), citing to a recent decision in *Pizarro v. Home Depot,*

24   *Inc.*, 2022 WL 4687096, at *23 (N.D. Ga. Sept. 30, 2022).  The court in *Pizarro* did not make

25   such a sweeping finding.  Rather, its findings concerning "substantive prudence" were based on

26   the record concerning Home Depot's monitoring of the BlackRock TDFs in that plan—far from a

27   finding that the BlackRock TDFs were objectively prudent (let alone over the Class Period at

28   issue here). *See id.*, 2022 WL 4687096, at *25.  Moreover, the court was careful to note in its

1   mistakenly suggests that this somehow absolves its failure to act on the sustained, drastic

2   underperformance alleged in the Complaint.  Third, Defendant suggests that the comparator TDFs

3   pled in the Complaint are not meaningful benchmarks for the BlackRock TDFs, an argument

4   which raises factual issues ill-suited to a motion to dismiss and ignores well-pled allegations

5   supporting the comparisons made.  Fourth, Defendant argues that Plaintiffs' monitoring and

6   knowing breach of trust claims should be dismissed because they are derivative of Plaintiffs'

7   breach of fiduciary duty claims and because there are no specific allegations regarding the

8   monitoring process.  Plaintiffs' claims are thoroughly supported by the actual facts and data cited

9   in the Complaint, which make plain that Defendant, equipped throughout the Class Period with

10  signals of the consistent and significant underperformance of the BlackRock TDFs, failed to take

11  _____

12  decision that facts such as the popularity of the BlackRock TDFs "preclude[] summary judgment

13  for Plaintiffs and *Home Depot Defendants alike*" and considered prudence "vis-à-vis the Plan's

14  goals" *not* those of other plans, such as the Plan at issue here.  *See id.*, 2022 WL 4687096, at *24–

15  25 (emphasis added).  Moreover, Defendant fails to acknowledge that the court in *Pizarro* denied

16  the defendants' motion to dismiss in relevant part, finding similar allegations sufficient to state a

17  claim.  *See Pizarro v. Home Depot, Inc.*, 2019 WL 11288656, at *4 (N.D. Ga. Sept. 20, 2019)

18  (declining to apply *Meiners* to dismiss claims and stating "this Court is unconvinced that

19  Plaintiffs' factual allegations of performance data and benchmarks could not lead to a reasonable

20  inference of imprudence").  At bottom, Defendant brazenly attempts to shrug off the context-

21  specific inquiry required in determining prudence by ERISA fiduciaries, and, perhaps most

22  importantly, neglect to mention that the *Pizarro* court's grant of summary judgment to defendants

23  in that case was couched heavily on the performance of the BlackRock TDFs over a ***different***

24  ***time period***.  *Id*. at *2.  It is absurd to suggest that a finding that the BlackRock TDFs may have

25  been a suitable investment option for a *different* plan during a *different* time period on a *different*

26  factual record (developed through discovery) somehow equates to a rubber stamp to excuse

27  Defendant of its duty to prudently monitor investment options amidst changing market

28  conditions.

1   any action to determine whether replacement of the underperforming suite of funds was necessary.

2   District courts from every circuit have denied similar motions to dismiss analogous claims pled

3   with the degree of detail and specificity in the Complaint.[5]  The Court should deny the Motion.

4   **III.     FACTUAL BACKGROUND**

5          **A.  Plaintiffs, Defendant, and Plan Structure**

6          Bracalente is a former employee of Cisco and a participant in the Plan.  Compl. at ¶ 9.

7   Bracalente maintained an investment through the Plan in the BlackRock LifePath Index 2030

8   Fund, the BlackRock LifePath Index 2040 Fund, the BlackRock U.S Equity Market Index Fund,

9   the BlackRock International Equity Fund, the BlackRock U.S. Debt Index Fund and the Stable

10  Value Fund.  *Id.*

11         Gdalevich is a former employee of Capital One and participant in the Plan. *Id.*, at ¶ 10.

12  Gdalevich maintained an investment through the Plan in the BlackRock LifePath Index 2045

13  Fund and the BlackRock LifePath Index Retirement Fund.  *Id.*

14         The Plan is one of the largest defined contribution plans in the United States, with 59,460

15  participants and assets totaling approximately $16.43 billion by the end of 2020.  *Id.*, at ¶ 4.

16  Plans with such substantial assets and participant counts have significant bargaining power and

17  _____

18  [5]*See, e.g.*, *In re LinkedIn ERISA Litig.*, 2021 WL 5331448, at *8 (N.D. Cal. Nov. 16, 2021)

19  (Davila, J.); *In re: Prime Healthcare ERISA Litig.*, 2021 WL 3076649, at *6 (C.D. Cal. July 16,

20  2021); *Cutrone* v. *Allstate Corp.*, 2021 WL 4439415, at *9 (N.D. Ill. Sept. 28, 2021); *In re*

21  *Biogen, Inc. ERISA Litig.*, 2021 WL 3116331, at *3 (D. Mass. July 22, 2021); *Bouvy v. Analog*

22  *Devices, Inc.*, 2020 WL 3448385 (S.D. Cal. June 24, 2020); *Falberg v. Goldman Sachs Group,*

23  *Inc.*, 2020 WL 3893285, at *11 (S.D.N.Y. July 9, 2020); *Pinnell v. Teva Pharms. USA, Inc.*, 2020

24  WL 1531870, at *6 (E.D. Pa. Mar. 31, 2020); *Feinberg v. T. Rowe Price Group, Inc.*, 2018 WL

25  3970470, at *7 (D. Md. Aug. 20, 2018); *Main v. Amr. Airlines*, 248 F. Supp. 3d 786, 794 (N.D.

26  Tex. 2017); *Troudt v. Oracle Corp.*, 2017 WL 1100876, at *3 (D. Colo. Mar. 22, 2017); *Cassell*

27  *v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1061 (M.D. Tenn. 2018); *Bell v. Pension Comm. of*

28  *ATH Holding Co., LLC*, 2017 WL 1091248, at *4 (S.D. Ind. Mar. 23, 2017).

---

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
5:22-cv-04417-EJD

the ability to demand low-cost administrative and investment management services. *Id.* Cisco is the Plan sponsor and a fiduciary charged with administering the Plan. *Id.*, at ¶¶ 5, 11. The Plan pays its expenses from its assets as a reduction of participants' investment income. *Id.*, at ¶ 19.

