QUYEN L. TA (SBN 229956)
qta@kslaw.com
MATTHEW H. DAWSON (SBN 307350)
mdawson@kslaw.com
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, California 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

DAVID TETRICK, JR. (*Pro Hac Vice*)
dtetrick@kslaw.com
DARREN A. SHULER (*Pro Hac Vice*)
dshuler@kslaw.com
DANIELLE CHATTIN (*Pro Hac Vice*)
dchattin@kslaw.com
**KING & SPALDING LLP**
1180 Peachtree Street, NE Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

*Attorneys for Defendants*
Cisco Systems, Inc.; Board of Trustees of Cisco Systems, Inc.; and Administrative Committee of the Cisco Systems, Inc. 401(k) Plan

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| ROBERT BRACALENTE and BORIS GDALEVICH, individually and as representatives of a class of similarly situated persons, on behalf of the CISCO SYSTEMS, INC. 401(K) PLAN,<br><br>Plaintiffs,<br><br>v.<br><br>CISCO SYSTEMS, INC.; THE BOARD OF TRUSTEES OF CISCO SYSTEMS, INC.; THE ADMINISTRATIVE COMMITTEE OF THE CISCO SYSTEMS, INC. 401(K) PLAN; and DOES No. 1-20, Whose Names Are Currently Unknown,<br><br>Defendants. | Case No. 5:22-cv-04417-EJD<br><br>**DEFENDANT CISCO SYSTEMS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Date:       March 9, 2023<br>Time:       9:00 A.M.<br><br>Hon. Edward J. Davila |

# TABLE OF CONTENTS

I. INTRODUCTION ..............................................................................................................1

II. ARGUMENT......................................................................................................................3

    A. Cisco's Unopposed Request for Judicial Notice Should Be Granted. ..........3

    B. Plaintiffs Cannot Save Their Legally Deficient Claim of Imprudence........3

        1. Plaintiffs Fail to Address Authority Holding that Underperformance Alone Is Insufficient to State a Plausible Claim of Imprudence. ................................................................................4

        2. Plaintiffs Ignore Case Law Holding that the *De Minimis* Underperformance Alleged in their Complaint is Insufficient to Infer Imprudence...............................................................................8

    C. Plaintiffs' Failure to Identify "Meaningful Benchmarks" is Fatal at the Pleadings Stage. .........................................................................................11

    D. Plaintiffs Do Nothing to Salvage Their Threadbare Duty of Loyalty Claim.14

III. CONCLUSION ................................................................................................................15

i

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Albert v. Oshkosh Corp.*,
  47 F.4th 570 (7th Cir. 2022), *reh'g denied*, No. 21-2789, 2022 WL 4372363
  (7th Cir. Sept. 21, 2022) ........................................................................................................... 11

*Allen v. Wells Fargo & Co.*,
  967 F.3d 767 (8th Cir. 2020), *cert. denied*, 141 S. Ct. 2594 (2021) ........................................ 14

*Anderson v. Intel Corp.*,
  No. 19-cv-04618-LHK, 2021 WL 229235 (N.D. Cal. Jan. 21, 2021) ................................. 4, 12

*Bekker v. Neuberger Berman Inv. Comm.*,
  No. 16 CV 6123-LTS-BCM, 2019 WL 2073953 (S.D.N.Y. May 9, 2019) ............................ 10

*Bell v. Pension Comm. of ATH Holding Co.*,
  LLC, No. 1:15-cv-02062-TWP-MPB, 2017 WL 1091248 (S.D. Ind. Mar. 23,
  2017) .......................................................................................................................................... 7

*In re Biogen, Inc. ERISA Litig.*,
  No. 20-cv-11325-DJC, 2021 WL 3116331 (D. Mass. July 22, 2021) ....................................... 5

*Bouvy v. Analog Devices, Inc.*,
  No. 19-cv-881 DMS (BLM), 2020 WL 3448385 (S.D. Cal. June 24, 2020) ............................ 6

*Cassell v. Vanderbilt Univ.*,
  285 F. Supp. 3d 1056 (M.D. Tenn. 2018) .................................................................................. 6

*Cho v. Prudential Ins. Co. of Am.*,
  No. CV-19-19886 (JMV) (SCM), 2021 WL 4438186 (D.N.J. Sept. 27, 2021) ........................ 9

*Cunningham v. Cornell Univ.*,
  No. 16-cv-6525 (PKC), 2019 WL 4735876 (S.D.N.Y. Sept. 27, 2019) .................................. 10

*Cutrone v. Allstate Corp.*,
  No. 20 CV 6463, 2021 WL 4439415 (N.D. Ill. Sept. 28, 2021) ................................................ 5

*Davis v. Salesforce.com, Inc.*,
  No. 21-15867, 2022 WL 1055557 (9th Cir. Apr. 8, 2022) .......................................... 3, 11, 12

*Davis v. Wash. Univ. in St. Louis*,
  960 F.3d 478 (8th Cir. 2020) ............................................................................................. 11, 12

*Falberg v. Goldman Sachs Group, Inc.*,
  No. 19 Civ. 9910 (ER), 2020 WL 3893285 (S.D.N.Y. July 9, 2020) ........................................ 6

*Feinberg v. T. Rowe Price Group, Inc.*,
   No. CV MJG-17-0427, 2018 WL 3970470 (D. Md. Aug. 20, 2018) .......................................6

*Forman v. TriHealth, Inc.*,
   40 F.4th 443 (6th Cir. 2022) ..............................................................................................7, 9

