1
2
3
4                     UNITED STATES DISTRICT COURT
5                   NORTHERN DISTRICT OF CALIFORNIA
6                          SAN JOSE DIVISION
7

8     ROBERT BRACALENTE, et al.,              Case No.   5:22-cv-04417-EJD

9                    Plaintiffs,              **ORDER GRANTING MOTION TO
                                              DISMISS**
10          v.

11    CISCO SYSTEMS, INC., et al.,

12                   Defendants.

13          This putative ERISA class action is brought by individual participants ("Plaintiffs") in

14   Defendant Cisco Systems, Inc.'s ("Cisco") 401(k) Plan ("Plan") and alleges that Cisco breached

15   its ERISA fiduciary duties by offering certain BlackRock LifePath Index Funds.[1]  Cisco has

16   moved to dismiss the Complaint under Rule 12(b)(6) ("Motion"), and two amicus briefs have also

17   been filed in support of Cisco's Motion.  Having reviewed the parties' briefs, the amicus curiae

18   briefs, the statements of recent decision, and parties' arguments at hearing, the Court GRANTS

19   Cisco's Motion to Dismiss with LEAVE TO AMEND.

20   I.     **BACKGROUND**

21          A.     **Parties and the Plan**

22          Plaintiffs Robert Bracalente and Boris Gdalevich (collectively, "Plaintiffs") have brought

23   this action both individually and on behalf of similarly situated participants and beneficiaries of

24   Cisco Systems, Inc.'s 401(k) plan ("Plan").  Class Action Compl. ("Compl.") ¶ 1.  They allege

25

26   _____

27   [1] Although the Complaint also named the Board of Trustees of Cisco Systems, Inc. and the
     Administrative Committee of the Cisco Systems, Inc. 401(k) Plan, these defendants have since
     been voluntarily dismissed, leaving Cisco Systems, Inc. as the sole defendant.  ECF No. 35.

28   Case No.: 5:22-cv-04417-EJD
     ORDER GRANTING MOTION TO DISMISS
                                    1

that Cisco is a fiduciary under the Employee Retirement Income Security Act ("ERISA"), responsible for selecting, monitoring, and retaining the Plan's investment options.  Compl. ¶ 5.

Cisco's Plan is a participant-directed 401(k) retirement plan, meaning that participants decide where their contributions should be invested.  Compl. ¶ 19.  The Plan's investment options include mutual funds, collective trust funds, and target date funds ("TDFs").  *Id.* ¶¶ 19–21.  A TDF is an actively managed investment portfolio that gradually changes its investment strategies to be more conservative as the "target" retirement year approaches, a transition referred to as the fund's "glide path."  *Id.* ¶¶ 23–25.  TDF glide paths may vary based on whether they are "to" retirement (assuming that the participant will withdraw the funds at or soon after the target retirement year) or "through" retirement (assuming that the participant will remain invested and gradually draw down on their funds while in retirement).  *Id.* ¶¶ 24–25.  TDFs may contain a variety of constituent investments, which can include passively managed assets, actively managed assets, or a mix of both; however, the TDF itself is inherently actively managed.  *Id.* ¶¶ 23, 26.

### B.    BlackRock TDFs

Most pertinent to this action, Cisco offered its employees a suite of ten BlackRock LifePath Index Funds ("BlackRock TDFs") with multiple target retirement year "vintages." Compl. ¶ 28.  Cisco designated the BlackRock TDFs as the Plan's Qualified Default Investment Alternative ("QDIA"), which is the default investment for Plan participants who do not affirmatively indicate where their assets should be invested.  *Id.* ¶ 32.

The Complaint alleges that the BlackRock TDFs underperformed significantly during the Class Period compared to other TDF providers, so much so that a "simple weighing of the merits and features of all other available TDFs . . . would have raised significant concerns for prudent fiduciaries and indicated that the BlackRock TDFs were not a suitable and prudent option for the Plan."  Compl. ¶ 30.  Cisco purportedly decided to offer the BlackRock TDFs to "chase[] the low fees charged by the BlackRock TDFs without any consideration of their ability to generate return." *Id.*  Plaintiffs also allege that the Plan's investment in the BlackRock TDFs have "resulted in participants missing out on millions of dollars in retirement savings growth."  *Id.* ¶ 34.

