UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERT BRACALENTE, et al., | Case No.  22-cv-04417-EJD |
| Plaintiffs, | **ORDER GRANTING MOTION TO DISMISS** |
| v. | |
| CISCO SYSTEMS, INC., | Re: ECF No. 87 |
| Defendant. | |

This putative ERISA class action is brought by individual participants ("Plaintiffs") in Defendant Cisco Systems, Inc.'s ("Cisco") 401(k) Plan ("Plan") and alleges that Cisco breached its ERISA fiduciary duties by offering certain BlackRock LifePath Index Funds.  On August 11, 2023, the Court granted Cisco's motion to dismiss the complaint with leave to amend.  Order Granting Motion to Dismiss ("Order"), ECF No. 74.  Before the Court is Cisco's Motion to Dismiss the Second Amended Complaint ("SAC") under Rule 12(b)(6) ("Motion" or "Mot."), ECF No. 87.

The Court found the matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b).  Having carefully considered the pleadings, the Court GRANTS Cisco's Motion and DISMISSES the SAC with leave to amend.

## I.    BACKGROUND

### A.    Parties and the Plan

Plaintiffs have brought this action both individually and on behalf of similarly situated participants and beneficiaries of the Plan.  SAC ¶ 1.  They allege that Cisco is a fiduciary under

United States District Court
Northern District of California

ERISA, responsible for selecting, monitoring, and retaining the Plan's investment options.  *Id.* ¶ 5.

Cisco's Plan is a participant-directed 401(k) retirement plan, meaning that participants decide where their contributions should be invested.  *Id.* ¶ 17.  The Plan's investment options include mutual funds, collective trust funds, and target date funds ("TDFs").  *Id.* ¶¶ 17–19.  A TDF is an actively managed investment portfolio that gradually changes its investment strategies to be more conservative as the "target" retirement year approaches, a transition referred to as the fund's "glide path."  *Id.* ¶¶ 24–26.  TDF glide paths may vary based on whether they are "to" retirement (assuming that the participant will withdraw the funds at or soon after the target retirement year) or "through" retirement (assuming that the participant will remain invested and gradually draw down on their funds while in retirement).  *Id.* ¶¶ 25–26.  TDFs may contain a variety of constituent investments, which can include passively managed assets, actively managed assets, or a mix of both; however, the TDF itself is inherently actively managed.  *Id.* ¶¶ 24, 27, 36.

**B.      BlackRock TDFs**

Cisco offered its employees a suite of ten BlackRock LifePath Index Funds ("BlackRock TDFs") with multiple target retirement year "vintages."  SAC ¶ 29.  Cisco designated the BlackRock TDFs as the Plan's Qualified Default Investment Alternative ("QDIA"), which is the default investment for Plan participants who do not affirmatively indicate where their assets should be invested.  *Id.* ¶¶ 33, 34.  The SAC alleges that the BlackRock TDFs underperformed significantly during the Class Period compared to other TDF providers, so much so that a "simple weighing of the merits and features of all other available TDFs . . . would have raised significant concerns for prudent fiduciaries and indicated that the BlackRock TDFs were not a suitable and prudent option for the Plan."  SAC ¶ 31.  Cisco purportedly decided to offer the BlackRock TDFs to "chase[] the low fees charged by the BlackRock TDFs without any consideration of their ability to generate return."  *Id.*  Plaintiffs also allege that the Plan's investment in the BlackRock TDFs have "resulted in participants missing out on millions of dollars in retirement savings growth."  *Id.* ¶ 43.

United States District Court
Northern District of California

C.    **Comparator TDFs**

The SAC compares the BlackRock TDFs with the four other largest TDF series, which include the Vanguard Target Retirement funds, T. Rowe Price Retirement funds, American Funds Target Date Retirement funds, and Fidelity Freedom Index funds (collectively, the "Comparator TDFs"). SAC ¶ 48. Specifically, the SAC provides the three- and five-year annualized returns of the BlackRock TDF for each quarter of the Class Period and juxtaposes them alongside the same returns for the best and worst performing Comparator TDF in the same quarter. *Id.* ¶¶ 52, 58. Compared alongside these Comparator TDFs, the BlackRock TDFs are the third largest TDF series by total assets, possessing 8.8% market share, behind Vanguard TDFs (36.4%) and T. Rowe Price TDFs (10.7%). *Id.* ¶ 47. From 2016 Q2 until 2019 Q3, the BlackRock TDFs had either the worst or second worst three- and five-year returns of the group of Comparator TDFs. *Id.* at 27–36 (charts).

Plaintiffs allege that the Comparator TDFs represent "an ideal group for comparison" because "they represent the most likely alternatives to be selected were the BlackRock TDFs to be replaced." *Id.* ¶ 48.

D.    **Investment Policy Statement ("IPS")**

Throughout the Class Period, Cisco maintained an Investment Policy Statement ("IPS") to provide the Committee with guidelines concerning the selection, evaluation, and monitoring of Plan investment options. SAC ¶ 21; ECF No. 88-2 ("2017 IPS"). The "consistent application of the guidelines in an IPS is a vital component of a prudent investment selection and monitoring process and, when employed properly, ensures that investment funds are assessed in a replicable manner." SAC ¶ 22. The IPS becomes a binding plan document when plan fiduciaries adopt an IPS, and prevailing standards dictate that plan fiduciaries have certain responsibilities with respect to the IPS, including that they do not violate the guidance set forth in an IPS. *Id.*

Plaintiffs allege that the IPS in this case prescribed review of the Plan's investments over three- and five-year periods compared to a representative benchmark and a universe of similar funds. *Id.* ¶ 23. The Committee was directed under the IPS to "closely examine performance that

United States District Court
Northern District of California

1    falls below those comparators over a market cycle." *Id.*  The IPS permits the Committee to

2    remove an investment if the Committee determines the fund is unlikely to meet the stated

3    performance objectives in the future, but the IPS does not require the satisfaction of any condition

4    beyond underperformance for a Plan investment to be deemed noncompliant.  *Id.*

5        Plaintiffs allege that an objective evaluation of the BlackRock TDFs consistent in the

6    Plan's IPS "would have resulted in the selection of a more consistent, better performing, and more

7    appropriate TDF suite." *Id.* ¶ 31.