### B.  Target-Date Funds

A TDF is an investment vehicle that offers an all-in-one retirement solution through a portfolio of underlying funds that gradually shifts to become more conservative as the assumed target retirement year approaches. *Id.*, at ¶ 23. TDF glide paths are managed on either a "to" or "through" retirement basis. *Id.*, at ¶ 24. A "to retirement" TDF will reach a terminal asset allocation and remains static once the assumed retirement date occurs, with the expectation that participants will withdraw their funds shortly after reaching retirement, or soon thereafter. In contrast, a "through retirement" glide path presumes participants will remain invested after entering retirement and gradually draw down on their funds. The terminal allocation of a "through retirement" TDF is not reached until a predetermined number of years after the target date. *Id.*

The underlying mutual funds that TDF managers choose to represent each asset class within a TDF structure can be actively or passively managed. *Id.*, at ¶ 26. TDFs comprised primarily of passive strategies provide broad market exposure at lower cost and assume lower levels of risk than TDFs comprised of actively managed funds, which tend to provide more diversified asset class exposure and offer the potential for excess returns, particularly in less efficient asset classes. *Id.*

### C.    The BlackRock Target Date Funds

Since at least December 31, 2009, the Plan lineup has offered the BlackRock TDFs, which have performed significantly worse than many of the suitable alternative mutual funds offered by competing TDF providers throughout the Class Period. *Id.*, at ¶ 28. A prudent fiduciary evaluates TDF returns not only against an appropriate index, but also against specific, readily investable alternatives (*i.e.*, a peer group) to ensure that the current TDF offering remains suitable for plan participants. *See id.* ¶ 35. The Complaint alleges the BlackRock TDFs persistently and substantially underperformed a group of readily available peer TDFs ("Comparator TDFs" or

1     "Comparators").  Specifically, the Comparator TDFs, a representative group of the most likely

2     alternatives to be selected were the BlackRock TDFs to be replaced, persistently and dramatically

3     outperformed the BlackRock TDFs on rolling three- and five-year bases at every quarter end

4     during the Class Period—*the exact times at which Defendant's acts or omissions caused the*

5     *retention of the BlackRock TDFs in the Plan*.  *See id.* ¶¶ 34–47.  A simple and objective

6     evaluation of the BlackRock TDFs against all other appropriate TDFs would have led prudent

7     fiduciaries to replace the BlackRock TDFs with one of the Comparator TDFs, or one of the

8     several other suitable, readily available alternative TDF suites on the market.  *See id*. ¶ 47.

9     Instead, Defendant's reliance on a flawed decision-making process, failure to appropriately

10    monitor the BlackRock TDFs, and failure to act in the sole interest of the Plan, caused its

11    participants to miss out on millions of dollars in capital appreciation for their retirement savings.

12    *See id*.

13        Exacerbating Defendant's imprudent and disloyal conduct in retaining the BlackRock

14    TDFs is the suite's role as the Plan's Qualified Default Investment Alternative ("QDIA").  *Id*., at

15    ¶ 32.  Fiduciaries of a retirement plan can designate one of the investment offerings from a plan's

16    lineup as a QDIA to aid participants who lack the knowledge or confidence to make investment

17    elections for their retirement assets; if participants do not affirmatively direct where their assets

18    should be invested, all contributions are automatically invested in the QDIA.  *Id*.  Plan fiduciaries

19    are responsible for the prudent selection and monitoring of an appropriate QDIA.  *See id*.  Given

20    the vast majority of plan participants in general (of which the Plan participants are no exception)

21    are not sophisticated investors, they largely concentrate their retirement assets in TDFs by default.

22    *Id*., at ¶ 33.  As such, the impact of Defendant's imprudent selection of TDFs is magnified vis-à-

23    vis other funds in the Plan.  *Id*.  By December 31, 2020, roughly 22% of the Plan's assets were

24    invested in the BlackRock TDFs.  *Id*.

25        **D.     The Comparator TDFs**

26        Prudent fiduciaries evaluate TDF returns not only against an appropriate index or a broad

27    group of all peer TDFs, but also against specific, readily investable alternatives.  *See id*., at ¶ 35.

28    Indeed, prudent fiduciaries are aware of the major offerings in all asset classes represented in a

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
5:22-cv-04417-EJD

plan.  *See id*., at ¶ 37.  The TDF market is particularly top-heavy; by the end of 2021, the top six

largest TDF series managed approximately three-quarters of all assets invested in TDFs.  *Id*., at ¶

36.  The Complaint pleads the underperformance of the BlackRock TDFs against four of the five

other major TDF suites, as those Comparators represent the alternatives against which prudent

fiduciaries would have measured the performance of the BlackRock TDFs and the most likely

alternatives to be selected were the BlackRock TDFs to be replaced.  *Id*., at ¶ 37.[6]  Throughout

the Class Period, Defendant was either aware of or could have easily sought access to returns data

and other metrics for each of the Comparator TDFs from Fidelity Investment Institutional,

Financial Engines, or the Plan's other service providers.  *See id*.

Although the Comparator TDFs include funds with "through retirement" glide paths, as is

far more common among TDFs, *see id*., at ¶ 24, and the BlackRock TDFs were designed with a

"to retirement" glide path, the Complaint explains that the nominal difference in glide path

approaches is not a material difference between the BlackRock TDFs and the Comparator TDFs

as it relates to the applicable analysis here.  *Id*., at ¶ 38.  Indeed, although the BlackRock TDFs

de-risk at a quicker pace as a result of their "to retirement" approach, the differences in equity

allocation are reflected only in the two most conservative vintages of the BlackRock TDFs.  *See*

---

[6]The remaining TDF suite (the Fidelity Freedom Funds) has been excluded as a comparator, as

courts around the country have found its inclusion in certain large retirement plans to plausibly

support claims that fiduciaries acted imprudently.  *See Biogen*, 2021 WL 3116331, at *5; *Jones v.*

*Coca-Cola Consolidated, Inc*., 2021 WL 1226551, at *4–5 (W.D.N.C. March 31, 2021); *Dearing*

*v. IQVIA Inc.*, 2021 WL 4291171 (M.D.N.C. Sept. 21, 2021); *In re Quest Diagnostics*

*Incorporated ERISA Litigation*., 2021 WL 1783274, at *3 (D.N.J. May 4, 2021); *In re Medstar*

*ERISA Litig*., 2021 WL 391701 (D. Md. Feb. 4, 2021); *see also Garthwait v. Eversource Energy*

*Co*., 2022 WL 3019633, at *18 (D. Conn. July 29, 2022) (denying defendants' motion for

summary judgment and declining to find that the Fidelity Freedom Funds were a prudent option

for the plan at issue).

1   *id*. This also renders inapposite *Pizarro*'s discussion about glide path variations between the

2   BlackRock TDFs and comparator funds; unlike here, the court in *Pizarro* on summary judgment

3   was not confronted with allegations or evidence explaining that variations in the glide paths of the

4   BlackRock TDFs and Comparator TDFs are largely nominal and do not render comparison inapt.

5   *Compare Pizarro*, 2022 WL 4687096, at *24 (finding glide path variations between funds

6   compared there to be material) *with* Compl. at ¶ 38–40.