*Gonzalez v. Northwell Health, Inc.*,
   No. 20-cv-3256 (RPK) (RLM), 2022 WL 4639673 (E.D.N.Y. Sept. 30, 2022) .................9, 12

*Hughes v. Nw. Univ.*,
   142 S. Ct. 737 (2022).................................................................................................4, 7, 8

*Kendall v. Pharmaceutical Product Development, LLC*,
   No. 7:20-cv-71-D, 2021 WL 1231415 (E.D.N.C. Mar. 31, 2021) ..........................................14

*In re LinkedIn ERISA Litig.*,
   5:20-cv-05704-EJD, 2021 WL 5331448 (N.D. Cal. Nov. 16, 2021)...........................3, 4, 5, 12

*Main v. Am. Airlines Inc.*,
   248 F. Supp. 3d 786 (N.D. Tex. 2017) ...................................................................................6

*Matousek v. MidAmerican Energy Co.*,
   51 F.4th 274 (8th Cir. 2022) ............................................................................................11, 12

*Meiners v. Wells Fargo & Co.*,
   898 F.3d 820 (8th Cir. 2018) .........................................................................................7, 11, 13

*Moler v. Univ. of Md. Med. Sys.*,
   No. 1:21-cv-01824-JRR, 2022 WL 2756290 (D. Md. July 13, 2022)...............................10, 11

*Parmer v. Land O'Lakes, Inc.*,
   518 F. Supp. 3d 1293 (D. Minn. 2021)..................................................................................12

*Patterson v. Morgan Stanley*,
   No. 16-cv-6568 (RJS), 2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019)........................................9

*Pinnell v. Teva Pharmaceuticals USA, Inc.*,
   No. CV 19-5738, 2020 WL 1531870 (E.D. Pa. Mar. 31, 2020)...............................................7

*Pizarro v. Home Depot, Inc.*,
   No. 1:18-cv-01566-SDG, 2022 WL 4687096 (N.D. Ga. Sept. 30, 2022) ..............................1, 2

*In re Prime Healthcare ERISA Litig.*,
   No. 8:20-cv-01529-JLS-JDE, 2021 WL 3076649 (C.D. Cal. July 16, 2021).......................4, 5

*Smith v. CommonSpirit Health*,
   37 F.4th 1160 (6th Cir. 2022) ........................................................................................*passim*

iii

iv

*Smith v. CommonSpirit Health*,
   No. CV-20-95-DLB-EBA, 2021 WL 4097052 (E.D. Ky. Sept. 8, 2021), *aff'd*,
   37 F.4th 1160 (6th Cir. 2022) ..................................................................................................8

*Troudt v. Oracle Corp.*,
   No. 1:16-cv-00175-REB-CBS, 2017 WL 1100876 (D. Colo. Mar. 22, 2017) ..........................7

*Watison v. Carter*,
   668 F.3d 1108 (9th Cir. 2012) ................................................................................................15

*Wehner v. Genentech, Inc.*,
   No. 20-cv-06894-WHO, 2021 WL 2417098 (N.D. Cal. June 14, 2021) ..................................3

*Wehner v. Genetech, Inc.*,
   No. 20-cv-06894-WHO, 2021 WL 507599 (N.D. Cal. Feb. 9, 2021) ................................8, 12

*White v. Chevron Corp.*,
   No. 16-cv-0793-PJH, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ......................................4

*White v. Chevron Corp.*,
   No. 16-cv-0793-PJH, 2017 WL 2352137 (N.D. Cal. May 31, 2017), *aff'd*, 752
   F. App'x 453 (9th Cir. 2018) ..........................................................................................3, 4, 8

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

Cisco moved to dismiss Plaintiffs' Complaint because it fails to meet three basic requirements for pleading a plausible claim of fiduciary imprudence under ERISA:  Plaintiffs relied on bare allegations of underperformance, without anything more; the underperformance (compared to other funds) alleged in the Complaint was both *de minimis* and short-lived (and, indeed, switched to *outperformance* by the end of the putative Class Period); and Plaintiffs were only able to gin up the meager underperformance alleged in the Complaint by comparing the BlackRock TDFs with funds composed of materially different underlying investments and/or that follow a fundamentally different investment strategy.  Plaintiffs' opposition does nothing to cure these deficiencies, and instead implores the Court to ignore the required pleading standards.  Plaintiffs' Complaint fails to state a plausible claim and should be dismissed with prejudice.

*First*, Plaintiffs do not address the settled law holding that bare allegations of underperformance are insufficient to state a plausible claim of imprudence.  Instead, Plaintiffs insist that "a holistic review" of their cookie-cutter Complaint (which contains zero allegations about Cisco's fiduciary process) supports a plausible inference that the BlackRock TDFs were imprudent because they temporarily underperformed Plaintiffs' cherry-picked comparators.  Plaintiffs point to decisions in which courts sustained prudence claims for support, including a decision issued by this Court.  But all of Plaintiffs' cases alleged other indicia of imprudence *beyond mere underperformance*, such as an investment's poor reputation, negative media coverage, excessive fees, and significant outflows of investment, just to name a few.  By contrast, the BlackRock TDFs enjoyed a positive reputation, low fees, and significant inflows of investment, suggesting investor confidence in the funds.[1]

---

[1]  Plaintiffs chastise Cisco for citing *Pizarro v. Home Depot, Inc.*, No. 1:18-cv-01566-SDG, 2022 WL 4687096 (N.D. Ga. Sept. 30, 2022), a recent case finding that the BlackRock TDFs were an objectively prudent 401(k) plan investment.  According to Plaintiffs, *Pizarro* only endorsed