Case No.: 5:22-cv-04417-EJD
ORDER GRANTING MOTION TO DISMISS

2

United States District Court
Northern District of California

United States District Court
Northern District of California

1

### C.      Comparator TDFs

The Complaint compares the BlackRock TDFs with the four other largest TDF series, which include the Vanguard Target Retirement funds, T. Rowe Price Retirement funds, American Funds Target Date Retirement funds, and Fidelity Freedom Index funds (collectively, the "Comparator TDFs").  Compl. ¶¶ 36–37.  Specifically, the Complaint provides the three- and five-year annualized returns of the BlackRock TDF for each quarter of the Class Period and juxtaposes them alongside the same returns for the best and worst performing Comparator TDF in the same quarter.  Compl. ¶ 40.  Compared alongside these Comparator TDFs, the BlackRock TDFs are the third largest TDF series by total assets, possessing 8.8% market share, behind Vanguard TDFs (36.4%) and T. Rowe Price TDFs (10.7%).  Id. ¶ 36.

From 2016 Q2 until 2021 Q1, the BlackRock TDFs had either the worst or second worst three- and five-year returns of the group of Comparator TDFs.  Compl. at 17–24 (charts).  During this period, the BlackRock TDFs performed below the Comparator TDFs' average three- and five-year returns by up to 2 points.  Compl. ¶ 41.  The Complaint also aggregates the returns for all vintages of the BlackRock TDFs to compare with the corresponding aggregate returns of the Comparator TDFs, which yielded generally consistent underperformance until approximately 2021.  Compl. at 28–32 (charts).  Starting in Q1 2022, however, the BlackRock TDFs began performing better than many of the Comparator TDFs.  Compl. at 25–26.

### D.      Procedural History

Plaintiffs filed the present Class Complaint on July 29, 2022, asserting three claims: (1) breach of ERISA fiduciary duty; (2) failure to monitor fiduciaries and co-fiduciary breaches; and, in the alternative, (3) liability for knowing breach of trust.  Compl. ¶¶ 67–83.

On October 31, 2022, Cisco moved to dismiss the Complaint.  ECF No. 36.  The parties subsequently agreed to stay discovery pending the resolution of Cisco's Motion.  ECF No. 59.

On November 7, 2022, the Court received two amicus curiae briefs—one from a coalition comprised of the American Benefits Council, American Retirement Association, Committee on Investment of Employee Benefit Assets, Inc., and ERISA Industry Committee; and one from the

1    Chamber of Commerce of the United States.  ECF Nos. 42, 48.

2           After Cisco's Motion was fully briefed but before the hearing, Cisco filed two statements

3    of recent decision, alerting the Court to decisions in the Western District of Washington and the

4    Eastern District of Virginia that also involved allegations based upon the same BlackRock TDFs

5    and their alleged imprudence.  ECF Nos. 61, 65.

6    **II.     LEGAL STANDARD**

7           Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with enough

8    specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which

9    it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).

10   "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal

11   theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp.*

12   *Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  When deciding whether to grant a motion to

13   dismiss, the Court must accept as true all "well pleaded factual allegations" and determine whether

14   the allegations "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662,

15   679 (2009).  While a complaint need not contain detailed factual allegations, it "must contain

16   sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

17   *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570).

18          A court generally may not consider any material beyond the pleadings when ruling on a

19   Rule 12(b)(6) motion.  However, documents appended to the complaint, incorporated by reference

20   in the complaint, or which properly are the subject of judicial notice may be considered along with

21   the complaint when deciding a Rule 12(b)(6) motion.  *Khoja v. Orexigen Therapeutics*, 899 F.3d

22   988, 998 (9th Cir. 2018); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d

23   1542, 1555 n.19 (9th Cir. 1990).  Likewise, a court may consider matters that are "capable of

24   accurate and ready determination by resort to sources whose accuracy cannot reasonably be

25   questioned." *Roca v. Wells Fargo Bank, N.A.*, No. 15-cv-02147-KAW, 2016 WL 368153, at *3

26   (N.D. Cal. Feb. 1, 2016) (quoting Fed. R. Evid. 201(b)).