8        **E.    Procedural History**

9        While Cisco's first motion to dismiss was pending, Cisco produced certain Plan documents

10   for the period between July 29, 2016 to October 31, 2022.  *See* ECF No. 59.  The production

11   included chartering documents of the Cisco 401(k) Plan Administrative Committee (the

12   "Committee"), Committee meeting minutes and materials, Plan documents and amendments, fee

13   disclosures related to the Plan, and the Plan's IPS.  *Id.*  After the Court granted Cisco's prior

14   motion with leave to amend, Plaintiffs filed an Amended Complaint on September 1, 2023.  *See*

15   ECF No. 78.  Before any response was required, Plaintiffs then filed the SAC on October 23, 2023

16   to comply with a prior agreement that Cisco would proceed as the only named defendant.  *See*

17   *generally* SAC.  The SAC brings two counts: (1) breach of ERISA fiduciary duty; and (2) failure

18   to monitor fiduciaries and co-fiduciary breaches.  *Id.* ¶¶ 90–105.  Plaintiffs are no longer pursuing

19   the third claim for liability for knowing breach of trust.

20       Cisco moved to dismiss the second amended complaint on November 10, 2023.  The

21   motion was fully briefed on December 18, 2023.  *See* Plaintiffs Opposition to Cisco's Motion

22   ("Opp."), ECF No. 94; Cisco's Reply in Support of its Motion ("Reply"), ECF No. 95.

23   **II.    LEGAL STANDARD**

24       Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with enough

25   specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which

26   it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).

27   "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal

28   Case No.: 22-cv-04417-EJD
     ORDER GRANTING MOTION TO DISMISS

*(left margin)* United States District Court
Northern District of California

4

theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  When deciding whether to grant a motion to dismiss, the Court must accept as true all "well pleaded factual allegations" and determine whether the allegations "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570).  A court generally may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion.  However, documents appended to the complaint, incorporated by reference in the complaint, or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion.  *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  Likewise, a court may consider matters that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Roca v. Wells Fargo Bank, N.A.*, No. 15-cv-02147-KAW, 2016 WL 368153, at *3 (N.D. Cal. Feb. 1, 2016) (quoting Fed. R. Evid. 201(b)).

In assessing ERISA fiduciary-breach claims under Rule 12(b)(6), courts apply the *Iqbal* and *Twombly* pleadings standards by evaluating a complaint's allegations "as a whole" and "giv[ing] due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022).  Courts must therefore exact a "careful, context-sensitive scrutiny of a complaint's allegations" in order to "divide the plausible sheep from the meritless goats." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).  "Because the content of the duty of prudence turns on the circumstances ... prevailing at the time the fiduciary acts, the appropriate inquiry will necessarily be context specific." *Id.* (cleaned up).

## III.    REQUEST FOR JUDICIAL NOTICE

Cisco requests that the Court take judicial notice of thirteen exhibits submitted in support

United States District Court
Northern District of California

of its motion to dismiss on the grounds that each is either incorporated into the SAC by reference or not subject to reasonable dispute.  *See* Cisco's Second Request for Judicial Notice in Support of its Motion to Dismiss ("RJN"), ECF No. 88.  The documents include the IPS, various publicly available materials, and copies of minutes and materials presented at Plan meetings.  *See id.*

Courts may take notice of adjudicative facts that are "not subject to reasonable dispute" because they are "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Additionally, incorporation by reference is appropriate where the "complaint necessarily relies upon a document or where the complaint alleges the contents of the document and the documents authenticity and relevance is not disputed."  *In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1252 (N.D. Cal. 2019) (quotations omitted).  The doctrine of incorporation by reference "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims."  *Khoja*, 899 F.3d at 1002.

### A.    Exhibits 1–5

Plaintiffs do not oppose Cisco's request as to Exhibits 1–5.  *See* Opposition to Defendant's Second Request for Judicial Notice ("RJN Opp."), ECF No. 93.  The Court will take judicial notice of Exhibit 1, the IPS, because it is referenced throughout the SAC and its authenticity and relevance is not disputed.  *See* ECF No. 88-2.  The Court will also take judicial notice of Exhibits 2–5, copies of various publicly available online sources, because they are similarly not subject to reasonable dispute.  *See* ECF Nos. 88-3, 88-4, 88-5, 88-6.

### B.    Exhibits 6–7

Exhibits 6 and 7 are copies of minutes from the October 2016 and February 2017 meetings, respectively, of the 401(k) Plan Administration Committee of Cisco.  ECF Nos. 88-7, 88-8.  Cisco argues that the Court may properly consider both because each are expressly incorporated by reference in the SAC.  RJN 5 (citing SAC ¶¶ 54, 58, 68–69).  Plaintiffs argue that Cisco impermissibly seeks to introduce meeting minutes from only two out of the six meetings

Case No.: 22-cv-04417-EJD
ORDER GRANTING MOTION TO DISMISS

Plaintiffs discuss in their Complaint.  RJN Opp. 6.