7       The Comparator TDFs include funds comprised of actively managed underlying

8   investments (the American Funds and the T. Rowe Price TDFs), as well as TDFs invested entirely

9   in passively managed underlying funds (the Fidelity Freedom Index and Vanguard TDFs).

10      **E.      Plaintiffs' Claims**

11      ERISA is a comprehensive statute designed to promote the interests of employees and

12   their beneficiaries in employee benefit plans.  *Shaw*, 463 U.S. at 85.  "An ERISA fiduciary has a

13   duty of loyalty, which requires that he 'discharge his duties with respect to a plan solely in the

14   interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing

15   benefits to participants and their beneficiaries.'"  *Cunningham v. Cornell Univ.*, 2017 WL

16   4358769, at *4 (S.D.N.Y. Sept. 29, 2017) (quoting 29 U.S.C. § 1104(a)(1)(A)).  "An ERISA

17   fiduciary also has a duty of prudence, which requires that the fiduciary act 'with the care, skill,

18   prudence, and diligence under the circumstances then prevailing that a prudent man acting in a

19   like capacity and familiar with such matters would use in the conduct of an enterprise of a like

20   character and with like aims.'"  *Id.* (quoting 29 U.S.C. § 1104(a)(1)(B)).  As fiduciaries who

21   manage the Plan, Defendant has "a continuing duty—separate and apart from the duty to exercise

22   prudence [and loyalty] in selecting investments at the outset—to monitor, and remove imprudent,

23   trust investments."  *Tibble*, 575 U.S. at 523–24.

24      Plaintiffs principally claim Defendant breached its fiduciary duties by failing to

25   appropriately monitor the BlackRock TDFs, resulting in the retention of the funds in the Plan

26   throughout the Class Period.  *See* Compl. at ¶¶ 28–47.  As the Complaint alleges, Defendant had

27   immediate and then-current returns data for the BlackRock TDFs available to it at all relevant

28   times and either did not seek, or ignored performance data for the Comparator TDFs.  *See id.*, at ¶

---

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
5:22-cv-04417-EJD

46.  Importantly, the Complaint does not engage in any hindsight analysis—*it analyzes the data that was available and should have been reviewed by Defendant in real time at every step in the Class Period*.  Indeed, during the times that Defendant decided to retain the BlackRock TDFs, the relevant returns data indicated the suite's substantial underperformance against the Comparator TDFs, such that the fiduciaries could not have formed a reasonable expectation that the BlackRock TDFs would perform in a manner sufficient to justify their retention in the Plan (while the Comparator TDFs supported such a conclusion).  Defendant failed to appropriately react to these warning signs, which persisted throughout the Class Period and caused significant losses to Plan participants.  *See id*.

## IV.     ARGUMENT

### C.     Legal Standard

"'Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.'"  *Unite Here Retirement Fund v. City of San Jose*, 2021 WL 292533, at *2 (N.D. Cal. Jan. 28, 2021) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).  "When deciding whether to grant a motion to dismiss, the court generally 'may not consider any material beyond the pleadings,'" "must accept as true all 'well-pleaded factual allegations,'" and "must construe the alleged facts in the light most favorable to the plaintiff."  *Id*. (citations omitted).  Moreover, "a court ruling on a motion to dismiss must rest its conclusions 'on the totality of the specific allegations in [the] case.'"  *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1076 (N.D. Cal. 2017) (quoting *Braden*, 588 F.3d at 601 n.7) (denying motion to dismiss in ERISA breach of fiduciary duty action).

In the context of plan mismanagement claims like those asserted here, courts recognize that "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences," and so they must rely on circumstantial facts, such as inexplicable fees and investment offerings, from which a court may "reasonably 'infer from what is alleged that the process was flawed.'"  *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir.

1    2013) (quoting *Braden*, 588 F.3d at 598).  Thus, "[e]ven when the alleged facts do not 'directly

2    address[ ] the process by which the Plan was managed,' a claim alleging a breach of fiduciary

3    duty may still survive a motion to dismiss if the court, based on circumstantial factual allegations,

4    may reasonably 'infer from what is alleged that the process was flawed.'" *Id*. (citation omitted);

5    *see also Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995) ("Where a fiduciary exercises

6    discretionary control over a plan, and assumes the responsibilities that this control entails, the

7    victim of his misconduct often will not, at the time he files his complaint, be in a position to

8    describe with particularity the events constituting the alleged misconduct").  As the court in

9    *Williams v. Centerra Grp., LLC*, 2021 WL 4227384, at *5–6 (D.S.C. Sept. 16, 2021), recently

10   and persuasively explained:

11       Even where a plaintiff does not directly address the process by which a plan is
12       managed, "a claim alleging a breach of fiduciary duty may still survive a motion to
         dismiss if the court, based on circumstantial factual allegations, may reasonably
13       infer from what is alleged that the process was flawed." *Moreno v. Deutsche Bank
         Ams. Holding Corp.*, 2016 WL 5957307, at *5–6 (S.D.N.Y. Oct. 13, 2016). The
14       complaint in this case plausibly alleges a flawed process, not just a flawed outcome.

15       [Defendant] goes on to argue that, even if a fiduciary's prudence could be assessed
16       through hindsight comparison of returns, Plaintiffs' comparisons are inapt and
         uninformative.  [ECF No. 46, p.11].  First, the Court repeats its finding that Plaintiff
17       relies on more than retroactive comparisons of performance, criticizing the process
         as well as the outcome. This renders [Defendant's] attack on the aptitude of
18       Plaintiffs' comparisons a non-starter at the motion to dismiss stage. While
         [Defendant] is correct that performance comparisons between different funds that
19       differ in investment strategy and asset allocation are unavailing, *Davis v.
         Washington University in St. Louis*, 960 F.3d 478, 486 (8th Cir. 2020), factual
20       disputes regarding the aptness of such comparisons are inappropriate to resolve on
21       a Rule 12(b)(6) motion, *Miller v. Astellas US LLC*, 2021 WL 1387948, at *5 (N.D.
         Ill. Apr. 13, 2021).

22

23   Moreover, ERISA's "remedial scheme counsels careful and holistic evaluation of an ERISA

24   complaint's factual allegations before concluding that they do not support a plausible inference

25   that the plaintiff is entitled to relief." *Sweda*, 923 F.3d at 331 (citation omitted).