*Second*, Plaintiffs have no answer for the case law holding that the *de minimis* underperformance alleged in their Complaint is insufficient to raise a plausible inference of imprudence. The BlackRock TDFs experienced modest and temporary underperformance, and as Plaintiffs' own metrics show, were *outperforming* Plaintiffs' proposed comparators by the end of their putative Class Period. Rather than grappling with these authorities or the facts pleaded in their own Complaint, Plaintiffs accuse Cisco of misrepresenting the BlackRock TDFs' performance by using annualized returns to examine performance with the benefit of hindsight. But Plaintiffs' Complaint used annualized returns to show supposedly poor performance, and, as shown in the authorities Cisco cited dismissing prudence claims, courts use annualized returns to examine performance when considering claims like these.

*Third*, Plaintiffs concede that their proposed comparators differ from the BlackRock TDFs both in the management style (two of Plaintiffs' four comparators are composed of active funds, while the BlackRock TDFs are composed of passive funds) and investment strategy (all four of Plaintiffs' comparators follow a "through" glidepath, while the BlackRock TDFs follow a "to" glidepath). Plaintiffs downplay these differences and suggest that the Court can ignore them, but

---

Home Depot's prudent process for monitoring the BlackRock TDF (and not the funds themselves) and covered a different time period. Opp. at 3–4 & n.4. Plaintiffs are wrong on both counts—*Pizarro* actually declined to rule for Home Depot on procedural prudence, but *nevertheless* entered judgment for Home Depot as a matter of law because, despite evidence of minimal underperformance compared to funds following a different glidepath, the BlackRock TDFs tracked their benchmark throughout the class period, charged low fees, and were well-regarded in the industry. 2022 WL 4687096 at *23–24. And *Pizarro* covered a certified class period that ran from April 2012 through the date of judgment in that case—a "*different time period*" to be sure, Opp. at 4 (emphasis in original), but one that encompasses the putative Class Period in this case. *See Pizarro*, 2022 WL 4687096, at *2. Thus, it is hardly "bizarre[]", "brazen[]", or "absurd", as Plaintiffs insist, to suggest that *Pizarro* is relevant to this Court's inquiry. Opp. at 3–4 & n.4.

the case law and Plaintiffs' own Complaint say otherwise.  As to the distinction between TDFs composed of active versus passive funds, Plaintiffs have no answer for the Ninth Circuit's recent ERISA opinion holding that those are not appropriate comparators.  *See Davis v. Salesforce.com, Inc.*, No. 21-15867, 2022 WL 1055557, at *2 n.1 (9th Cir. Apr. 8, 2022) ("*Salesforce III*").  And they waive off distinctions based on differences in glidepath strategies as "a myth" because all TDFs share the same goal of preparing participants for retirement.  But that facile assertion is disproven by facts alleged and sources referenced in Plaintiffs' own Complaint.[2]

## II.   ARGUMENT

### A.  Cisco's Unopposed Request for Judicial Notice Should Be Granted.

Cisco filed a request for judicial notice with its Motion to Dismiss.  Dkt. No. 37.  Plaintiffs have not opposed Cisco's request, and it should be granted.  *See In re LinkedIn ERISA Litig.*, 5:20-cv-05704-EJD, 2021 WL 5331448, at *5 (N.D. Cal. Nov. 16, 2021) (granting unopposed request for judicial notice of fund literature); *Wehner v. Genentech, Inc.*, No. 20-cv-06894-WHO, 2021 WL 2417098, at *3 (N.D. Cal. June 14, 2021) (taking judicial notice of fund fact sheets and prospectuses where plaintiff did not oppose); *White v. Chevron Corp.*, No. 16-cv-0793-PJH, 2017 WL 2352137, at *5 (N.D. Cal. May 31, 2017) ("*White II*") (taking judicial notice of Morningstar report where plaintiff did not oppose), *aff'd*, 752 F. App'x 453 (9th Cir. 2018) ("*White III*").

### B.  Plaintiffs Cannot Save Their Legally Deficient Claim of Imprudence.

The Complaint contains zero factual allegations about Cisco's fiduciary process.  Yet Plaintiffs  urge the Court to infer, based solely on circumstantial allegations of modest underperformance, that Cisco's fiduciaries "reli[ed] on a flawed decision-making process, fail[ed] to appropriately monitor the BlackRock TDFs, and fail[ed] to act in the sole interest of the Plan."

---

[2]  In responding to Cisco's motion to dismiss, Plaintiffs also reference arguments made by proposed *amici*.  (Dkt. Nos. 42, 48).  Cisco does not oppose the motions of proposed *amici* and is aligned with the policy arguments and considerations addressed in their briefs.  But, to be clear, Cisco's Motion to Dismiss is focused on the specific allegations in Plaintiffs' Complaint and their inability to state a plausible claim of imprudence.

1  Opp. at 7, 10–11.  That inference is not supported.  Indeed, even a "holistic evaluation" of the
2  Complaint, Opp. at 11, could not lead to a plausible inference of an imprudent process, particularly
3  not when "'competing explanations' and other 'common sense' aspects of long-term investments"
4  are considered.  *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1167 (6th Cir. 2022) (quoting
5  *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013)).