27

28   Case No.: 5:22-cv-04417-EJD
     ORDER GRANTING MOTION TO DISMISS
                                              4

United States District Court
Northern District of California

## III.   DISCUSSION

The Complaint primarily alleges that Cisco breached its fiduciary duty by imprudently selecting, retaining, and failing to monitor the underperforming BlackRock TDFs.[2]  Compl. ¶¶ 30, 32.  Specifically, Plaintiffs rely on "severe and consistent" three- and five-year performance data to support the inference that Cisco acted imprudently in retaining the BlackRock TDFs.  Compl. at 16–26 (tables); Opp. 14.  Cisco moves to dismiss the Complaint and argues that underperformance alone is insufficient to show that Cisco had behaved imprudently in offering the BlackRock TDFs.  Mot. 8–10.

ERISA fiduciaries are charged with four primary duties: the duty of loyalty, 29 U.S.C. § 1104(a)(1)(A); the duty of prudence, § 1104(a)(1)(B); the duty of diversification, § 1104(a)(1)(C); and the duty to follow the plan's documents, § 1104(a)(1)(D).  The duty of prudence—which is the primary duty Plaintiffs claim was breached here—obligates fiduciaries to discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use."  § 1104(a)(1)(B). The U.S. Supreme Court has also held that the ERISA duty of prudence includes a "continuing duty of some kind to monitor investments and remove imprudent ones."  *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015).  "Because the content of the duty of prudence turns on the circumstances prevailing at the time the fiduciary acts, the appropriate inquiry will necessarily be context specific."  *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014) (internal quotation marks, brackets, and ellipses omitted).

Plaintiffs may state a breach of the duty of prudence either through *direct* allegations of the fiduciary's "knowledge, methods, or investigations at the relevant times" or "*circumstantial*

---

[2] The Complaint also nominally asserts breaches of the duty of loyalty, in addition to prudence. Compl. ¶ 27; Opp. 9, 23.  However, neither the Complaint nor Plaintiffs' opposition purport to show any supposed disloyalty arising from Cisco's offering the BlackRock TDFs, such as self-dealings or a conflict of interest.  *See Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1069 (N.D. Cal. 2017) ("[T]he duty of loyalty prohibits trustees from 'engaging in transactions that involve self-dealing or that otherwise involve or create a conflict between the trustee's fiduciary duties and personal interests.'") (quoting Restatement (Third) of Trusts § 78 (2007)).

Case No.: 5:22-cv-04417-EJD
ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

factual allegations [from which the Court] may reasonably 'infer from what is alleged that the process was flawed.'"  *St. Vincent*, 712 F.3d at 718 (emphasis added).  "If the complaint relies on circumstantial factual allegations to show a breach of fiduciary duties under ERISA, those allegations must give rise to a '*reasonable* inference' that the defendant committed the alleged misconduct," *i.e.*, the facts alleged must be "suggestive of, rather than merely consistent with, a finding of misconduct."  *Id.* at 718–19 (internal brackets omitted) (italics in original).

### A.      Investment Underperformance

To the extent the Complaint relies solely on the BlackRock TDFs' underperformance compared to other TDFs', the Court finds that these allegations are insufficient by themselves to support a reasonable inference that Cisco had acted imprudently by continuing to offer the BlackRock TDFs.

Although duty of prudence breaches may be based on circumstantial evidence and are evaluated on a case-by-case basis, federal courts have nonetheless widely and consistently rejected attempts to impose ERISA liability where the claims are based solely on a fund's underperformance.  *See, e.g.*, *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022) ("Merely pointing to another investment that has performed better in a five-year snapshot of the lifespan of a fund that is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision—largely a process-based inquiry—that breaches a fiduciary duty. . . .  **Any other rule would mean that every actively managed fund with below-average results over the most recent five-year period would create a plausible ERISA violation**.") (emphasis added); *Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 486 (8th Cir. 2020) ("There is no question, as the complaint alleges, that [the investment at issue] performed more poorly than they did over certain periods of time.  But **fiduciaries are not required to pick 'the best performing fund.'**") (emphasis added); *White v. Chevron Corp.*, 752 F. App'x 453, 455 (9th Cir. 2018) (affirming dismissal of ERISA duty of prudence complaint where "the allegations showed only that [defendant] could have chosen different vehicles for investment that performed better during the relevant period, or sought lower fees for administration of the fund"); *White v. Chevron Corp.*,