Because Plaintiffs explicitly reference the contents of these minutes in the SAC, and Plaintiffs do not challenge their authenticity and relevance, the Court will treat Exhibits 6 and 7 as incorporated by reference into the SAC.  *See* SAC ¶¶ 54 (discussing "the minutes of the October 13, 2016 meeting"); 58 (discussing the "the meeting minutes" from the February 27, 2017 meeting).

### C.    Exhibits 8–13

Exhibits 8 through 13 are copies of excerpts from the full materials presented to the 401(k) Plan Administration Committee of Cisco at meetings dated October 13, 2016, December 22, 2016, February 27, 2017, January 26, 2018, October 11, 2019, and January 21, 2020, respectively. ECF Nos. 88-9, 88-10, 88-11, 88-12, 88-13, 88-14.

Plaintiffs argue these Exhibits should not be considered because they are not referenced in the SAC.  The Court agrees.  While Plaintiffs make representations about the meeting *minutes* in the SAC, the SAC makes no reference to the *materials* presented at the meetings.  At this stage, it appears Cisco seeks to now introduce Exhibits 8–13 to "merely create[] a defense" to the allegations in the SAC.  *See Khoja*, 899 F.3d at 1002.  Accordingly, the Court declines to take judicial notice of Exhibits 8–13.

## IV.    DISCUSSION

The SAC, like the original Complaint, primarily alleges that Cisco breached its fiduciary duty by imprudently selecting, retaining, and failing to monitor the underperforming BlackRock TDFs.  SAC ¶¶ 30–33.  Plaintiffs further allege that Cisco breached its fiduciary duties by employing "a fundamentally irrational decision-making process."  *Id.* ¶ 32.  Plaintiffs contend that they have sufficiently addressed the Court's concerns by alleging failures in Cisco's process for monitoring the Plan's investment offerings particularly as they relate to the Committee's failure to adhere to the IPS.  Opp. 2.

Cisco argues that Plaintiffs' breach of fiduciary duty claim should be dismissed under Rule 12(b)(6) because (1) Plaintiffs fail to sufficient plead any imprudent process, and (2) Plaintiffs'

United States District Court
Northern District of California

allegations of underperformance once again fail.

ERISA fiduciaries are charged with four primary duties: the duty of loyalty, 29 U.S.C. § 1104(a)(1)(A); the duty of prudence, § 1104(a)(1)(B); the duty of diversification, § 1104(a)(1)(C); and the duty to follow the plan's documents, § 1104(a)(1)(D).  The duty of prudence—which is the primary duty Plaintiffs claim was breached here—obligates fiduciaries to discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use."  § 1104(a)(1)(B). The Supreme Court has also held that the ERISA duty of prudence includes a "continuing duty of some kind to monitor investments and remove imprudent ones." *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015).  "Because the content of the duty of prudence turns on the circumstances prevailing at the time the fiduciary acts, the appropriate inquiry will necessarily be context specific." *Fifth Third Bancorp*, 573 U.S. at 425 (cleaned up).

Plaintiffs may state a breach of the duty of prudence either through direct allegations of the fiduciary's "knowledge, methods, or investigations at the relevant times" or "*circumstantial* factual allegations [from which the Court] may reasonably infer from what is alleged that the process was flawed." *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013) (emphasis added) (quotations omitted).  "If the complaint relies on circumstantial factual allegations to show a breach of fiduciary duties under ERISA, those allegations must give rise to a 'reasonable inference' that the defendant committed the alleged misconduct," *i.e.*, the facts alleged must be "suggestive of, rather than merely consistent with, a finding of misconduct." *Id.* at 718–19 (internal brackets omitted) (italics in original).

### A.     Plaintiffs' Process Allegations

Plaintiffs argue that its new allegations regarding the Committee's actions—or lack thereof—in light of the governing IPS are sufficient to establish a strong inference that the Plan's fiduciaries failed to engage in an appropriate monitoring process to ensure the BlackRock TDFs remained appropriate for the Plan.  Opp. 12.  Specifically, Plaintiffs allege that the Committee's

United States District Court
Northern District of California

process for monitoring the Plan's investment offerings was imprudent as demonstrated by (1) an improper reliance on custom benchmarks; (2) the improper characterization of the BlackRock TDFs as "passive"; (3) an improper comparison of the BlackRock TDFs to an appropriate peer universe; and (4) a failure to perform a prudent review of the BlackRock TDFs.

### 1. Custom Benchmarks

Plaintiffs allege that Cisco improperly relied on performance comparisons of the BlackRock TDFs to their custom benchmarks.  SAC ¶ 38.  The custom benchmark is a "weighted mix of the benchmarks of the underlying portfolio funds" whose purpose is "to reflect the funds' asset allocation shifts over time by reweighting the component indices quarterly to match the weighting of the BlackRock TDF portfolio."  *Id.*  In other words, the custom benchmark is "simply a reflection of the TDF portfolio," which Plaintiffs contend is "akin to looking in a mirror."  *Id.* ¶¶ 38–39.  Plaintiffs allege that using the custom, "meaningless" benchmark violated the terms of the IPS which required the Committee to apply "a heightened level of scrutiny to an investment that underperforms relative to its benchmark or peer group, and consider replacing the investment at such time that its future noncompliant performance is deemed likely."  *Id.* ¶¶ 39, 41.