26       **B.    Plaintiffs Plausibly State a Breach of Duty of Prudence Claim**

27       Section 404 of ERISA, which sets forth the fiduciary duties established by the statute, "is

28   a more stringent version of the prudent person standard than in the common law of trusts." *Reich*

1  *v. Valley Nat'l Bank of Arizona*, 837 F. Supp. 1259, 1273 (S.D.N.Y. 1993).  "The duty of

2  prudence requires ERISA fiduciaries to act "'with the care, skill, prudence, and diligence under

3  the circumstances then prevailing that a prudent man acting in a like capacity and familiar with

4  such matters would use in the conduct of an enterprise of a like character and with like aims.'"

5  *Tatum*, 761 F.3d at 356 (quoting 29 U.S.C. § 1104(a)(1)(B)).  The standard applies to both the

6  initial selection of an investment and the continuous monitoring of investments to remove

7  imprudent ones.  *See Tibble*, 575 U.S. at 529; *see also Kendall v. Pharm. Prod. Development*,

8  *LLC*, 2021 WL 1231415, at *3 (E.D.N.C. Mar. 31, 2021) (citations omitted) ("An adequate

9  investigation of existing investments considers whether any of the plan's investments are

10  'improvident' or if a '*superior alternative investment*' exists." (emphasis added)) (collecting

11  cases).  ERISA's duty of loyalty commands that a fiduciary act "for the exclusive purpose of . . .

12  providing benefits to participants and beneficiaries[] and . . . defraying reasonable expenses of

13  administering the plan."  29 U.S.C. § 1104(a)(1).  Breaches of fiduciary duty may be alleged with

14  circumstantial facts, as Plaintiffs have comprehensively done here.  *See Braden*, 588 F.3d at 596–

15  97; *accord Sweda*, 923 F.3d at 332.

16       Fiduciaries have a continuing duty to monitor and conduct regular reviews of plan

17  investments and remove those that have become unsuitable.  *See Hughes*, 142 S. Ct. at 741 (citing

18  *Tibble*, 575 U.S. at 530).  The relevant inquiry at this stage is whether it is reasonable to infer that

19  the Plan's fiduciaries failed to engage in an appropriate monitoring process to ensure the

20  BlackRock TDFs remained appropriate for the Plan.  *See In re Unisys Sav. Plan Litig.*, 74 F.3d

21  420, 434 (3d Cir. 1996); *Marshall v. Northrop Grumman Corp.*, 2019 WL 4058583, at *10 (C.D.

22  Cal. Aug. 14, 2019) ("[a] trier of fact could reasonably view the [investment committee's]

23  evaluations and discussions in [] meetings as insufficient to disprove a breach of Defendant's

24  fiduciary duties because the Investment Committee failed to adequately weigh the costs and

25  benefits of an active management strategy against a passive management strategy."); *see also*

26  *Birse v. CenturyLink, Inc.*, 2019 WL 1292861, at *4 (D. Colo. Mar. 20, 2019) (explaining that a

27  plaintiff may state a claim by pleading that a defendant "would have acted differently had [it]

28

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
5:22-cv-04417-EJD

1  engaged in proper monitoring . . . and that an alternative course of action could have prevented

2  the plan's losses.") (citing *Kopp v. Klein*, 894 F.3d 214, 221 (5th Cir. 2018)).

3      Plaintiffs' allegations set forth inescapable indicia of the imprudence of retaining the

4  BlackRock TDFs, which were, or should have been, apparent to Defendant in ***real time***, as it

5  made the relevant selection and retention decisions (or failed to act).  Since it is reasonable to

6  infer Defendant failed to adequately consider these warning signs and investigate alternatives,

7  retention of the BlackRock TDFs was "outside the range of reasonable judgments" a fiduciary

8  would make for the Plan.  *Hughes*, 147 S. Ct. at 742 ("[i]f the fiduciaries fail to remove an

9  imprudent investment from the plan within a reasonable time, they breach their duty.").

10      Courts in the Ninth Circuit and around the country recognize that the appropriateness of

11  comparators raises "factual questions . . . not properly addressed on a motion to dismiss."  *In re*

12  *LinkedIn ERISA Litig.*, 2021 WL 5331448, at *8 (citation omitted); *see also In re: Prime*

13  *Healthcare ERISA Litig.*, 2021 WL 3076649, at *6; *Miller v. Astellas US LLC*, 2021 WL

14  1387948, at *5 (N.D. Ill. Apr. 13, 2021); *Smith v. Shoe Show, Inc*., 2022 WL 583569, at *5

15  (M.D.N.C. Feb. 25, 2022); *In re MedStar ERISA Litig.*, 2021 WL 391701, at *6 (D. Md. Feb. 4,

16  2021) ("[c]ourts have specifically held that the determination of the appropriate benchmark for a

17  fund is not a question properly resolved at the motion to dismiss stage.") (citing cases).

18  Nonetheless, Plaintiffs utilize meaningful benchmarks to analyze the performance of the

19  BlackRock TDFs based on well-established investment practices and consistent with the

20  applicable pleading standard.

21           **1.    The Severe and Consistent Underperformance of the BlackRock TDFs**
                    **Supports a Claim that Defendant Breached Its Fiduciary Duty**

22      Defendant's argument that Plaintiffs' performance allegations rely on hindsight is either

23  intentionally misleading or betrays a fundamental misunderstanding of Plaintiffs' allegations.

24  Memorandum, at 10–14.  As an initial matter, "[b]ecause 'ERISA plaintiffs generally lack the

25  inside information necessary to make out their claims in detail' prior to discovery, a complaint

26  can survive a motion to dismiss by alleging circumstantial evidence that allows a court to

27

28

1  'reasonably infer' a flaw in the process." *Harmon v. FMC Corp.*, 2018 WL 1366621, at *5 (E.D.

2  Pa. March 16, 2018) (citing *PBGC*, 712 F.3d at 718).

3       Defendant points to certain other aspects of the BlackRock TDFs, including their low cost,

4  as reasons why Cisco may have retained the funds despite their abysmal performance.

5  Memorandum, at 10–14.  Defendant's speculation and myopic focuses on fees alone, however,

6  ignores the "totality-of-the-circumstances inquiry" necessary to evaluate Plaintiffs' allegations.

7  *Tatum*, 761 F.3d at 360.  The fact that Defendant offers some threadbare rational as to why it may

8  have taken an imprudent course of action does not immunize it from evidence, circumstantial or

9  otherwise, suggesting that its actions were imprudent.  *Braden*, 588 F.3d at 597 ("Requiring a

10  plaintiff to rule out every possible lawful explanation for the conduct he challenges would invert

11  the principle that the complaint is construed most favorably to the nonmoving party.").