        **1.**        **Plaintiffs Fail to Address Authority Holding that Underperformance Alone Is Insufficient to State a Plausible Claim of Imprudence.**

8          Plaintiffs accuse Cisco of "utter ignorance of Plaintiffs' actual performance allegations"
9  and claim that it is "intentionally misleading" to suggest that their Complaint is based on hindsight
10 allegations of underperformance.  Opp. at 12–14.  But Plaintiffs do not dispute that the sole basis
11 of their Complaint is that the BlackRock TDFs underperformed Plaintiffs' selected "comparators"
12 during the alleged Class Period.  Nor do Plaintiffs confront Cisco's authorities demonstrating that
13 courts routinely dismiss ERISA complaints with similar allegations, and hold that
14 underperformance (without more) is not sufficient to plausibly infer a flawed fiduciary process.
15 Mem. at 8–10 (citing *CommonSpirit*, 37 F.4th at 1167; *White III*, 752 F. App'x at 455; *Anderson
16 v. Intel Corp.*, No. 19-cv-04618-LHK, 2021 WL 229235, at *7 (N.D. Cal. Jan. 21, 2021); *White v.
17 Chevron Corp.*, No. 16-cv-0793-PJH, 2016 WL 4502808, at *17 (N.D. Cal. Aug. 29, 2016)
18 ("*White I*")).

19         Further, the Supreme Court has made clear that the holistic review that Plaintiffs urge must
20 consider the "range of reasonable judgments a fiduciary may make based on her experience and
21 expertise."  *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022).  Plaintiffs point to a number of cases
22 in which district courts, including this Court, have denied motions to dismiss  *See* Opp. at 5 n.5.
23 But in each of these cases, more than mere underperformance was alleged; the complaints that got
24 past a motion to dismiss all alleged other indicia of imprudence from which the court could
25 reasonably infer a flawed monitoring process.  *See In re LinkedIn*, 2021 WL 5331448, at *8, *10
26 (alleging that the actively managed Fidelity Freedom TDFs charged high fees, underwent dubious
27 strategy changes, and experienced poor press and investor outflows); *In re Prime Healthcare
28 ERISA Litig.*, No. 8:20-cv-01529-JLS-JDE, 2021 WL 3076649, at *5 (C.D. Cal. July 16, 2021)

(concerning the same Fidelity Freedom TDFs and substantively identical allegations); *In re Biogen, Inc. ERISA Litig.*, No. 20-cv-11325-DJC, 2021 WL 3116331, at *6 (D. Mass. July 22, 2021) (same)[3]; *Cutrone v. Allstate Corp.*, No. 20 CV 6463, 2021 WL 4439415, at *3 (N.D. Ill. Sept. 28, 2021) (alleging that the challenged funds "performed worse than 70 to 90 percent of comparable funds," "underperformed compared to benchmark indexes," including the funds' primary benchmark, and that over a ten-year period participants had lost over $70 million as a result of fiduciaries' retention of the funds). In fact, these cases only underscore what is *missing* from Plaintiffs' Complaint. Plaintiffs have not alleged any other indicia of imprudence that (when coupled with underperformance) could permit the Court to draw a plausible inference of imprudence. Plaintiffs do not, and cannot, allege that BlackRock TDFs had a poor reputation or ratings during the Class Period. In fact, BlackRock TDFs received a coveted gold rating[4] by Morningstar. *See* Mem. at 6.[5] Nor are there allegations that BlackRock TDFs experienced net

---

[3] *In re LinkedIn*, *In re Prime Healthcare*, and *In re Biogen* all involved the same actively managed TDF suite: the Fidelity Freedom TDFs. Plaintiffs themselves recognize that these funds had "myriad quantitative and qualitative red flags after undergoing a strategy overhaul in 2014," and "lost considerable assets and market share" as a result. Compl. ¶ 37 n.7.

[4] Plaintiffs claim that Morningstar's gold rating is a low bar that any "large, national asset manager" should receive, but not all of Plaintiffs' comparator funds were able to do so. *See* Opp. at 17 & n.10.

[5] Plaintiffs argue that Morningstar's methodology is "subjective" and "not 'based on [the funds'] performance.'" Opp. at 17. Plaintiffs have not filed a request for judicial notice of the source cited for this proposition or explained why the Court may take notice of it. *See In re LinkedIn*, 2021 WL 5331448, at *5 (Davila, J.) (not considering extraneous material cited in opposition to motion to dismiss not supported by request for judicial notice). But even if considered, Plaintiffs' source states that the Morningstar rating seeks to predict "how likely a fund will outperform its peers over a full market cycle." *Morningstar Analyst Rating for Funds*,

outflows of investing. That is because, in 2021, BlackRock TDFs ranked among the top five TDFs in the country by net *inflows* of investment. *See id.* at 10. As the Sixth Circuit aptly explained, performance gaps against comparators are but one "building block" towards an imprudence claim, and a fund's reputation is also considered in the holistic review. *CommonSpirit*, 37 F.4th at 1167–68. Absent an indication that a fund's reputation was "bad enough when viewed in the market as a whole that a prudent plan administrator . . . should have precipitously dumped [the fund]," courts require "significantly more serious signs of distress to allow an imprudence claim to proceed." *Id.* Nor can Plaintiffs allege that BlackRock TDFs charge higher fees; they are some of the cheapest available. *See* Mem. at 5.[6]

---

Morningstar (Sept. 22, 2021), *available at*, https://www.morningstar.com/investing-definitions/morningstar-analyst-rating-for-funds.