2017 WL 2352137, at *20 (N.D. Cal. May 31, 2017), *aff'd*, 752 F. App'x 453 (9th Cir. 2018) ("[P]oor performance, standing alone, is not sufficient to create a reasonable inference that plan fiduciaries failed to conduct an adequate investigation.").

    With this backdrop of considerable case law holding that underperformance alone does establish an ERISA imprudence claim, the Court finds that the allegations here likewise fail to create a reasonable inference that Cisco breached its duty of prudence.  The Supreme Court has recognized that "the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs, and courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise."  *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022).  Plaintiffs' "underperformance-only" theory, however, would flatten this nuanced prudence evaluation into a one-dimensional comparison that considers only the funds' three- and five-year performance data.  Despite asserting that a "simple weighing of the merits and features of all other available TDFs" would reveal the BlackRock TDFs to be imprudent investments (Compl. ¶ 30), the Complaint never discusses or revisits what other "merits and features"—besides the funds' performance over a specific period—would support imprudence.[3]  To the contrary, the Complaint's own allegations cut against an inference of imprudence, noting that the BlackRock TDFs charged "low fees" and enjoyed significantly improved performance in early 2022.  *Id.*; *see also id.* at 25–26.  In short, Plaintiffs ask this Court to infer that—just because the BlackRock TDFs were underperforming— Cisco's decision to continue offering those funds fell beyond the "range of reasonable judgments a fiduciary may make based on her experience and expertise."  *Hughes*, 142 S. Ct. at 742.  Unless Plaintiffs are insinuating that a prudent fiduciary would have made investment decisions based *solely* a fund's underperformance, the Court cannot reasonably draw the inference they seek.

    It is also worth noting that at least two other district courts have recently dismissed ERISA complaints with near-identical allegations also relating to the same BlackRock TDFs and their

---

[3] To be clear, there is no doubt that the Complaint is replete with detailed factual allegations.  *See* Compl. ¶¶ 40–45.  However, the many pages of details and facts all converge to support the same proposition, that the BlackRock TDFs performed poorly during a specific period of time.

Case No.: 5:22-cv-04417-EJD
ORDER GRANTING MOTION TO DISMISS
7

United States District Court
Northern District of California

disappointing three- and five-year performance data.  *See Beldock v. Microsoft Corp.*, 2023 WL 3058016, at *3 (W.D. Wash. Apr. 24, 2023) (dismissing complaint with near-identical allegations regarding the BlackRock TDFs and remarking "courts across the country have rejected claims for breach of the fiduciary duty of prudence under ERISA where the plaintiffs allege nothing more than underperformance relative to other investment vehicles"); *Hall v. Cap. One Fin. Corp.*, 2023 WL 2333304, at *5–6 (E.D. Va. Mar. 1, 2023) (dismissing complaint with near-identical allegations regarding the BlackRock TDFs where "[u]nderperformance of the BlackRock TDFs is *all* that Plaintiffs allege" and concluding that better performance by other TDFs "does not suggest that offering the BlackRock TDFs fell outside the 'range of reasonable judgments' that fiduciaries may make").  The Court has undertaken its own analysis of the Complaint's allegations here but nonetheless finds these decisions' reasoning to be sound and observations accurate.