Cisco argues that it appropriately monitored the BlackRock TDFs by evaluating their performance against a custom benchmark because such benchmarks are widely used to monitor the performance of large, diverse TDFs.  Mot. 12.  Cisco explains that a custom benchmark "is the appropriate measure to monitor the TDFs because it tracks the fund's adherence to its glide path."  *Id.*  Moreover, because "it is difficult to benchmark individual TDF performance against other funds and standardized benchmarks," custom indices "are commonly used to benchmark TDFs."  *Id.*

While Plaintiffs acknowledge that the use of custom benchmarks is not per se imprudent, they nevertheless contend that "the custom benchmark is not a sufficient evaluative tool."  Opp. 13.  This is because using custom benchmarks allegedly runs counter to the "purpose of the IPS," which dictates that the Committee apply "a heightened level of scrutiny to an investment that underperforms relative to its benchmark or peer group, and consider replacing the investment

at such time that its future noncompliant performance is deemed likely." *Id.* As the performance of the BlackRock TDFs was "not reasonably likely to materially depart from that of the custom benchmark," Plaintiffs allege that Cisco's failure to consider other standards is "tantamount to a complete rejection of the Committee's duty to monitor Plan investments." *Id.* at 13–14. Rather than use the custom benchmark, Plaintiffs allege that a more appropriate benchmark for the Committee's process would have been the S&P Target Date Index. SAC ¶ 42.

Turning to the IPS, the document neither mentions nor requires that the performance of the BlackRock TDFs should be measured against the S&P Target Date Indices. *See* 2017 IPS at 10. It requires that the Committee measure the BlackRock TDFs against "custom indices"—a requirement Plaintiff alleges that Cisco complied with. SAC ¶ 38. Plaintiffs appear to take issue with the custom benchmarks as an effective tool under any circumstances. By their nature, custom indices function in the way Plaintiffs now allege is improper. "As benchmarks are utilized to evaluate a fund's performance and to determine whether it is appropriate to continue investing in the fund for the benefit of the participants," Plaintiffs argue that "solely relying on [custom indices] would not yield sufficient information to enable a prudent fiduciary to make an informed decision on behalf of the Plan." Opp. 13.

Challenges like these to custom indices as a tool have been rejected by courts. For instance, plaintiffs in *Pizarro v. Home Depot* presented a near identical argument: defendants were alleged to have used an imprudent process because they violated the relevant IPS by using only the BlackRock TDF custom benchmarks, not peer funds, in contravention of the plan's IPS. 634 F. Supp. 3d 1260, 1293 (N.D. Ga. 2022). While acknowledging that "a fiduciary's contravention of the IPS is evidence that it did not engage in a prudent monitoring process," the court nevertheless rejected plaintiffs' argument because the IPS stated that the committee should evaluate the BlackRock TDFs relative to a "universe of similar funds and applicable benchmarks, and listed the custom benchmarks as applicable to the BlackRock TDFs." *Id.* at 1294 (quotations omitted).

Plaintiffs argue that the Court should not follow *Pizarro* because the decision "rested on

United States District Court
Northern District of California

1    the fact that the plaintiffs had failed to adduce evidence of an applicable benchmark that would fall

2    in the universe of similar funds."  Opp. 15.  But as Cisco notes, *Pizarro* specifically considered the

3    S&P 500 as a benchmark for the BlackRock TDFs.  The court found that failure to monitor the

4    BlackRock TDFs against the S&P 500 was "not evidence that the custom benchmarks used by [the

5    committee] were imprudent."  *Id.* at 1294.  So too here, Plaintiffs' allegations that the S&P 500

6    "may have been available" does not suggest "that the custom benchmarks used by [the

7    Committee] were imprudent."  *Id.*

8         Similarly, in *Wehner*, the plaintiff argued that performance of the TDF could not be

9    evaluated against defendants' custom benchmark "because such custom benchmarks are imperfect

10   as an evaluative tool as they fail to demonstrate how the investment is performing relative to

11   peers."  *Wehner v. Genentech, Inc.*, No. 20-CV-06894-WHO, 2021 WL 2417098, at *8 (N.D. Cal.

12   June 14, 2021) (quotations omitted).  The court rejected this argument because plaintiff "fail[ed] to

13   explain why his identified comparators [including the S&P Indices] serve as meaningful

14   benchmarks."  *Id.*  Similarly here, Plaintiffs only allege that "[a]s a composite of the disparate

15   strategies and styles present in the broad universe of investable alternative TDFs, the S&P Indices

16   represent an appropriate, meaningful benchmark comparator for the BlackRock TDFs."

17   SAC ¶ 42.  But "[g]eneral assertions that … the S&P Indices [represent an appropriate,

18   meaningful benchmark comparator for the BlackRock TDFs] are not enough to support an apples-

19   to-apples comparison without factual allegations that compare the products' styles and strategies

20   to support a finding of 'meaningful benchmark.'"  *Wehner*, 2021 WL 2417098, at *8; SAC ¶ 42.

21        Plaintiffs urge the Court to follow *Genworth*.  Opp. 14.  *Genworth* involved a plan offering

22   the BlackRock TDFs that recognized the S&P Indices as a proper comparator in its own IPS.

23   *Trauernicht v. Genworth Fin. Inc.*, No. 22-CV-00532, 2023 WL 5961651, at *13 (E.D. Va. Sept.