12       The credibility of Defendant's argument is further undermined by its utter ignorance of

13  Plaintiffs' actual performance allegations concerning the BlackRock TDFs.  Plaintiffs allege that

14  Defendant had the necessary information ***at the time*** to know that the BlackRock TDFs were

15  inappropriate funds for inclusion in the Plan.  The Complaint compares the BlackRock TDFs to

16  the Comparator TDFs over the three- and five-year periods ending each quarter from the second

17  quarter of 2016 through the second quarter of 2022, encompassing a full ***11 years*** of comparative

18  underperformance (the return for the five years ending at the second quarter of 2016 begins as of

19  the second quarter of 2011).  *See* Compl. at ¶ 40.  Despite Defendant's assertions, Plaintiffs' use

20  of three- and five-year returns plausibly supports the inference that Defendant acted imprudently

21  in retaining the BlackRock TDFs.  Three- and five-year performance comparisons are widely

22  regarded by investment professionals as the most important metrics for evaluating returns.  *See*

23  Compl. at ¶ 40 n.10; *see also Cunningham*, 2019 WL 4735876, at *13 (finding an advisor

24  satisfied fiduciary duty when it regularly presented "three and five-year benchmarks" of

25  investment options); *Bekker v. Neuberger Berman Inv. Com*m., 2019 WL 2073953, at *2

26  (S.D.N.Y. May 9, 2019) ("The IPS also directed the Committee 'to review performance using

27  three-year histories and remove underperforming funds.'")

28

The Complaint's robust allegations are a far cry from "'minimal, temporary underperformance'" relying on hindsight.  Memorandum, at 4.  Instead, Plaintiffs have alleged facts and circumstances which were readily knowable by Defendant throughout the entirety of the Class Period and which would have alerted a prudent fiduciary to serious performance issues with the BlackRock TDFs.[7]  *See* Compl. at ¶¶ 40–47.  Allegations regarding such egregious failure to respond to prolonged periods of underperformance are sufficient to survive a motion to dismiss.  In *Moler v. Univ. of Maryland Med. Sys*, the United States District Court for the District of Maryland focused on underperformance for three funds over a five-year period and persuasively explained that focusing upon "[t]he investments' long-term underperformance is categorically different than showing what a fiduciary should have done in hindsight."  *Moler v. Univ. of Maryland Med. Sys*., 2022 WL 2756290, at *4–5 (D. Md. July 13, 2022) (*citing Goodman v. Columbus Regional Healthcare System, Inc*., 2022 WL 228764, at *2 (M.D. Ga. January 25, 2022)) ("the Court is satisfied that Plaintiffs state a plausible claim that continuing to offer underperforming mutual funds with excessive expense ratios despite a consistent history of underperformance would violate ERISA's duty of prudence.").  As the *Moler* Court explained, "Plaintiffs' allegation is not that Defendants should have acted differently in hindsight; but rather that Defendants were aware of the funds' underperformance at the time and chose to ignore it."  *Id*. (citing *Garcia v. Alticor, Inc.*, 2021 WL 5537520, at *7 (W.D. Mich. Aug. 9, 2021) (rejecting a similar hindsight argument where "plaintiffs bring allegations that the committee failed for

---

[7]As an example, to underscore the baffling nature of Defendant's hindsight accusation, during the second quarter of 2017, Cisco should have discussed and considered the BlackRock TDFs' evident performance issues over the preceding three- and five-year periods ended March 31, 2017, but failed to do so.  *See* Compl. at ¶ 39.  Cisco should also have availed itself of the three- and five-year performance comparisons that it observed as of the end of December 31, 2016; September 30, 2016; and June 30, 2016, in addition to dates prior to the Class Period but, again, inexplicably failed to do so.

1    years to perform sufficient reviews or investigations into the Plan's performance[;] [t]hus, it is

2    plausible that Defendant had access to performance data at various points throughout the relevant

3    period, and Plaintiffs' allegation is that Defendant did not adequately consider that information;

4    [and] [i]f this allegation is true, it is a breach of ERISA.");[8] *see also id.*, 2022 WL 2756290, at *4

5    ("The investments' long-term underperformance is categorically different than showing what a

6    fiduciary should have done in hindsight."). Thus, it is more than plausible that Defendant had

7    access to performance data at various points throughout the relevant period, and, as in *Garcia*,

8    "Plaintiffs' allegation is that Defendants did not adequately consider that information" and "[i]f

9    this allegation is true, it is a breach of ERISA." *Garcia*, 2021 WL 5537520, at *7.[9]

10          Defendant also makes much about the citation of the BlackRock TDFs as one of several

11   comparators for a different, custom TDF suite in *Wehner v. Genentech Inc. See* Memorandum, at

12   9–10.  However, in that case, the BlackRock TDFs were merely presented in order to indicate the

13   abysmal performance of the funds at issue in that case.  In fact, the funds at issue in *Wehner* are

14   completely customized TDFs that are not available on the market and, thus, are subject to

15   _____

16   [8]The court in *Moler* also persuasively distinguished the Sixth Circuit Court of Appeals' outlier

17   decision in *Smith v. CommonSpirit Health*, 37 F.4th 1160 (6th Cir. 2022).  *See* 2022 WL

18   2756290, at *5.  Indeed, the court explained that, as here, "Plaintiffs complain that the funds at

19   issue underperformed, using other investments as a comparator, and that Defendants' continued

20   inclusion of the underperforming funds amounts to imprudence in violation of Defendants' duties

21   . . . . Plaintiffs' allegations are far more robust than those in *Smith*, where *Smith* essentially rested

22   on a thin charge that there may have been better options out there." *Id.* at *5.

23   [9]The cases cited by Defendant are readily distinguishable on this basis.  *See White v. Chevron*

24   *Corp.*, 2017 WL 2352137, at *20 (N.D. Cal. May 31, 2017), *aff'd*, 752 F. App'x 453, 455 (9th

25   Cir. 2018); *Meiners v. Wells Fargo*, 898 F.3d 820, 823 (8th Cir. 2018); *Patterson v. Morgan*

26   *Stanley*, 2019 WL 4934834, at *17 (S.D.N.Y. Oct. 7, 2019); *CommonSpirit*, 37 F.4th at 1166;

27   *Klawonn v. Bd. of Dirs. for the Motion Picture Indus. Pension Plans*, 2021 WL 3508534, at *8

28   (C.D. Cal. Aug. 9, 2021).

1    different considerations; it is of no moment that the plaintiff in *Wehner* included the BlackRock

2    funds in his pleading to illustrate that the custom TDFs at issue fell short of alternatives available

3    on the market.  The complaint in *Wehner* contains no independent analysis of the BlackRock

4    TDFs or their performance compared to any peer TDFs—the only comparison is to the custom

5    TDFs at issue—nor does the complaint in *Wehner* appraise such performance as strong, as

6    Defendant suggests.  *See* Memorandum, at 9–10; *Wehner*, Case No. 20-06894, Dkt. No. 46 ¶ 146,

7    n. 16 (N.D. Cal. Mar. 1, 2021).