[6] The other cases Plaintiffs claim sustained complaints with "analogous claims pled with the degree of detail and specificity in the [instant] Complaint," Opp. at 5 n.5, are, in fact, easily distinguished and included far more than bare allegations of underperformance. Specifically, those cases either involved: **(1) proprietary funds** (which present an inherent conflict of interest not present here), *see Falberg v. Goldman Sachs Group, Inc.*, No. 19 Civ. 9910 (ER), 2020 WL 3893285, at *10 (S.D.N.Y. July 9, 2020) (alleging "several other indicia of imprudence" than underperformance, including that fiduciaries increased proprietary funds held by plan, while other investors were dumping the funds); *Feinberg v. T. Rowe Price Group, Inc.*, No. CV MJG-17-0427, 2018 WL 3970470, at *5 (D. Md. Aug. 20, 2018) (alleging that fiduciaries gave preferential treatment to proprietary funds, with expense ratios between 16% and 2,500% higher than comparable funds); *Main v. Am. Airlines Inc.*, 248 F. Supp. 3d 786, 793-94 (N.D. Tex. 2017) (alleging that fiduciaries failed to consider non-proprietary funds and "lower cost funds with identical styles and stocks"); *Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1064 (M.D. Tenn. 2018) (failure to solicit non-competitive bids from non-proprietary fund managers); *Bouvy v. Analog Devices, Inc.*, No. 19-cv-881 DMS (BLM), 2020 WL

Put simply, Plaintiffs' only allegations are that the BlackRock TDFs underperformed cherry-picked comparators at certain points during the putative Class Period. Plaintiffs chide Cisco for focusing on the hindsight nature of their allegations, and insist that Cisco had the "necessary information" about the alleged underperformance "at the time." Opp. at 14 (emphasis removed). Again, Plaintiffs miss the point. Cisco does not argue that the Plan fiduciaries lacked access to performance information in real time; instead, Cisco contends that even faced with Plaintiffs' information about the *de minimis* underperformance of a long-term retirement investment, the decision to retain the BlackRock TDFs was well within the "range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes*, 142 S. Ct. at 742. Particularly in the context of TDFs, "[m]erely pointing to another investment that has performed better in a five-year snapshot of the lifespan of a fund that is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision—largely a process-based inquiry— that breaches a fiduciary duty." *CommonSpirit*, 37 F.4th at 1166; *see also Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018) (identifying a better performing investment insufficient to infer imprudence). And the case law is clear that fiduciaries are not required to chase the best returns, which is the antithesis of prudent retirement investing. *See Meiners*, 898 F.3d at 823; *Forman v. TriHealth, Inc.*, 40 F.4th 443, 449 (6th Cir. 2022) ("Plan administrators . . . have considerable discretion in choosing their offerings and do not have to pick the lowest-cost fund of a certain type where the long-run performance of another fund had the reasonable prospect of

---

3448385, at *11 (S.D. Cal. June 24, 2020) (same); **(2) allegations that fiduciaries ignored identical, lower-cost share classes of existing menu options**, *Pinnell v. Teva Pharmaceuticals USA, Inc.*, No. CV 19-5738, 2020 WL 1531870, at *2 (E.D. Pa. Mar. 31, 2020); *Bell v. Pension Comm. of ATH Holding Co.*, LLC, No. 1:15-cv-02062-TWP-MPB, 2017 WL 1091248, at *6 (S.D. Ind. Mar. 23, 2017); or **(3) allegations of excessive fees *coupled with* significant underperformance compared to the funds' own stated benchmarks, or dismal long-term performance**, *Troudt v. Oracle Corp.*, No. 1:16-cv-00175-REB-CBS, 2017 WL 1100876, at *2 (D. Colo. Mar. 22, 2017).

7

surpassing it."). Without more, it is not plausible to infer that the Cisco fiduciaries' decision to retain the BlackRock TDFs through a period of temporary underperformance was imprudent.

Finally, Plaintiffs dismiss Cisco's observation that the BlackRock TDFs have exhibited positive performance in current market conditions as hypocrisy. Opp. at 18–19. But that misses the mark. Far from trying to "exonerate [Cisco's alleged] breaches through hindsight," *id.* (emphasis removed), examining the BlackRock TDFs' overall performance history, including its recent outperformance during a market downturn, simply reflects that the "difficult tradeoffs" ERISA fiduciaries must make in real time often pay off over the long haul. *Hughes*, 142 S. Ct. at 742. In other words, it is clear, based on a "holistic evaluation" of the BlackRock TDFs during the putative Class Period that the funds performed as advertised—although they lagged Plaintiffs' more aggressively invested TDF comparators during a historic and sustained bull market, the BlackRock TDFs' conservative strategy protected Cisco's employees during the recent market downturn—allowing them to enjoy *outperformance* against Plaintiffs' supposedly superior TDF comparators. *See CommonSpirit*, 37 F.4th at 1168 (holding "recent set of performance data" showing that challenged funds were outperforming comparators suggested that there were prudent reasons to offer the challenged funds). This is exactly why courts dismiss complaints based on bare allegations of underperformance and recognize that fiduciaries must be permitted discretion to retain sound investments "through periods of under-performance as part of a long-range investment strategy." *White II*, 2017 WL 2352137, at *20; *see also Wehner v. Genetech, Inc.*, No. 20-cv-06894-WHO, 2021 WL 507599, at *9 (N.D. Cal. Feb. 9, 2021) ("*Wehner I*").