Plaintiffs do not dispute that their claims are primarily premised on the BlackRock TDFs' underperformance, but their arguments in defense of the Complaint are ultimately inapposite. They first reject Cisco's characterization of the allegations as "hindsight" and contend that there is no "hindsight" when Cisco should have known at the beginning of the class period that the BlackRock TDFs were already then underperforming.  Opp. 13–14.  The Court agrees that the Complaint is not alleging underperformance by hindsight, but that is also not the crux of Cisco's motion to dismiss.  As addressed above, the issue with the Complaint is its reliance on the BlackRock TDFs' performance data, irrespective of temporal hindsight allegations of whether the underperformance was observable in 2016 or whether the BlackRock TDF data was available to Cisco during that time.  *See CommonSpirit*, 37 F.4th at 1166 ("Merely pointing to another investment that has performed better in a five-year snapshot of the lifespan of a fund that is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision.").  In other words, it does not matter *when* the BlackRock TDFs' underperformance was recognizable (either at the beginning of the class period in 2016 or when the Complaint was filed in 2022); the case law teaches that underperformance *alone* cannot substantiate an ERISA imprudence claim.

Nor does Plaintiffs' cited case law redeem the deficiencies in their Complaint.  In support

United States District Court
Northern District of California

of their theory that "long-term underperformance" alone would suffice to state a claim for imprudence, Plaintiffs rely primarily on two out-of-circuit district court cases.  Opp. 15–16 (citing *Moler v. Univ. of Maryland Med. Sys.*, 2022 WL 2756290 (D. Md. July 13, 2022); *Garcia v. Alticor, Inc.*, 2021 WL 5537520, at *1 (W.D. Mich. Aug. 9, 2021)).  However, both cases are readily distinguishable, and neither support the broad interpretations Plaintiffs suggest.  For instance, in *Moler*, the challenged investments did not just underperform; they had also charged "grossly excessive fees in comparison to other comparable or superior alternatives," a fact that is acutely absent here.  *Moler*, 2022 WL 2756290 at *4; *see also Hall*, 2023 WL 2333304, at *5 n.3. (distinguishing *Moler* because it was based on "the selection of high-cost funds"). Although the *Moler* opinion does contain some remarks regarding the investments' "long-term underperformance," 2022 WL 2756290, at *4, those remarks were in the context of distinguishing allegations of historic underperformance from allegations of hindsight, a distinction that the Court has already accounted for and addressed above.

Plaintiffs' second cited case fares no better and is distinguishable for the same reasons.  To begin, the allegations in *Garcia v. Alticor* involved much more than mere underperformance—the plaintiffs there had also alleged that "the recordkeeping and administrative costs of the Plan were excessive; the majority of funds chosen by the Committee were more expensive than comparable funds . . . ; the Committee should have considered whether lower-cost comparable collective trusts were available; the Committee could and should have selected at least one identical but lower-cost share class; the Committee failed to consider materially similar but cheaper, passively-managed alternatives."  2021 WL 5537520, at *4.  And, as in *Moler*, the *Garcia* opinion only touches upon the historic underperformance in the context of rejecting the defendant's "hindsight" argument.  *Id.*, at *7 ("Finally, Defendants argue that Plaintiffs cannot bring a 'hindsight-based' claim to argue that some funds in the Plan were underperforming. . . .  However, Plaintiffs bring allegations that the Committee failed for years to perform sufficient reviews or investigations into the Plan's performance.").  Accordingly, although *Moler* and *Garcia* may stand for the proposition that an investment's historic underperformance can rebut a defendant's argument that the ERISA claim is

1   based on hindsight, neither case suggest that a court may infer misconduct from the BlackRock

2   TDFs' underperformance alone.[4]

3        In summary, to the extent Plaintiffs attempt to state an ERISA claim for imprudence based

4   solely on the BlackRock TDFs' underperformance, the Court cannot reasonably infer from

5   underperformance alone that the BlackRock TDFs were imprudent investments.  Plaintiffs' First

6   Claim for breach of fiduciary duty under ERISA, therefore, will be DISMISSED.

7        A dismissal under Rule 12(b)(6) is typically with leave to amend unless the court

8   "determines that the pleading could not possibly be cured by the allegation of other facts."  *Cook,*

9   *Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990);

10  Fed. R. Civ. P. 15(a)(2).  Here, the Court cannot conclude that the further factual allegations

11  would be futile and, accordingly, will grant Plaintiffs LEAVE TO AMEND the deficiencies

12  addressed in this Order.  Plaintiffs are cautioned, however, that simply providing metrics or

13  opinions further describing the BlackRock TDFs' underperformance is not likely to cure these

14  deficiencies.  *See Beldock*, 2023 WL 3058016, at *3 (finding that the addition of a Sharpe ratio

15  and comparison with S&P Target Date Indices "do not save Plaintiffs' claim for breach of the

16  fiduciary duty of prudence"); *Hall*, 2023 WL 2333304, at *6 ("The addition of the Sharpe ratio

17  and S&P Index to the Amended Complaint does not alter this analysis, as these are merely

18  additional measurements of investment performance.").