24   13, 2023).  The defendant criticized the use of the S&P Index as performance ratios because it did

25   "not show significant underperformance but rather show[ed] that Genworth was adhering to a

26   sound evaluative process."  *Id.*  The court rejected defendant's argument because "Genworth's

27   own IPS provides the S&P Target Date Index as a benchmark to measure the performance of the

28   Case No.: 22-cv-04417-EJD
     ORDER GRANTING MOTION TO DISMISS
                                        11

Blackrock TDFs" and there was, therefore, "nothing implausible or defective about the SAC when it relies on the same data for one of its comparisons." *Id.* Thus, the court found that the complaint plausibly stated a claim for breach of fiduciary duty where the plaintiff alleged that defendant violated its IPS—which explicitly provided the S&P Index as a benchmark—in not using the S&P Index as a benchmark. *Id. Genworth* distinguished *Tullgren* on this basis. *Tullgren* held that, "[b]ecause funds with distinct goals and distinct strategies are inapt comparators, there is no sound basis on which the Court can compare the BlackRock TDFs with the S&P Index." *Tullgren v. Booz Allen Hamilton*, No. 22-cv-00856, 2023 WL 2307615, at *7 (E.D. Va. Mar. 1, 2023) appeal dismissed sub nom. *Tullgren v. Booz Allen Hamilton, Inc.*, No. 23-1366, 2023 WL 6458653 (4th Cir. May 12, 2023). Absent from *Tullgren* were any allegations that the S&P Index was identified in the relevant IPS as a benchmark to measure the performance of the TDFs. *Id.*

Cisco's own IPS does not provide the S&P Indices as a benchmark for the BlackRock TDFs—rather, the IPS identifies the "Custom Indices" as the only benchmark against which the performance of the BlackRock TDFs should be measured against. *See* 2017 IPS at 10. *Genworth* found plausible allegations that defendant had followed an imprudent process because they did not follow their own IPS. *Genworth*, 2023 WL 5961651, at *12. Plaintiffs argue that Cisco here violated the "purpose of the IPS" by using a custom benchmark, but the SAC does not support this. Opp. 13. Rather, the SAC acknowledges that Cisco followed the IPS in using a custom benchmark. SAC ¶ 38. Although Plaintiffs would have preferred a different IPS, "courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes*, 595 at 177.

The Court finds that Plaintiffs' allegations that the Committee followed its IPS in relying exclusively on the custom benchmark do not plausibly establish an imprudent process.

### 2. Characterization of the BlackRock TDFs As "Passive" vs. "Active"

Plaintiffs additionally allege that Cisco imprudently monitored the BlackRock TDFs in failing to "appreciate the crucial distinction between a truly passive investment and the passive implementation of active asset allocation decisions"—the BlackRock TDFs being the latter.

SAC ¶ 37.  In order to follow the IPS's dictate to review the Plan's investments over three- and five-year periods to a representative benchmark and a universe of similar funds, Plaintiffs contend that "it is essential that the type of fund is accurately identified."  Opp. 16.  For passive investments, the Committee was required to ensure only that those investments "meet" the results of their benchmark; for actively managed investments, the IPS required that the Committee ensure the investments "exceed" the results of the relevant benchmark or appropriate peer group.  Opp. 16 (citing SAC ¶¶ 39–40).  According to Plaintiffs, this mischaracterization resulted in an imprudent monitoring of the BlackRock TDFs because the Committee failed to apply the heightened monitoring guidelines that the IPS applied to "active funds."  Opp. 16.

Plaintiffs acknowledge that "in common industry parlance only," the BlackRock TDFs are passively managed, but argue that TDFs are all actually actively managed funds because they "require constant decision making and updates to ensure proper investment results based on a proprietary mix of different asset classes that does not mimic or match any existing market segment or portfolio."  Opp. 16–17 (citing SAC ¶ 36); *see also* ECF No. 88-6, at 2 ("While these are commonly referred to as passive target-date series, no series is truly passively managed, as every target-date manager makes active decisions in building a glide path and selecting asset classes, sometimes tactically based on market outlooks").

Cisco maintains that, given the underlying structure of the BlackRock TDFs—which undisputedly consist entirely of passive funds—there was nothing imprudent about Cisco characterizing them as "passive" in the IPS for purposes of evaluating the performance of the underlying passive funds.  Mot. 15–16.

Even assuming as true Plaintiffs' allegation that "BlackRock TDFs have a passive implementation but are not actually a passive investment option," and thus, the IPS "misidentified the BlackRock TDFs as a passive investment," the next question is: how does this suggest the Committee engaged in imprudent monitoring?  SAC ¶¶ 36–37.  Plaintiffs argue that, acting upon this misconception, the Committee "only considered whether the BlackRock TDFs tracked the returns of their chosen index" but the Committee should have evaluated the funds "with more

United States District Court
Northern District of California

scrutiny."  Opp. 18; *see also* SAC ¶ 38.  But had the TDFs been accurately characterized as "active," Plaintiffs still have not plausibly alleged that Cisco violated the IPS, which (1) applies the same performance-monitoring criteria for both active and passive funds (both must be compared to the results of a representative benchmark for the investment); and (2) affords the Committee discretion when deciding whether to retain or remove an underperforming investment. *See* 2017 IPS at 4, 5 ("the Committee may or may not judge that the investment manager(s) is likely to meet its objectives in the future, and therefore may or may not invoke any further action in regard to the reviewed manager").  As to (1), the SAC does not allege that the BlackRock TDFs underperformed their custom benchmarks—the representative benchmark the IPS identifies for the BlackRock TDFs.  *Id.* at 4 ("The primary objective of each investment option is to meet (for passive funds) or exceed (for active funds) the results of a representative benchmark for the option, such as a broad market index").  And regarding (2), Plaintiffs agree that underperformance alone does not necessarily require the Committee to remove a fund, but nevertheless argue that such discretion does not give "carte blanche to ignore the IPS monitoring criteria."  Opp. 18.  But even construing the allegations in the light most favorable to Plaintiffs, the Court finds implausible Plaintiffs' allegations that that the apparent misclassification of the BlackRock TDFs demonstrates an imprudent process because the IPS explicitly states that the Committee "*may or may not* judge that the investment manager(s) is likely to meet its objectives in the future, and therefore *may or may not* invoke any further action in regard to the reviewed manager."  *Id.* at 5.