8        In an effort to shift focus from their anemic attempts to attack the comparative returns

9    data, which speaks for itself, Defendants deploy a thoroughly misleading interpretation of ratings

10   offered by Morningstar, suggesting that the "Gold" analyst rating is somehow evidence of the

11   strength of the BlackRock TDFs.  *See* Memorandum, at 10.  In reality, these ratings are entirely

12   subjective and based on the judgment of a single analyst team;[10] the Gold analyst rating assigned

13   to the BlackRock Funds is not "based on their performance," but a forward-looking assessment of

14   such qualitative factors as "People," "Process," and "Parent" that judge a fund on the basis of

15   non-qualitative factors that are easily satisfied by a large, national asset manager like

16   BlackRock.[11]

17        **2.    Defendant's Claims Regarding the BlackRock TDFs' Performance Are Misleading**

18        Defendant next suggests that the underperformance of the BlackRock TDFs was somehow

19   "modest" and therefore not sufficient to support a claim for fiduciary breach.  Memorandum, at

20   13–14.  This characterization ignores both the allegations in the Complaint and applicable law.

21        Defendant unpersuasively argues that the substantial and consistent underperformance of

22   the BlackRock TDF was somehow *de minimis*, noting periods of time during which they

23   underperformed in the range of 0.8% to 2.5%, annualized.  Memorandum, at 11–13.  Notably

24   absent from Defendant's Memorandum is any acknowledgment that the returns in the Complaint

25   _____

26   [10]Indeed, each of the Comparator TDFs is rated either Gold or Silver by Morningstar.

27   [11]*Morningstar Analyst Rating for Funds*, Morningstar (Sept. 22, 2021), available at:

28   https://www.morningstar.com/investing-definitions/morningstar-analyst-rating-for-funds.

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
5:22-cv-04417-EJD

1    are annualized, not cumulative.  That Fund A outperforms Fund B by 0.8% on a five-year

2    annualized basis means that, for the previous five years, investors in Fund B experienced an

3    average return, compounded, of 0.8% less than Fund A *each year, compounded*.  The Complaint

4    is replete with examples of even greater underperformance, such as the BlackRock 2050 Fund's

5    three-year return trailing that of the best performing Comparator TDF by 1.93% and five-year

6    return lagging the best comparator by 2.28% as of the end of the first quarter of 2018.  *See*

7    Compl. at ¶ 40.  These annualized performance differentials amount to a cumulative shortfall of

8    6.57% for the three-year period and 18.58% for the five-year period.  Such stark figures, detailed

9    throughout the Complaint and available to Defendant in real time, should have been an apparent

10   indication of a consistent and dramatic performance shortfall.

11          Defendant seeks to excuse the BlackRock TDFs' myriad performance issues during the

12   Class Period detailed in the Complaint by pointing to the more recent, purportedly positive,

13   performance of the BlackRock Funds.  *See* Memorandum, at 12–13.  ***This entire argument***

14   ***amounts to Defendant itself attempting to exonerate its breaches through hindsight***, but the

15   argument ignores the fact that this is not the measure of prudence under ERISA.  Rather, a

16   fiduciary's actions are judged according to "information available . . . at the time of each

17   investment decision," and courts focus on "a fiduciary's conduct in arriving at an investment

18   decision, not on its results, and ask[] whether a fiduciary employed the appropriate methods to

19   investigate and determine the merits of a particular investment."  *PBGC*, 712 F.3d at 716; *In re*

20   *Unisys Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir. 1996).  This later, purportedly positive,

21   performance does not absolve the failure of Defendant to undertake any comparative analysis

22   using the metrics available to it in ***real time*** during the Class Period that would have clearly

23   demonstrated the BlackRock TDFs' inferiority compared to the Comparator TDFs, as well as

24   several other superior, available alternative TDF suites.  *Biogen*, 2021 WL 3116331, at *5

25   ("[W]hether a fiduciary's actions are prudent cannot be measured in hindsight, whether this

26   hindsight would accrue to the fiduciary's detriment or benefit."); *Dudenhoeffer*, 573 at 425 ("the

27   content of the duty of prudence turns on 'the circumstances . . . prevailing' at the time the

28   fiduciary acts").  In sum, it bears repeating that Defendant's attempt at performance-based

1   exoneration engages in exactly the sort of hindsight analysis of which is incorrectly (albeit

2   repeatedly) accuses Plaintiff.  Defendant's suggestion that the consistent underperformance of the

3   BlackRock TDFs against the Comparator Funds should somehow be offset by the recent

4   improved performance by select vintages[12] of the BlackRock TDFs might be treated as merely

5   humorous were it not so offensive in its perversion of the standards governing fiduciary conduct

6   under ERISA.  Defendant's attempts at misdirection fall apart in the face of indisputable facts that

7   lead to inexorable inferences of fiduciary breaches.

8          Finally, Defendant argues that three-year and five-year trailing performance are just

9   "short-term results" and that allegations based on three- and five-year returns are not sufficient to

10  state a plausible claim of imprudence.  Memorandum, at 14.  However, Defendant conveniently

11  ignores that the returns data Plaintiffs reference is rolling performance information, meaning that

12  the data demonstrates consistent underperformance dating back to September 2016.

### 3. Plaintiffs Have Plausibly Alleged Meaningful Benchmarks for the BlackRock TDFs

15         Defendant contends that the comparators referenced by Plaintiffs in their allegations of the

16  BlackRock TDFs' persistent performance issues are inapt because of purported differences in the

17  investment strategies, asset allocations, and risk profiles between the comparators and the

18  BlackRock TDFs.  Memorandum, at 14–18.  As an initial matter, the appropriateness of

19  Plaintiffs' comparators is a question of fact "not properly addressed on a motion to dismiss."  *In*

20  *re LinkedIn ERISA Litig*., 2021 WL 5331448, at *8; *see also Dearing v. IQVIA Inc*., 2021 WL

21  4291171, at *4 (M.D.N.C. Sept. 21, 2021); *In re MedStar ERISA Litig*., 2021 WL 391701, at *6;

---

23  [12]Defendant claims that Plaintiffs' charts broadly show that "BlackRock began outperforming

24  Vanguard and Fidelity by 1Q2021, and in many quarters by the same degree that BlackRock had

25  previously 'underperformed'" and, in doing so, takes incredible liberties with less than favorable

26  data.  In fact, the three-year chart for the first quarter of 2021 shows just two of eight BlackRock