### 2. Plaintiffs Ignore Case Law Holding that the *De Minimis* Underperformance Alleged in their Complaint is Insufficient to Infer Imprudence.

Plaintiffs insist in their Opposition that the underperformance alleged in their Complaint was "severe," "consistent," "prolonged", and "drastic." The numbers and graphics in their Complaint, however, show just "a small degree of underperformance [that] is weak circumstantial evidence that is insufficient to infer fiduciary breach." *Smith v. CommonSpirit Health*, No. CV-20-95-DLB-EBA, 2021 WL 4097052, at *7 (E.D. Ky. Sept. 8, 2021), *aff'd*, 37 F.4th 1160 (6th Cir. 2022).

Plaintiffs' main response is that Cisco misrepresented the degree of underperformance by using annualized return rates, rather than cumulative. *See* Opp. at 17–18. But this accusation ignores the caselaw Cisco cited holding that similar degrees of underperformance—on an annualized three- and five-year basis—is an insufficient basis to infer imprudence. *See, e.g.*, *CommonSpirit*, 37 F.4th at 1166 (challenged funds over five-year period underperformed comparator by "0.63 percentage points *per year*" (emphasis added)); *Forman*, 40 F.4th at 449–50 (affirming dismissal of imprudence claim based on approximately 1–2% annualized three-year underperformance); *Gonzalez v. Northwell Health, Inc.*, No. 20-cv-3256 (RPK) (RLM), 2022 WL 4639673, at *8 (E.D.N.Y. Sept. 30, 2022) (annualized underperformance "on average by 2.33% on a rolling three-year trailing basis and 2.57% on a rolling five-year trailing basis" insufficient to state an imprudence claim); *Cho v. Prudential Ins. Co. of Am.*, No. CV-19-19886 (JMV) (SCM), 2021 WL 4438186, at *9 (D.N.J. Sept. 27, 2021) (plaintiffs did not allege "sufficiently substantial" underperformance based on five-year annualized returns underperforming by up to 3.71% and ten-year up to 2.86%); *Patterson v. Morgan Stanley*, No. 16-cv-6568 (RJS), 2019 WL 4934834, at *10–11 (S.D.N.Y. Oct. 7, 2019) (dismissing imprudence claim where "average annual return over five years was 6.59% compared to the benchmark's 7.73% – [was] relatively small and certainly not enough to support a claim for breach of the duty of prudence"). Plaintiffs do not confront these cases, nor do they cite authority for the proposition that annualized returns are misleading (because there is none).

Moreover, Plaintiffs' umbrage with Cisco's use of annualized numbers is particularly puzzling since that is all that Plaintiffs offered in their Complaint. *See* Compl. ¶ 42. Plaintiffs' accusation that Cisco took "incredible liberties with less than favorable data," Opp. at 19 n.12, by pointing to performance charts in the Complaint showing that the BlackRock TDFs were outperforming Fidelity and Vanguard by 2021 or 2022, does not withstand scrutiny. Plaintiffs' data does not merely show outperformance in 2021 and 2022—it also shows that various BlackRock TDF vintages outperformed at least one of Plaintiffs' hand-picked comparators at numerous other points during their putative Class Period. Indeed, focusing on vintage, the Complaint shows that by 1Q2021, between three and six of the eight Black Rock TDFs' vintages

9

were outperforming one or more of Plaintiffs' comparators (depending on whether a three- or five-year return was used). Compl. ¶ 40, at 24–25. By 1Q2022, half of the BlackRock TDF vintages were outperforming two or more of Plaintiffs' comparators. *Id.* at 25. And by 2Q2022, half of the BlackRock TDF vintages were either the *best* or *second best* performing vintage as compared to Plaintiffs' comparators. *Id.* at 26. These are performance metrics taken from Plaintiffs' own Complaint for the years included in their putative Class Period, and would have been available to Cisco fiduciaries "at the time" they decided to retain BlackRock TDFs. In short, the charts and metrics Plaintiffs included in the Complaint belie their hyperbole about the BlackRock TDFs' "abysmal" performance. At most, the Complaint shows *de minimis* underperformance against hand-picked comparators that was short-lived.

As detailed in Cisco's opening brief, the inherently long-term nature of retirement plan investment—and this is particularly so for TDFs—means that investment performance in any given three- to five-year period cannot alone be the basis for a plausible claim for imprudence. *See* Mem. at 13 (collecting cases). Rather than address this growing consensus in the caselaw, Plaintiffs point to two cases, but neither holds that three- and five-year benchmarks are the touchstone metrics for measuring prudence. *See Cunningham v. Cornell Univ.*, No. 16-cv-6525 (PKC), 2019 WL 4735876 (S.D.N.Y. Sept. 27, 2019); *Bekker v. Neuberger Berman Inv. Comm.*, No. 16 CV 6123-LTS-BCM, 2019 WL 2073953 (S.D.N.Y. May 9, 2019).