19      **B.**    **Meaningful Comparisons**

20       In addition to the parties' dispute over the sufficiency of the Complaint's

21  underperformance allegations, they also argue extensively over whether the Comparator TDFs are

22  meaningful benchmarks for evaluating the BlackRock TDFs.  See Mot. 14–18; Opp. 19.

23       Because the Court finds that Plaintiffs' allegations of underperformance alone are

24  insufficient to render an investment imprudent, the Court need not address issues relating to the

25

26  ───────────────

27  [4] The BlackRock TDFs can be distinguished further from the challenged high-priced investments in *Moler* and *Garcia* because the BlackRock TDFs offered some of the lowest fees available.  *See* Compl. ¶ 30 (referencing the "low fees charged by the BlackRock TDFs"); Mot. 9.

28  Case No.: 5:22-cv-04417-EJD
ORDER GRANTING MOTION TO DISMISS

*United States District Court*
*Northern District of California*

10

metrics of that underperformance in comparison to other TDFs.  Other district courts that similarly dismissed ERISA claims for containing only underperformance allegations have also declined to address these issues.  *See Hall*, 2023 WL 2333304, at *6 n.4 ("Because the Amended Complaint's performance-only allegations are legally deficient, the Court will not address whether . . . the BlackRock TDFs exhibited 'consistently deplorable performance' and were 'consistently and dramatically outperformed' by the Comparator TDFs."); *Beldock*, 2023 WL 3058016, at *3 n.7 ("[T]he court concludes that it need not consider whether Plaintiffs' proposed comparators are meaningful benchmarks against which to measure the BlackRock TDFs' performance where Plaintiffs' breach of fiduciary claim is based solely on alleged underperformance.").  The Court likewise will decline to opine on whether the Comparator TDFs are meaningful benchmarks.

### C.     Derivative Claims

In addition to their primary claim for fiduciary breach based on a failure to monitor the BlackRock TDFs, Plaintiffs also brought ancillary claims alleging that Cisco failed to oversee the members of its 401(k) administrative committee and that Cisco is liable for a knowing breach of trust.  Compl. ¶¶ 72–83.  In their opposition, Plaintiffs do not raise any independent basis for why these claims should survive apart from their arguments above on underperformance.  Opp. 23–24.

Because the Court finds that allegations of the BlackRock TDFs' underperformance do not state a claim for fiduciary breach, the Complaint also fails to state a claim that Cisco failed to oversee or monitor the members of the Administrative Committee.  Similarly, Cisco could not have "knowingly participated in breaches of fiduciary duty by permitting the Plan to offer a menu of imprudent investment options" where the BlackRock TDFs have not been alleged to be imprudent.  *Accord Beldock*, 2023 WL 3058016, at *4 (dismissing secondary claims for "failure to monitor, co-fiduciary breaches, and knowing breaches of trust" where plaintiffs' arguments for survival "assumes that they have sufficiently pleaded their claim for breach of the fiduciary duty of prudence"); *Hall*, 2023 WL 2333304, at *8 (same).

Accordingly, the Second and Third Claims in the Complaint will also be DISMISSED with LEAVE TO AMEND.

## IV.     CONCLUSION

Based on the foregoing, the Court GRANTS Defendant's Motion to Dismiss.  All claims in the Complaint are DISMISSED WITH LEAVE TO AMEND.  Any amended complaint shall be filed no later than twenty-one (21) days after the date of this Order.

**IT IS SO ORDERED.**

Dated: August 11, 2023

EDWARD J. DAVILA
United States District Judge

Case No.: 5:22-cv-04417-EJD
ORDER GRANTING MOTION TO DISMISS

12