### 3.  Comparison of BlackRock TDFs to Comparators

Plaintiffs additionally allege that Cisco acted imprudently by failing to compare the BlackRock TDFs to an appropriate peer universe.  Had the Committee "taken the appropriate step of removing the BlackRock TDFs," Plaintiffs assert that four comparator TDFs it identified—(1) T. Rowe Price Retirement; (2) the American Funds Target Date Retirement; (3) Vanguard Target Retirement; and (4) Fidelity Freedom Index—are "the exact alternatives that would have served as replacement candidates."  Opp. 19; SAC ¶¶ 47–48.

Cisco argues these claims fail as a matter of law because (i) the selected comparators are

not meaningful benchmarks to assess the performance of the BlackRock TDFs given the differences in those funds' composition, and (ii) even if the Committee did the comparison Plaintiffs assert should have been done, the allegations are insufficient to infer that the Committee's decision to retain the BlackRock TDFs after undergoing its evaluation was imprudent.  Mot. 16–17.

"To show that 'a prudent fiduciary in like circumstances' would have selected a different fund based on the cost or performance of the selected fund, a plaintiff must provide a sound basis for comparison—a meaningful benchmark."  *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018); *see also Anderson v. Intel Corp.*, No. 19-cv-04618, 2021 WL 229235, at *8 (N.D. Cal. Jan. 21, 2021) ("[S]imply labeling funds as 'comparable' or 'a peer' is insufficient to establish that those funds are meaningful benchmarks against which to compare [] performance of the [challenged fund]"); *Hall v. Cap. One Fin. Corp.*, No. 12-CV-00857-MSN-JFA, 2023 WL 2333304, at *6 (E.D. Va. Mar. 1, 2023), appeal dismissed, No. 23-1357, 2023 WL 6388629 (4th Cir. May 12, 2023) ("Because TDFs encompass a range of investment goals, risk profiles, and underlying funds, Plaintiffs must advance comparators that have similar investment strategies to the challenged fund").

Cisco argues that all four comparators fail as meaningful benchmarks for the BlackRock TDFs.  First, the T. Rowe Retirement and American Fund Target Date Retirement comparators are inappropriate, Cisco argues, because they are composed of actively managed funds (ECF No. 37-3 at 9, 22), whereas the BlackRock TDFs are composed of passively managed funds (*id.* at 41).  *See* Mot. 18.  Next, the two remaining comparators, Vanguard Target Retirement and Fidelity Freedom Index, are likewise insufficient, Cisco argues, because they employ a different guide path strategy than the BlackRock TDFs.

Courts in this District have dismissed ERISA claims, holding that passively managed funds generally cannot serve as meaningful benchmarks for actively managed funds because the two types of funds "have different aims, different risks, and different potential rewards that cater to different investors."  *Davis v. Salesforce.com, Inc.*, No. 20-CV-01753-MMC, 2020 WL 5893405,

Case No.: 22-cv-04417-EJD
ORDER GRANTING MOTION TO DISMISS

at *3 (N.D. Cal. Oct. 5, 2020).  Still, "passively managed funds might, in some situations, serve as meaningful benchmarks for actively managed funds."  *In re LinkedIn ERISA Litig.*, No. 20-CV-05704-EJD, 2021 WL 5331448, at *7 (N.D. Cal. Nov. 16, 2021) (citing *Salesforce.com*, 2020 WL 5893405, at *3 ("Passively managed funds ... *ordinarily* cannot serve as meaningful benchmarks for actively managed funds ....") (emphasis added)).

Here, unlike the complaint in *In re LinkedIn*, the SAC does not provide a sufficient basis to demonstrate why the comparators are meaningful benchmarks despite their apparent differences. The SAC alleges that the four Comparator TDFs "represent an ideal group for comparison" because "they represent the most likely alternatives to be selected were the BlackRock TDFs to be replaced."  SAC ¶ 48.  The four Comparator TDFs allegedly "represent the exact type of universe of similar funds against which the IPS requires non-passively managed investments be evaluated." *Id.*  But two comparators are composed of actively managed funds (contrast the BlackRock TDFs, which are composed of passively managed funds), and the other two employ a "through retirement" glide path strategy (contrast the BlackRock TDFs, which employ a "to retirement" glide path strategy).  Without further factual allegations regarding how these comparators could serve as meaningful benchmarks despite these differences, Plaintiffs' have not met their burden. *C.f.*, *In re LinkedIn ERISA Litig.*, 2021 WL 5331448, at *8 (allegations regarding comparators sufficient where complaint plead that the comparators "share the same management firm and nearly identical glide paths, and that as TDFs, both families [were] inherently actively managed— the difference appear[ed] to be the degree to which they are actively managed"); *see also Davis v. Salesforce.com, Inc.*, No. 21-15867, 2022 WL 1055557, at *2 (9th Cir. Apr. 8, 2022) (affirming district court finding "that plaintiffs have not plausibly alleged that defendants breached the duty of prudence by failing to adequately consider passively managed mutual fund alternatives to the actively managed funds offered by the plan").

The Court recognizes that *Genworth* found allegations in a similar complaint sufficient because the court reasoned that plaintiffs did "explain why" those Comparator TDFs were selected. *Genworth*, 2023 WL 5961651, at *13.  The Court nevertheless finds that Plaintiffs here

United States District Court
Northern District of California

need to supply some factual support showing that the TDFs can serve as comparators in light of the obvious differences between the BlackRock TDFs and the four Comparator TDFs explained above.  In so concluding, the Court finds persuasive other decisions rejecting complaints for failing to establish meaningful comparators to the BlackRock TDFs.  *See Hall v. Cap. One Fin. Corp.*, No. 22-cv-00857, 2023 WL 2333304, at *6 (E.D. Va. Mar. 1, 2023) (holding plaintiffs' amended complaint "makes no factual allegations demonstrating that the Comparator TDFs are meaningful comparators to the BlackRock TDFs"); *Luckett v. Wintrust Fin. Corp.*, No. 22-cv-03968, 2023 WL 4549620, at *3 (N.D. Ill. July 14, 2023) ("Plaintiff does not cite binding case law that her comparators, which she concedes are different from BlackRock TDFs, provide 'a meaningful benchmark'").