27  vintages outperforming Vanguard and Fidelity, while the five-year chart shows only three of eight

28  BlackRock vintages that did not rank last.

1   *Cunningham*, 2017 WL 4358769, at *7; *Kruger v. Novant Health, Inc*., 131 F. Supp. 3d 470, 478

2   (M.D.N.C. 2015) (noting that the defendants' argument that the "comparison to Vanguard Fund

3   fees is inapt . . . [but] these arguments are better resolved at a later stage of the proceedings");

4   *accord Henderson v. Emory Univ*., 252 F. Supp. 3d 1344, 1352 (N.D. Ga. 2017) ("the proper

5   benchmark can be more appropriately determined on summary judgment"); *Schapker v. Waddell

6   & Reed Fin., Inc*., 2018 WL 1033277, at *8 (D. Kan. Feb. 22, 2018) ("the question whether the

7   funds Plaintiff presents are comparable is a question of fact that the Court will not resolve in the

8   context of ruling on a motion to dismiss"); *Short v. Brown Univ*., 320 F. Supp. 3d 363, 372

9   (D.R.I. 2018) ("To the extent Brown suggests otherwise, or presents different benchmarks to

10  measure the Plans' performance, it raises factual issues that cannot be decided at the pleading

11  stage").

12              **a.      Differences in Management Styles Do Not Undermine the
                          Appropriateness of the Comparator Funds as Benchmarks**

13          Defendant trumpets the unremarkable fact that various TDFs have certain differences in

14  asset allocations and management styles (*i.e*., actively managed versus passively managed).  *See*

15  Memorandum, at 15–17.  Specifically, Defendant suggests that, because the American Funds and

16  T. Rowe Price TDFs invest in actively managed funds, whereas the BlackRock TDFs invest in

17  passively managed funds, these two suites are not meaningful comparators.  *See id*.  Numerous

18  courts—***including this Court***—however, have recently rejected analogous arguments at the

19  motion to dismiss stage.  *See In re LinkedIn ERISA Litig*., 2021 WL 5331448, at *7; *Moler*, 2022

20  WL 2756290, at *4; *Dearing*, 2021 WL 4291171, at *4; *MedStar*, 2021 WL 391701, at *6.

21  Accordingly, that certain of the Comparators are actively managed strategies (while the

22  BlackRock TDFs are passively managed) does not render them inappropriate for comparison.  In

23  fact, courts have recognized that there is no "blanket rule" preventing comparison of active and

24  passive, and, indeed, active and passive funds "might, in some situations, serve as meaningful

25  benchmarks" for one another.  *In re LinkedIn ERISA Litig*., 2021 WL 5331448, at *7.

26          The authorities cited by Defendant herein are readily distinguishable.  In both *Meiners*,

27  898 F.3d 820, and *Davis v. Salesforce.com Inc*., 2021 WL 1428259 (N.D. Cal. Apr. 15, 2021),

28

---

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
5:22-cv-04417-EJD

1    *rev'd and remanded*, 2022 WL 1055557 (9th Cir. Apr. 8, 2022), the courts focused heavily on the

2    fact that the plaintiffs used passively managed comparators as benchmarks for actively managed

3    funds at issue without providing further rationale for the comparison.  Here, the funds at issue are

4    passively managed, and the Complaint contains both ***passive and active*** comparators, each of

5    which were selected for their similarity to the BlackRock TDFs and status as leading offerings in

6    the TDF market, and therefore represented the most likely funds that a prudent fiduciary would

7    have considered in weighing the performance of the BlackRock TDFs (or indeed replacing

8    them)—a "sound basis" for comparison.  *Meiners*, 898 F.3d at 822.

9          Defendant also relies heavily on an opinion from the Sixth Circuit in support of its

10    argument that the Comparator TDFs are not meaningful benchmarks.  *See* Memorandum, at 13–

11    17 (citing *Smith v. CommonSpirit Health*, 37 F.4th 1160 (6th Cir. June 21, 2022)).  However, a

12    recent district court decision rejected the defendants' reliance on *CommonSpirit*, noting

13    "Plaintiffs' allegations go beyond reliance upon other investments that outperformed the selected

14    funds.  Plaintiffs complain that the funds at issue underperformed, using other investments as a

15    comparator, and that Defendant's continued inclusion of the underperforming funds amounts to

16    imprudence in violation of Defendant's duties."  *Moler*, 2022 WL 2756290, at *4.  As in *Moler*,

17    Plaintiffs specifically allege that the BlackRock TDFs underperformed ***four*** apt comparators, and

18    that the long term, repetitive, and significant underperformance should have alerted Defendant to

19    the fundamental shortcomings of investments and led it to seriously consider alternative TDFs,

20    based on conditions which were knowable to Defendant in real time the duration of the Class

21    Period.  Compl. at ¶¶ 40–47.

22              **b.      The Glide Path Differences Identified by Defendant Are Not
                          Material to the Court's Determination**
23

24          Next, Defendant attempts to distinguish the BlackRock TDFs from the Comparators on

25    the basis that the BlackRock TDFs are "to retirement" funds, whereas the Comparator TDFs

26    utilize a "through retirement" strategy.  *See* Memorandum, at 17–18.  This argument is predicated

27    on the myth that a "to retirement" fund will necessarily be more conservative than a "through

28    retirement" fund and that the "through retirement" fund's additional equity exposure will

---

inevitably generate greater returns.  The Complaint debunks this notion; the BlackRock TDFs failed to produce superior returns to the Comparator TDFs despite possessing a considerable equity advantage in the 2045–2065 vintages.[13] Compl. at ¶¶ 36, 42, 43.  The Comparator TDFs pled in the Complaint all have the same objective as the BlackRock TDFs (*i.e.*, preparing investors for retirement by a particular date).  It is unremarkable to suggest that different TDF providers pursue this goal slightly differently.  Just as two managers of actively managed domestic large cap funds will both attempt to beat the U.S. large cap market by choosing different securities to buy and sell and in different quantities, TDF providers have their own unique approaches that incorporate different market assumptions and opinions.  These characteristics enable providers to market investment products that are distinct from others available on the market; without them, investors would be left to choose from completely indistinguishable investment options.  In fact, if Defendant's arguments were taken seriously, there could apparently be no adequate benchmark for the BlackRock TDFs, or any individual investment, an absurd result.