Plaintiffs cite a single case in which a court denied defendants' motion to dismiss a duty of prudence claim where three funds underperformed their benchmarks over a five-year period. *See Moler v. Univ. of Md. Med. Sys.*, No. 1:21-cv-01824-JRR, 2022 WL 2756290, at *5 (D. Md. July 13, 2022). From this sole authority, Plaintiffs propound a general rule: a five-year period of underperformance is sufficiently "prolonged" to state a claim for imprudence under ERISA. Opp. at 15. At the outset, *Moler* is distinguishable because it did not involve TDFs (which are inherently long-term investments), but actively managed equity funds and allegations that those funds were imprudent due primarily to excessive fees—not subpar performance. In contrast, TDFs are designed "to grow for fifty years," and therefore a "snapshot of the lifespan of a [TDF] . . . does not suffice to plausibly plead an imprudent decision." *CommonSpirit*, 37 F.4th at 1166. Moreover,

10

the *Moler* court did not hold that allegations of a five-year period of underperformance alone were sufficient, but instead sustained allegations that the challenged funds "underperformed 'not only cheaper comparator funds but also their benchmark indices over a 10-year period and 3 other funds underperformed for at least 5 years.'" *Moler*, 2022 WL 2756290, at *4 (quoting docket entry). Plaintiffs' Complaint contains no such allegations about the BlackRock TDFs. Plaintiffs repeat the *Moler* court's criticism of the "thin" allegations made in *CommonSpirit*, but it is difficult to see how that helps Plaintiffs in this case. In fact, the *CommonSpirit* plaintiffs (who were represented by the same counsel as Plaintiffs here) made allegations that are strikingly similar to those in the Complaint, comparing the three- and five-year trailing returns of challenged TDFs to those of proposed TDFs comparator. The Sixth Circuit affirmed the dismissal for failure to state a claim of imprudence and rejected the argument (repeated by Plaintiffs in this case) that underperformance over a five-year period is sufficient to create a plausible inference of imprudence. *See CommonSpirit*, 37 F.4th at 1166.

### C. Plaintiffs' Failure to Identify "Meaningful Benchmarks" is Fatal at the Pleadings Stage.

Even if allegations of modest underperformance over a short period were enough to infer imprudent fiduciary conduct—and they are not—Plaintiffs have failed to allege any underperformance against a meaningful benchmark. *See Meiners*, 898 F.3d at 822. In the past two years, every Circuit—including the Ninth Circuit—to address this issue has held that it is an ERISA plaintiff's burden to identify a meaningful benchmark at the pleading stage. *See Salesforce III*, 2022 WL 1055557, at *2 n.1; *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 485 (8th Cir. 2020); *CommonSpirit*, 37 F.4th at 1169; *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 281 (8th Cir. 2022); *Albert v. Oshkosh Corp.*, 47 F.4th 570, 582 (7th Cir. 2022), *reh'g denied*, No. 21-2789, 2022 WL 4372363 (7th Cir. Sept. 21, 2022). In the face of this growing consensus, Plaintiffs point to district court opinions that declined to decide whether a proposed comparator was a meaningful benchmark at the pleadings stage. Opp. at 19–20. But the cases Plaintiffs cite, including a decision by this Court, were decided before the string of recent Circuit decisions clarifying that a meaningful benchmark must be pleaded in the complaint. *See* Mem. at 14–15

11

(collecting cases); *Anderson*, 2021 WL 229235, at *8 (citing *Salesforce I* in requiring plaintiff to plead "meaningful benchmark" to survive a motion to dismiss).

Whether comparator funds identified in a complaint are meaningful benchmarks can and should be addressed at the pleadings stage—especially where the relevant facts are discernable from the Complaint and judicially noticed facts. *See* Mem. at 14–15 (collecting cases). The Eighth Circuit recently explained that for a fund to provide a meaningful benchmark, it must "hold similar securities, have similar investment strategies, and reflect a similar risk profile" as the challenged fund. *Matousek*, 51 F.4th at 281. It is clear from the face of the Complaint and the materials in Cisco's unopposed Request for Judicial Notice, Dkt. No. 37, that Plaintiffs' proposed comparators meet none of those basic requirements. Here, the Court need not conduct esoteric financial analysis or wait for details to be developed in discovery. Instead, the Court can observe general principles about TDFs that are both well-established in the caselaw and recited in Plaintiffs' Complaint.

As Cisco explained, *see* Mem. at 15, there is ample and directly applicable precedent holding that TDFs composed of active funds and TDFs composed of passive funds are not meaningful benchmarks for each other. *See, e.g.*, *Salesforce III*, 2022 WL 1055557, at *2 n.1; *CommonSpirit*, 37 F.4th at 1167; *Davis*, 960 F.3d at 485; *Parmer v. Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293, 1306 (D. Minn. 2021); *Wehner I*, 2021 WL 507599, at *10; *Gonzalez*, 2022 WL 4639673, at *9. When this Court declined to dismiss an imprudence claim in *In re LinkedIn* where plaintiffs proposed a TDF composed of passive index funds as a comparator for a TDF composed of actively managed funds, it acknowledged the *Salesforce* district court order rejecting such apples-to-oranges comparisons, but correctly observed the lack of Ninth Circuit authority on point. 2021 WL 5331448, at *6–7. Seven months after this Court's decision, however, the Ninth Circuit made exactly that finding. *Salesforce III*, 2022 WL 1055557, at *2 n.1. Plaintiffs try to wave off *Salesforce,* arguing that it "focused heavily on the fact that the plaintiffs used passively managed

comparators as benchmarks for actively managed funds at issue." Opp. at 21.[7] But that is exactly what Plaintiffs seek to do with two of their four proposed comparators. Plaintiffs' related assertion that all TDFs are actively managed because they follow a glidepath misses the point—TDFs that invest exclusively in passive index funds are adhering to an entirely different management style than TDFs that invest exclusively in active funds. *See* Mem. at 16–17. And every Circuit to examine this issue has recognized that difference.