Accordingly, the SAC lacks sufficient allegations to create the inference that the Comparator TDFs could serve as suitable comparators for the BlackRock TDFs.

### 4.      Committee Meeting Materials

Plaintiffs allege that Cisco failed to establish a prudent investment monitoring process consistent with guidance it received from its own advisor.  In support, Plaintiffs allege that, "[a]lthough the Committee met periodically, it failed to meet quarterly during the Class Period," and the minutes of the Committee's first meeting on October 13, 2016 "reflect no discussion of the performance of the BlackRock TDFs, even though the BlackRock TDFs were obviously the Plan's most important investment."  SAC ¶ 54.  Plaintiffs further allege that "no monitoring of fund performance, in an appropriate manner or otherwise, occurred" based on the lack of "investment review" in the minutes of the October 13, 2014 meeting.  *Id.*  Had the Committee "been consistently and appropriately monitoring the BlackRock TDF's performance," Plaintiffs allege that it "would have had no justifiable basis to retain the BlackRock TDFs even as of the start of the Class Period."  *Id.* ¶ 58 (explaining that "[n]o discussion or mention of the BlackRock TDFs' returns is reflected in the [December 22, 2016] meeting minutes").

Cisco argues that these allegations fail because "they proceed from a false premise that the summary minutes reflect the Committee's entire monitoring process."  Mot. 20–21 (citing *Falberg*

Case No.: 22-cv-04417-EJD
ORDER GRANTING MOTION TO DISMISS
17

*v. Goldman Sachs Grp.*, No. 19 Civ. 9910, 2022 WL 4280634, at *12 (S.D.N.Y. Sept. 14, 2022) ("there is no requirement that meeting minutes need to be a verbatim transcript of all the issues considered by fiduciaries")).  Cisco also argues that the materials "intentionally exclude[d]" from the SAC demonstrate that "the Committee actively reviewed the BlackRock TDFs quarterly." Mot. 21.

As an initial matter, consistent with the Court's ruling on Cisco's request for judicial notice above, the Court will consider the copies of minutes from the October 2016 and February 2017 meetings (ECF Nos. 88-7, 88-8) but will not consider the materials allegedly presented to the Committee at the meetings at this stage (ECF Nos. 88-9, 88-10, 88-11, 88-12, 88-13, 88-14).

Regarding the October 2016 meeting, Plaintiffs allege that "the Committee met to review data and information as of the end of the Second Quarter of 2016" but "[n]o monitoring of fund performance, in an appropriate manner or otherwise occurred."  SAC ¶ 54.  Cisco contends that the minutes from this meeting, which state that "Bill Ryan reviewed the funds in the Plan" discredits Plaintiffs' allegations that no monitoring of fund performance occurred.  Beyond the single statement above, the meeting minutes do not specifically identify the BlackRock TDFs, consistent with Plaintiffs' allegations.

As to the February 27, 2017 meeting, Plaintiffs similarly allege that "[n]o discussion or mention of the BlackRock TDFs' returns is reflected in the meeting minutes."  SAC ¶ 58.  Cisco argues that a review of the minutes from that meeting belies Plaintiffs' allegations that Cisco was negligent.  Mot. 22.  Although the minutes contain no discussion or mention of the BlackRock TDF "returns," the minutes do contain a summary of the Committee's analysis of the BlackRock TDFs as shown below:

> As the next order of business, Scott reminded the Committee that the DOL suggests periodic routine reviews of the Target Date funds. He reviewed the background of when the BlackRock funds replaced the Fidelity Freedom Funds and were designated as the qualified default investment alternative (QDIA) and the criteria used for the decision.
>
> Bill shared the eight DOL tips for reviewing target date funds (TDF). For passive TDFs the key differentiators are glide path and diversifying assets. Bill walked

the Committee through a review of the analysis of the key differentiators for the
BlackRock target date funds. Based on the key differentiators and the
Committee's objective for the TDFs, Aon Hewitt believes the BlackRock
LifePath Index funds are still a prudent investment choice for the Cisco 401(k)
participants.

ECF No. 88-8 at 4.

The Court recognizes that meeting minutes need not—and almost always do not—contain "a verbatim transcript of all the issues considered by fiduciaries," *Falberg v. Goldman Sachs Grp.*, No. 19 Civ. 9910, 2022 WL 4280634, at *12 (S.D.N.Y. Sept. 14, 2022). Nevertheless, the Court must consider the allegations and meeting minutes in the light most favorable to Plaintiffs. Considered in this light, "it is reasonable to infer that, because the [October meeting] minutes do not reflect that the Committee reviewed the performance of the BlackRock TDFs, the Committee failed to do so." *Genworth*, 2023 WL 5961651, at *11. This alone, however, is not sufficient to plausibly allege that Cisco breached its duty to monitor, particularly in light of the February meeting minutes, which specifically reflect a review of the BlackRock TDFs and the Committee's determination that they remain "a prudent investment choice for the Cisco 401(k) participants." *See* ECF No. 88-8 at 4.