Defendant attempts to sidestep the facts alleged in the Complaint, exaggerating the immaterial differences between the BlackRock TDFs and the Comparators.  Plaintiffs state their underperformance allegations relative to the Comparator TDFs because those four suites represent the primary offerings of the top managers in the TDF marketplace (and therefore were among those most likely to be used by prudent fiduciaries for evaluative purposes and selected were the BlackRock TDFs to be replaced), which collectively have approximately $1.94 trillion in assets under management, or approximately 59% of the TDF market.  Information regarding the performance of these alternative funds was readily available to Defendant throughout the

---

[13]Indeed, the BlackRock TDFs have a greater equity tilt than the American Funds Target Date Retirement Funds in all but the two most conservative vintages, yet underperformed the American Funds TDFs in every vintage by every metric offered in the Complaint throughout the entire Class Period.

1    Class Period.  Compl. at ¶¶ 34–47.  Defendant ludicrously suggests that the Comparator TDFs are

2    not suitable benchmarks for the BlackRock TDFs, but offers no comparator funds that the it could

3    have used to evaluate the performance of the BlackRock TDFs.  Defendant further argues,

4    without support, that this somehow undermines the clear evidence that the BlackRock TDFs

5    suffered serious and continuous underperformance compared to their peers.

6          Plaintiffs' comparison between the BlackRock TDFs and the Comparator TDFs is

7    significantly more robust than the comparisons in Defendant's cited authorities.  The Court in

8    *Matousek v. MidAm. Energy Co.* found that a benchmark was not suitable because "the

9    composition of the peer groups [employed in the complaint] remains a mystery."  51 F.4th 274,

10   281 (8th Cir. Oct. 12, 2022).  In contrast, the Comparator TDFs are clearly identified in the

11   Complaint.  Additionally, unlike in *Anderson v. Intel Corp.*, the Complaint includes information

12   comparing the glide paths of the Comparator TDFs and the percentage of portfolio in equities.

13   *Compare* 579 F. Supp. 3d 1133, 1152 (N.D. Cal. 2022) *with* Compl. at ¶¶ 39–40.

14         Ultimately, Defendant and the Proposed *Amici* seek to create a standard by which no fund

15   could be compared to another.  While this would obviously be desirable to Defendant, whose lack

16   of engagement with the clear underperformance of the BlackRock TDFs would be insulated by

17   such a lax standard, this is not the standard ERISA demands of fiduciaries charged with acting

18   diligently and in the best interests of plan participants.

19         **C.    Plaintiffs' Ancillary Claims Are Sufficiently Pled**

20         Defendant makes a final threadbare argument that Plaintiffs' secondary claims are

21   derivative of their breach of fiduciary duty claims.  *See* Memorandum, at 19.  Unsurprisingly,

22   much like Defendant's other arguments, this one is also devoid of substance and completely

23   meritless.

24         Defendant argues that Plaintiffs' monitoring claim should be dismissed because it is

25   predicated on their first claim for breach of fiduciary duty.  *Id*.  Courts routinely decline to

26   dismiss disloyalty claims where the factual allegations are, as here, tied to the prudence claims,

27   because discovery of the shared facts would resolve both claims.  *In re LinkedIn ERISA Litig.*,

28   2021 WL 5331448, at *11; *Morin v. Essentia Health*, 2017 WL 4876281, at *1 (D. Minn. Oct.

27, 2017).  As discussed above, Plaintiffs' allegations are sufficient to create a reasonable inference that Defendant breached its fiduciary duties, implicating its duty to monitor.  *See supra* IV.B.

Defendant similarly argues that Plaintiffs' alternative participation claim for non-fiduciaries should be dismissed because there are no allegations of specific conduct or knowledge by Cisco in a non-fiduciary capacity separate from the breach of fiduciary claims.  Memorandum, at 19.  The facts alleged in the Complaint are the archetypal knowing breach of trust circumstances, given the alleged roles and relationships of the parties acting on behalf of Cisco, whose roles and relationships to one another are clearly described.  Compl. at ¶¶ 12–14, 72–83; *see, e.g.*, *In re Sprint Corp. ERISA Litig.*, 2004 WL 2182186, at *4 (D. Kan. Sept. 24, 2004).  Just as with their monitoring claim, Plaintiffs have adequately alleged their fiduciary breach claim, and therefore, dismissal of their co-fiduciary breach claim would be inappropriate.  *In re LinkedIn ERISA Litig.*, 2021 WL 5331448, at *12.

**V.     CONCLUSION**

Plaintiffs' well-plead allegations state plausible claims that Defendant breached its duties of prudence and loyalty by failing to appropriately monitor and retaining the BlackRock TDFs despite significant warning signs indicating the funds' unsuitability for the Plan.  Defendant's conduct directly resulted in the loss of millions of dollars in retirement savings for participants and beneficiaries in the Plan.  For the foregoing reasons and all those appearing on the record, Plaintiffs respectfully request that the Court deny Defendant's Motion in its entirety.[14]

---

[14]Should the Court find the claims and allegations against Defendant deficient in any manner, Plaintiffs respectfully request leave to amend to cure such deficiencies.  Leave to amend should be granted under Fed. R. Civ. P. 15(a) "unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *In re LinkedIn ERISA Litig.*, 2021 WL 5331448, at *12.  Plaintiffs stand ready to add further allegations regarding the defects in Defendant's fiduciary processes should the Court require further amplification of Plaintiffs' claims.

1     Dated: November 14, 2022               Respectfully submitted,

2

3                                     /s/ *Kolin C. Tang*

                                      Kolin C. Tang

4                                     MILLER SHAH LLP

                                    3 Embarcadero Street, Suite 1650

5                                     San Francisco, CA 94111

                                    Telephone: (866) 540-5505

6                                     Facsimile: (866) 300-7367

                                    Email: kctang@millershah.com

7

8                                     James E. Miller

                                    Laurie Rubinow

9                                     MILLER SHAH LLP

                                    65 Main Street

10                                    Chester, CT 06412

                                   Telephone: (860) 540-5505

11                                    Facsimile: (866) 300-7367

                                   Email: jemiller@millershah.com

12                                               lrubinow@millershah.com

13

14                                    James C. Shah

                                    John C. Roberts

15                                    Alec J. Berin

                                   Miller Shah LLP

16                                    1845 Walnut Street, Suite 806

                                   Philadelphia, PA 19103

17                                    Telephone: (866) 540-5505

                                   Facsimile: (866) 300-7367

18                                    Email: jcshah@millershah.com

                                         ajberin@millershah.com

19

20                                    *Attorneys for Plaintiffs, the Plan,*

                                   *and the Proposed Class*

21

22

23

24

25

26

27

28

---

## CERTIFICATE OF SERVICE

I hereby certify that, on November 14, 2022, Plaintiffs' Memorandum of Pointa and Authorities in Opposition to Defendant's Motion to Dismiss was filed electronically.  Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system.

Dated: November 14, 2022            /s/ *Kolin C. Tang*
                                    Kolin C. Tang