Plaintiffs' two remaining comparators, though composed of passive funds, are not meaningful benchmarks because they follow an investment glidepath that serves a materially different purpose than the glidepath followed by the BlackRock TDFs. BlackRock TDFs are designed to take participants "to" retirement (and assume that participants will liquidate their investment upon retirement), while all four of Plaintiffs' proposed comparators are designed to take participants "through" retirement (and assume that participants will *not* liquidate their investment upon retirement). *See* Mem. at 17–18. Plaintiffs dismiss the difference in these strategies as a "myth." Opp. at 21. According to Plaintiffs, TDFs are interchangeable because they "all have the same objective . . . preparing investors for retirement by a particular date," *id.* at 22. But the point is that the particular dates are different. While the BlackRock TDFs maintain a more aggressive equity allocation for those furthest from retirement than other "to" TDFs, they feature a more conservative equity allocation for those closest to retirement than any of Plaintiffs' comparators. *See id.* And these distinct investment strategies make a real difference, as the metrics in Plaintiffs' Complaint demonstrate. The BlackRock TDF vintages for those closest to retirement experienced comparatively greater (though still modest) degrees of underperformance during the Class Period and recovered more slowly than the other vintages due to their more conservative

---

[7] Plaintiffs also attempt to distinguish *Meiners* on the same basis. *See* Opp. at 21. *Meiners* held that the proposed comparators were not appropriate benchmarks due to the differences in investment strategy with respect to bond allocation (not the passive versus active distinction). 898 F.3d at 822.

13

allocation to equities.  *See* Compl. ¶ 40.

Finally, Plaintiffs resort to a false premise—suggesting that if their proposed comparators are not meaningful benchmarks, then "there could apparently be no adequate benchmark for the BlackRock TDFs, or any individual investment."  Opp. at 22.  This is an argument Cisco never made.  It is not Cisco's burden to identify a comparator fund for the BlackRock TDFs; nor is identifying a comparator enough for Plaintiffs at this stage.  *See id.* at 23.  To create a plausible inference of fiduciary imprudence, Plaintiffs' threshold burden is to allege underperformance against a sound benchmark plus some other indicia of imprudence.  And there is nothing unusual about a pleading requirement that a comparator must, at a minimum, have the same investment strategy as the fund being challenged to pass muster.

### D.  Plaintiffs Do Nothing to Salvage Their Threadbare Duty of Loyalty Claim.

Plaintiffs contend that they have separately stated an "ancillary" claim for breach of the duty of loyalty because the factual allegations supporting that claim are "tied to the prudence claim[]."  Opp. at 23.  As explained in *Kendall v. Pharmaceutical Product Development, LLC*, No. 7:20-cv-71-D, 2021 WL 1231415 (E.D.N.C. Mar. 31, 2021), which Plaintiffs cite, *see* Opp. at 12, "[l]oyalty claims cannot 'piggyback' prudence claims, but must contain independent facts suggesting that Defendant benefitted, financially or otherwise, from any decisions related to the Plan or engaged in disloyal conduct in order to benefit itself or someone other than the . . . beneficiaries."  *Kendall*, 2021 WL 1231415, at *11 (quotations and alternations omitted); *see also Allen v. Wells Fargo & Co.*, 967 F.3d 767, 777 (8th Cir. 2020) (plaintiffs cannot avoid pleading requirements of breach of the duty of prudence by recasting claims as duty of loyalty violations), *cert. denied*, 141 S. Ct. 2594 (2021).  Plaintiffs' Complaint contains no factual allegations from which the Court could infer that Cisco engaged in disloyal conduct. As to other remaining ancillary claims—co-fiduciary liability for failure to monitor and knowing breach of trust—these claims are

14

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS' COMPLAINT

CASE NO. 5:22-cv-04417-EJD

derivative of the breach of fiduciary duty claim and therefore fail as a matter of law.  *See* Mem. at 19.[8]

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint fails to raise a plausible inference that Cisco's decision to offer the BlackRock TDFs was imprudent.  Because all of Plaintiffs' ancillary claims depend upon the existence of a viable prudence claim, they fail as a matter of law, too.  The Court should grant Cisco's Motion to Dismiss with prejudice and end this case.

Dated: November 30, 2022

Respectfully submitted,

KING & SPALDING LLP

By:  /s/ *Darren A. Shuler*

QUYEN L. TA (SBN 229956)
MATTHEW H. DAWSON (SBN 307350)
DAVID TETRICK, JR. (*Pro Hac Vice*)
DARREN A. SHULER (*Pro Hac Vice*)
DANIELLE CHATTIN (*Pro Hac Vice*)

*Attorneys for Defendant*
Cisco Systems, Inc.

---

[8]  Finally, in a footnote tacked onto the end of their opposition, Plaintiffs request leave to amend the Complaint to cure the deficiencies identified in Cisco's Motion to Dismiss.  Plaintiffs do not explain what factual allegations they could or would add if the Court gives them another shot.  And amendment is futile where the court determines that "the pleading could not possibly be cured by the allegation of other facts."  *Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).  Plaintiffs' imprudence claim is based solely on allegations that BlackRock TDFs experienced *de minimis* underperformance compared to inapt comparators.  Moreover, it is clear from the face of the Complaint and judicially noticeable facts that Plaintiffs cannot add allegations that would salvage their threadbare imprudence claim.  As demonstrated above, Plaintiffs cannot plead any of the other indicia of imprudence that was present in their favored cases.  Nor can Plaintiffs add allegations to support a plausible inference that their comparators are meaningful benchmarks.  Plaintiffs' request for leave to amend should be denied.