Unlike *Jones v. DISH Network Corp.*, where the court concluded that the meeting minutes "reflect very little specific analysis of any given investment option," No. 22-CV-00167-CMA-STV, 2023 WL 7458377, at *9 (D. Colo. Nov. 6, 2023), report and recommendation adopted, No. 22-CV-00167-CMA-STV, 2023 WL 8170913 (D. Colo. Nov. 24, 2023), the February meeting minutes reflects specific analysis of the BlackRock TDFs. The minutes reflect (1) that the Committee heard Department of Labor tips for reviewing TDFs; (2) that the Committee heard a review of the analysis of the key differentiators for the BlackRock TDFs; (3) that the Committee concluded that, based on the key differentiators and the Committee's objectives for the TDFs, the BlackRock TDFs were "still a prudent investment choice for the Cisco 401(k) participants." ECF No. 88-8 at 4.

*Lauderdale*, in which the court concluded that the plaintiffs' evidence "raise[d] serious questions as to whether the [] Committee's investigatory process was prudent," involved a

United States District Court
Northern District of California

meaningfully different set of facts.  For instance, there, the glidepaths were not discussed until three years after the funds were included in the plan, one representative acknowledged the data "look[ed] pretty bad" shortly after the funds were included in the plan, defendant "did not review performance of the funds relative to a benchmark until two years after [the] funds' inception date," defendant did not actually routinely monitor the investments, the committee did not always meet quarterly, and "there were no meetings for an extended period of time."  *Lauderdale v. NFP Ret., Inc.*, No. 8:21-cv-301, 2022 WL 17260510, at *10 (C.D. Cal. Nov. 17, 2022).

The SAC here acknowledges regular meetings occurred and the meeting minutes before the Court are not sufficient to plausibly allege that Cisco breached its duty to monitor for the reasons explained above.

**B.      Plaintiffs' Performance Allegations**

Having found Plaintiffs' allegations regarding the Committee's process for monitoring the BlackRock TDFs implausible, the Court next evaluates whether the SAC's underperformance allegations, absent the deficient process allegations, are sufficient to support a reasonable inference that Cisco acted imprudently by continuing to offer the BlackRock TDFs.

In addition to the allegations that Cisco's process for monitoring the Plan's investment offerings was imprudent, Plaintiffs continue to allege underperformance relative to appropriate benchmarks.  Cisco argues that Plaintiffs' allegations of underperformance as against its identified comparators fails for the same reasons the Court explained in its prior order dismissing the first amended complaint.  Mot. 23.  The Court agrees.

As explained in the prior Order, although duty of prudence breaches may be based on circumstantial evidence and are evaluated on a case-by-case basis, federal courts have nonetheless widely and consistently rejected attempts to impose ERISA liability where the claims are based solely on a fund's underperformance.  *See* Order 6 (citing cases).  Plaintiffs argue that its new allegations regarding the Committee's process for monitoring the BlackRock TDFs together with its underperformance claims sufficiently states a claim for breach of fiduciary duty.  But, as explained above, Plaintiffs have not plausibly established an inference that the Plan's fiduciaries

United States District Court
Northern District of California

failed to engage in an appropriate monitoring process to ensure the BlackRock TDFs remained appropriate for the Plan.  The remaining allegations fail to state a claim for fiduciary breach under ERISA because "poor performance, standing alone, is not sufficient to create a reasonable inference that plan administrators failed to" act with the duty of prudence "either when the investment was selected or as its underperformance emerged."  *White v. Chevron Corp.*, No. 16-cv-0793-PJH, 2017 WL 2352137, at *20 (N.D. Cal. May 31, 2017), aff'd, 752 F. App'x 453, 455 (9th Cir. 2018).

For the reasons explained in the prior Order, the Court again cannot reasonably infer from underperformance alone that the BlackRock TDFs were imprudent investments and will follow the weight of authority finding ERISA claims based solely on allegations of underperformance insufficient.  *See* Order 6–9.

### C.   Plaintiffs' Derivative Claim

In addition to their primary claim for fiduciary breach based on a failure to monitor the BlackRock TDFs, Plaintiffs also brought a claim for failure to monitor fiduciaries and co-fiduciary breach (Count II).  SAC ¶¶ 72–83.  Because the Court finds that SAC has failed to state a claim for fiduciary breach, Plaintiffs' derivative claim likewise fails to state a claim.  Cisco could not have "knowingly participated in breaches of fiduciary duty by permitting the Plan to offer a menu of imprudent investment options" where the BlackRock TDFs have not been alleged to be imprudent.  *Accord Beldock v. Microsoft Corp.*, 2023 WL 3058016, at *4 (W.D. Wash. Apr. 24, 2023) (dismissing secondary claims for "failure to monitor, co-fiduciary breaches, and knowing breaches of trust" where plaintiffs' arguments for survival "assumes that they have sufficiently pleaded their claim for breach of the fiduciary duty of prudence"); *Hall*, 2023 WL 2333304, at *8 (same).

## V.   CONCLUSION

A dismissal under Rule 12(b)(6) is typically with leave to amend unless the court "determines that the pleading could not possibly be cured by the allegation of other facts."  *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990);

1  Fed. R. Civ. P. 15(a)(2).  Here, the Court cannot conclude that further factual allegations would be

2  futile and, accordingly, will grant Plaintiffs LEAVE TO AMEND the deficiencies addressed in

3  this Order.

4       Based on the foregoing, the Court GRANTS Cisco's Motion to Dismiss.  All claims in the

5  Complaint are DISMISSED WITH LEAVE TO AMEND.  Any amended complaint shall be filed

6  no later than twenty-one (21) days after the date of this Order.

7

8       **IT IS SO ORDERED.**

9

10  Dated: May 20, 2024

11

12

13  EDWARD J. DAVILA
   United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  Case No.: 22-cv-04417-EJD
   ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California